UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| OGLALA SIOUX TRIBE and ROSEBUD SIOUX TRIBE, as *parens patriae*, to protect the rights of their tribal members; and ROCHELLE WALKING EAGLE, MADONNA PAPPAN, and LISA YOUNG, individually and on behalf of all other persons similarly situated, | CIV. 13-5020-JLV<br><br>ORDER DENYING MOTIONS TO DISMISS |
| Plaintiffs, | |
| vs. | |
| LUANN VAN HUNNIK; MARK VARGO; HON. JEFF DAVIS; and KIM MALSAM-RYSDON, in their official capacities, | |
| Defendants. | |

## INTRODUCTION

Plaintiffs Oglala Sioux Tribe, Rosebud Sioux Tribe, Rochelle Walking Eagle, Madonna Pappan and Lisa Young (collectively referred to as "plaintiffs") filed a complaint against defendants Luann Van Hunnik, Mark Vargo, Hon. Jeff Davis and Kim Malsam-Rysdon (collectively referred to as "defendants") in their official capacities. (Docket 1). The complaint asserts defendants' policies, practices and procedures relating to the removal of Native American children from their homes during 48-hour hearings violate the Fourteenth Amendment's Due Process Clause and the Indian Child Welfare Act (ICWA). Id. Specifically, plaintiffs contend the defendants' policies, practices and customs "(1) remov[e] Indian children from their homes without affording them, their parents, or

their tribe a timely and adequate hearing as required by the Due Process Clause, (2) remov[e] Indian children from their homes without affording them, their parents, or their tribe a timely and adequate hearing as required by the Indian Child Welfare Act, and (3) remove Indian children from their homes without affording them, their parents, or their tribe a timely and adequate hearing and then coercing the parents into waiving their rights under the Due Process Clause and Indian Child Welfare Act to such a hearing." Id. at p. 3.

Pending before the court are motions to dismiss the complaint by all defendants.[1]  (Dockets 33, 37 & 39).  Defendants contend (1) the court should not entertain this action under the Younger[2] and Rooker-Felderman[3] abstention doctrines; (2) plaintiffs failed to exhaust their state court remedies; (3) plaintiffs lack standing; (4) plaintiffs have failed to state a claim upon which relief can be granted; and (5) plaintiffs' ICWA claims cannot be vindicated under 42 U.S.C. § 1983.  (Docket 34).  Based on the court's analysis, the defendants' motions to dismiss are denied.

---

[1]In addition to filing their own motions to dismiss, Kim Malsam-Rysdon, Luann Van Hunnik, and Mark Vargo joined in Judge Davis' motion to dismiss. (Dockets 36 & 39).

[2]Younger v. Harris, 401 U.S. 37 (1971).

[3]D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983) and Rooker v. Fid. Trust Co., 263 U.S. 413 (1923).

**DISCUSSION**

**A.    Younger Abstention Doctrine**

"Under Younger v. Harris, . . . federal courts should abstain from exercising jurisdiction in cases where equitable relief would interfere with pending state proceedings in a way that offends principles of comity and federalism." Aaron v. Target Corp., 357 F.3d 768, 774 (8th Cir. 2004).  The Supreme Court of the United States recently clarified the limited applicability of the Younger abstention doctrine in Sprint Commc'ns, Inc. v. Jacobs, 134 S. Ct. 584, 591 (2013).[4]  The Supreme Court reversed the United States Court of Appeals for the Eighth Circuit's decision applying the Younger doctrine, held the Eighth Circuit's criteria for use of Younger abstention was overly permissible, and adopted a more restrictive test for application of the Younger doctrine.  Sprint, 134 S. Ct. at 591.  The Supreme Court held Younger abstention applies in only three categories of cases:

> First, Younger preclude[s] federal intrusion into ongoing state criminal prosecutions.  Second, certain civil enforcement proceedings warrant[ ] abstention.  Finally, federal courts refrain[ ] from interfering with pending civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions.

Id. at 591 (citations omitted).

─────────────

[4]Sprint was decided on December 10, 2013.  Thereafter, the court ordered the parties to file supplemental briefing discussing the impact of Sprint on the issues pending in defendants' motions to dismiss.  (Docket 58).  The parties subsequently filed additional briefing.  (Dockets 59, 62, 63, 64 & 65).

Prior to the decision in Sprint, the Younger abstention analysis in the Eighth Circuit revolved around the three-part test derived from the Supreme Court's decision in Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432-37 (1982).  In Middlesex, the court identified several factors that should lead to abstention under Younger: (1) the existence of an ongoing state judicial proceeding, (2) which implicates important state interests, and (3) which provides an adequate opportunity to raise constitutional challenges. Middlesex, 457 U.S. at 432.  However, in Sprint, the Supreme Court clarified that these three factors are "not dispositve; they [are] instead, *additional* factors appropriately considered by the federal court before invoking Younger," which itself sets forth the three limited circumstances discussed above in which abstention is appropriate.  Sprint, 134 S. Ct. at 593 (emphasis in original).

Defendants assert abstention is appropriate under the second and third exceptional circumstances to federal jurisdiction discussed in Sprint as well as the factors established in Middlesex.  (Dockets 34 at pp. 22-27; 59 at pp. 2-5). Plaintiffs argue none of the exceptional circumstances are applicable in this case.

### 1.     Ongoing state criminal prosecution

Although defendants do not expressly discuss the first exceptional circumstance, they imply in their argument that neglect proceedings could potentially result in the filing of a formal complaint or charge.  (Docket 59 at p.

4

2).  In Sprint, the Court found abstention is appropriate under Younger to preclude intrusion into an *ongoing* state criminal prosecution.  Sprint, 134 S. Ct. at 591 (emphasis added).  Defendants point out Ms. Walking Eagle's case is ongoing and "there continues to be ongoing judicial proceedings involving the temporary care and custody of Indian children in Pennington County who are part of plaintiffs' proposed class of plaintiffs.  (Docket 59 at p. 4).

In this case, plaintiffs are not challenging any ongoing state criminal proceeding.  (Docket 1 at ¶¶ 3-4).  In fact, plaintiffs point out numerous times in their briefing they are not challenging any prior or ongoing state proceeding.  Rather, the remedies sought by plaintiffs would operate prospectively.  (Docket 62 at p. 7, n.3).  The court finds this first exceptional circumstance is not applicable because any order by this court would not intrude into an ongoing state criminal prosecution.

### 2.     Civil enforcement proceedings

Defendants assert abstention is appropriate under the holding in Sprint because this court is faced with an action which requests interference with state civil proceedings.  (Docket 59 at p. 2).  In Sprint, the Court clarified that abstention is appropriate in certain civil enforcement proceedings.  Sprint, 134 S. Ct. at 591.  The Court explained "[o]ur decisions applying Younger to instances of civil enforcement have generally concerned state proceedings 'akin to a criminal prosecution' in 'important respects.' "  Id. at 592.  "Such

5

enforcement actions are characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act." Id. (citations omitted).  "In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action."  Id.

Defendants contend Judge Davis is a named defendant in this litigation "because of his role in the enforcement of child welfare laws of the State of South Dakota and the Indian Child Welfare Act." (Docket 59 at p. 2). Defendants assert "investigations are conducted when allegations of abuse and neglect are made to the State. . . . [and] [w]hen warranted, such investigations result in the filing of a formal complaint or charge."  Id.  As a result, defendants assert this case meets the second factor established by the Supreme Court in Sprint and makes abstention appropriate.

In support of their position, defendants cite Moore v. Sims, 442 U.S. 415, 419-20 (1979), which involved an action commenced by parents against state actors alleging the removal of Moore's children was a violation of the law.[5]

Plaintiffs argue this second exceptional circumstance does not apply because there is "no civil proceeding akin to a criminal proceeding . . . pending against any of the plaintiffs." (Docket 62 at p. 7).  Plaintiffs also argue Moore is factually distinguishable from this case because in Moore, plaintiffs sought a

---

[5]In Sprint, the Supreme Court also cited to Moore when discussing the applicability of abstention to civil enforcement proceedings.  Sprint, 134 S. Ct. at 592.

federal injunction halting the continuation of the state's proceedings against them, whereas in this case, plaintiffs are only seeking prospective relief, which will not interfere with any ongoing case.  Id.

The court finds the second exceptional circumstance is not applicable in this case.  Defendants' reliance on Moore is misplaced.  In Moore, the issue was whether the district court should have exercised jurisdiction in light of the pending state proceedings.  Moore, 442 U.S. at 418.  Any ruling by the federal court in Moore would have necessarily impacted the underlying state proceeding.  As a result, the Supreme Court held the district court should not have exercised jurisdiction.  Id.  Unlike the facts in Moore, plaintiffs in this case are not challenging any pending state court action.  Neither are plaintiffs challenging any ruling by the state court.  Rather, plaintiffs are only seeking prospective relief and, as such, any order by this court would not impact an ongoing state proceeding.  The court finds abstention is not appropriate under the second exceptional circumstance.

### 3. Civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions

Defendants contend "this case qualifies under the third class of 'exceptional circumstances' " because they assert "[p]laintiffs are seeking to dictate how state court proceedings are conducted by requiring the state courts to conduct a full adjudication at the 48-hour hearing of the emergency-removal

stage of the proceedings." (Docket 59 at p. 3).  Defendants claim plaintiffs'

"action seeks to interfere with the state courts' ability to perform their judicial

functions under state law." Id. at pp. 4-5.

Plaintiffs argue "no orders or judgments issued by a state court will be

rendered unenforceable or impaired if this Court grants the relief sought by the

Plaintiffs." (Docket 62 at p. 9).  Plaintiffs reiterate they are challenging the

policies and practices employed by state officials in connection with judicial

proceedings and are not challenging prior state court judgments or orders.  Id.

Plaintiffs contend defendants' arguments go to the merits of the case and

should not be considered at this juncture of the proceedings.  Id.

Plaintiffs' complaint seeks prospective relief.  Nothing in the complaint

seeks to interfere with any ongoing state judicial function or challenges any

previous state court ruling.  At this stage of the litigation the court is not

considering the merits of plaintiffs' claims.  Rather, the court is concerned with

whether plaintiffs failed to state a claim upon which relief can be granted.

Based on the complaint filed in this case, the court finds abstention under the

third exceptional circumstance outlined in Sprint would be inappropriate.

### 4.    Additional factors under Middlesex

Having determined the three exceptional circumstances requiring

abstention under Younger are not applicable in this case, it is not necessary for

the court to consider the additional factors for abstention established in

Middlesex.  See Middlesex, 457 U.S. at 432.  In Sprint, the Court held the

Middlesex factors are "not dispositve; they [are] instead, *additional* factors

appropriately considered by the federal court before invoking Younger."

Sprint, 134 S. Ct. at 593 (emphasis in original).  Even considering the

additional factors, the court finds abstention would be inappropriate.

### a.      Existence of an ongoing state judicial proceeding

Defendants contend there are ongoing state proceedings involving Ms.

Walking Eagle.[6]  (Docket 34 at p. 23).  Furthermore, defendants contend "there

is no question regarding the existence of ongoing state proceedings involving

the temporary care and custody of Indian children in Pennington County and

that there will continue to be such proceedings commenced even after the

instigation of this litigation."  Id.  Defendants contend these future hearings

require the court to abstain from adjudicating plaintiffs' federal claims.  Id.

Plaintiffs argue there is no pending state court litigation involving the

plaintiffs which would be impacted by a ruling from this court on the merits of

the complaint.  (Docket 43 at p. 24).  Plaintiffs assert Ms. Walking Eagle's

ongoing case is unrelated to the current action and does not deprive the court

_____

[6]On January 27, 2014, counsel for plaintiffs notified the court that the
Seventh Judicial Circuit Court dismissed a pending abuse and neglect case
involving plaintiff Rochelle Walking Eagle and transferred jurisdiction to the
Oglala Sioux Tribal Court pursuant to the provisions of the Indian Child
Welfare Act.  (Docket 68).  A copy of the court's order of dismissal was attached
to the notice.  (Docket 68-1).

of jurisdiction to decide the merits of this case.  Id.  Plaintiffs also contend the mere fact future 48-hour hearings are going to take place is not a reason for this court to abstain from adjudicating the claims.  Id.

The court agrees 48-hour hearings involving Indian children will continue to occur during the pendency of this litigation, however, "the question presented under the first prong of the Younger inquiry is not simply whether there are ongoing state judicial proceedings, but whether the federal proceedings at issue will interfere with such state proceedings." Olivia Y. ex rel. Johnson v. Barbour, 351 F. Supp. 2d 543, 567 (S.D. Miss. 2004).  The court concludes the relief requested by plaintiffs will not interfere with ongoing state court proceedings.  As set out in the complaint, plaintiffs allege defendants' failures include removing Indian children from their homes without affording them, their parents, or their Tribe a timely and adequate hearing and coercing the parents into waiving their rights under the Due Process Clause and the Indian Child Welfare Act.  (Docket 1 at p. 3).

If these claims are proven, an order by this court remedying such failures would not interfere with ongoing 48-hour hearings involving Indian children.  Plaintiffs are not seeking to enjoin any state proceedings nor are they seeking to enjoin defendants from enforcing state law.  Rather, the relief sought by plaintiffs would support the state's interest involving the protection of Indian children in abuse and neglect cases.

10

### b.    Important state interests

The second factor requires this court to determine whether the issue
implicates important state interests.  Middlesex, 457 U.S. at 432.  Defendants
and plaintiffs agree the state has an important interest in protecting children
from abuse and neglect.  (Dockets 34 at p. 24 and 43 a p. 26).  The second
factor is satisfied.

### c.    Adequate opportunity to raise constitutional challenges

The third factor requires this court to consider whether the state forum
"afford[s] an adequate opportunity to raise . . . constitutional claims."
Middlesex, 457 U.S. at 432.  Defendants contend the South Dakota Supreme
Court resolved the issues plaintiffs allege in their complaint in Cheyenne River
Sioux Tribe v. Davis, 822 N.W.2d 62 (S.D. 2012).  (Docket 34 at p. 25).  In that
case, the South Dakota Supreme Court held ICWA was not applicable at the
temporary or emergency custody stage.  Id.  Defendants argue this decision
clearly demonstrates how plaintiffs' constitutional claims can be presented to
the state courts.  Id.

Plaintiffs contend, "[m]erely because a state forum is available does not
mean the forum provides an adequate opportunity to (1) raise all the
constitutional claims the plaintiff is raising in the federal suit, or (2) obtain a
ruling in state court prior to suffering irreparable injury."  (Docket 43 at p. 26).
Under Younger, abstention is not warranted where the state process being

11

challenged is "flagrantly and patently violative of express constitutional prohibitions" or where "danger of irreparable loss is both great and immediate." Younger, 401 U.S. at 53, 45 (citations omitted).

Plaintiffs' complaint alleges the 48-hour hearings result in significant and irreparable loss, including the separation of parents from their children. (Docket 43 at pp. 26-27). In this case, plaintiffs are not parties to any pending suit in state court through which their constitutional challenges could be resolved. In addition, a state court challenge would preclude plaintiffs from raising all the claims in their federal complaint. See LaShawn A. v. Kelly, 990 F.2d 1319, 1323 (D.C. Cir. 1993) (finding "no pending judicial proceeding in the District of Columbia which could have served as an adequate forum for the class of children . . . to present its multifaceted request for broad-based injunctive relief based on the Constitution and on federal and local statutory law."); Family Div. Trial Lawyers of Superior Court-D.C., Inc. v. Moultrie, 725 F.2d 695 (D.C. Cir. 1984) (finding abstention inappropriate because "plaintiff-appellants were not parties to any pending suit in the local courts in which their constitutional challenges could naturally be resolved."). The court finds abstention improper under the third factor.

Abstention under Younger, as clarified by the Supreme Court in Sprint, is not appropriate in this case. In addition, the court finds abstention is not

appropriate under the additional factors established in <u>Middlesex</u>.  The motions

to dismiss based on the <u>Younger</u> abstention doctrine are denied.

## B.    **<u>Rooker-Feldman</u> Abstention Doctrine**

Defendant Mark Vargo asserts this court lacks subject matter

jurisdiction under the <u>Rooker-Feldman</u> doctrine.  (Docket 39 at pp. 6-7).  The

Eighth Circuit described this doctrine as follows:

> The <u>Rooker-Feldman</u> doctrine forecloses not only
> straightforward appeals but also more indirect attempts
> by federal plaintiffs to undermine state court decisions.
> Thus, a corollary to the basic rule against reviewing
> judgments prohibits federal district courts from
> exercising jurisdiction over general constitutional claims
> that are "inextricably intertwined" with specific claims
> already adjudicated in state court.  A general federal
> claim is inextricably intertwined with a state court
> judgment "if the federal claim succeeds only to the extent
> that the state court wrongly decided the issue before it."
> In such cases, "where federal relief can only be predicated
> upon a conviction that the state court was wrong, it is
> difficult to conceive the federal proceedings as, in
> substance, anything other than a prohibited appeal of the
> state-court judgment."  The state and federal claims need
> not be identical.

<u>Lemonds v. St. Louis County</u>, 222 F.3d 488, 492–93 (8th Cir. 2000) (internal

citations omitted).

Plaintiffs contend, and the court agrees, Mr. Vargo's reliance on the

<u>Rooker-Feldman</u> doctrine is misplaced.  "The <u>Rooker-Feldman</u> doctrine is

confined to cases . . . brought by state-court losers complaining of injuries

caused by state-court judgments rendered before the federal district court

proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 281 (2005). In this case, plaintiffs are not seeking review of the state court judgments in their cases or asking this court to review the merits of those cases. Rather, plaintiffs are requesting the court review the alleged inadequacies of the procedures employed during 48-hour hearings. If plaintiffs are successful in their claims, any order by this court would apply prospectively and would not impact prior state court rulings. This action is not "inextricably intertwined" with the state court judgments against the plaintiffs. See Lemonds, 222 F.3d at 492-93. The court finds the Rooker-Feldman doctrine does not deprive the court of subject matter jurisdiction.

## C.    Standing

Defendants contend the Oglala Sioux Tribe and Rosebud Sioux Tribe lack standing to bring this action. "In every federal case, the party bringing the suit must establish standing to prosecute the action." Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Id. (citing Warth v. Seldin, 422 U.S. 490, 498 (1975). The doctrine of "standing is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). To satisfy the case-or-controversy requirement, "a

14

plaintiff must, generally speaking, demonstrate that he has suffered injury in fact, that the injury is fairly traceable to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." Bennett v. Spear, 520 U.S. 154, 162 (1997) (internal quotations omitted).

The complaint alleges:

> The Tribes bring this action as *parens patriae* to vindicate rights afforded to their members by the Due Process Clause of the Fourteenth Amendment and by ICWA. The Tribes and their members have a close affiliation, indeed kinship, with respect to the rights and interests at stake in this litigation. The future and well-being of the Tribes is inextricably linked to the health, welfare, and family integrity of their members.

(Docket 1 at p. 4).

Defendants contend the only section of ICWA that applies to emergency custody proceedings is § 1922. (Docket 34 at p. 29). Defendants assert because § 1922 "does not confer any discernible rights to the tribes, the Oglala Sioux Tribe and Rosebud Sioux Tribe cannot demonstrate any injury capable of redress . . . ." Id. Defendants argue the Tribes "may not sue under § 1983 to vindicate a sovereign right" because the Tribes are not "persons" under the Act. Id.

Defendants suggest the only way the Tribes can "have standing is to vicariously assert the rights afforded to their members." Id. at p. 30. Defendants contend the Tribes cannot assert the doctrine of *parens patriae* to satisfy the justiciability requirement because they are not representing the

15

interest of "all" Tribal members, "but only those members who are parents and custodians of Indian children." Id.

In order for the Tribes to have standing *parens patriae*, the Tribes must show the claims "are asserted on behalf of *all* of the sovereign's citizens. The *parens patriae* doctrine cannot be used to confer standing on the Tribe to assert the rights of a dozen or so members of the Tribe." United States v. Santee Sioux Tribe of Nebraska, 254 F.3d 728, 734 (8th Cir. 2001) (citations omitted, emphasis in original).

Plaintiffs claim this requirement is met, arguing the Tribes "filed this lawsuit because they are fighting for their survival, not just fighting for the families who appear in Defendants' 48-hour hearings." (Docket 43 at p. 32). In Dep't of Health and Social Servs. v. Native Village of Curyung, 151 P.3d 388, 402 (Alaska 2006), the court held the Village could bring the suit *parens patriae* to "prevent future violations of the Adoption Act and the Indian Child Welfare Act." The court found "the well-being of individual families and children [were] inextricably bound up with the villages' ability to maintain their integrity, which 'is something that can occur only through the children of the Village." Id.

The purpose of ICWA, as declared by Congress, is to "protect the best interests of Indian children and to promote the stability and security of Indian tribes and families . . . ." 25 U.S.C. § 1902.  Congress specifically found "that

there is no resource that is more vital to the continued existence and integrity of the Indian tribes than their children . . . ."  25 U.S.C. § 1901(3).

Given the Congressionally established purposes of the Indian Child Welfare Act, the court finds the Tribes have *parens patriae* standing to bring this action and to litigate the alleged violations of the Due Process Clause and ICWA.  The focus of this litigation is not to redress past injuries to plaintiffs; rather, it is to prevent future violations of the Due Process Clause of the Fourteenth Amendment and ICWA.  The court finds this action is inextricably bound up with the Tribes' ability to maintain their integrity and "promote the stability and security of the Indian tribes and families."  25 U.S.C. § 1902.  The motions to dismiss for lack of standing are denied.

**D.    Administrative Remedies**

Defendants move for dismissal based on plaintiffs' failure to exhaust their state law remedies.  (Docket 34 at pp. 27-29).  Defendants contend the Eighth Circuit requires "a litigant asserting a deprivation of procedural due process" to exhaust state law remedies "before such an allegation states a claim under § 1983."  Id. at pp. 27-28 (quoting Wax'n Works v. City of St. Paul, 213 F.3d 1016, 1019 (8th Cir. 2000).

Defendants attempt to apply Wax'n Works too expansively.  See Wax'n Works, 213 F.3d at 1019 (finding "a litigant asserting a deprivation of [a property right violation of ] procedural due process must exhaust state

remedies before such an allegation states a claim under § 1983.").  The Eighth Circuit limited the holding in Wax'n Works to suits seeking redress for loss of a property interest.  See Crooks v. Lynch, 557 F.3d 846, 848 (8th Cir. 2009).

"A 1983 plaintiff . . . is not required to exhaust state judicial or administrative remedies before proceeding in federal court." Bressman v. Farrier, 900 F.2d 1305, 1310 (8th Cir. 1990) (citing Patsy v. Florida Bd. of Regents, 457 U.S. 496, 500-07 (1982)).  The Eighth Circuit recognized an exception to the general rule.  Exhaustion of state remedies prior to bringing a § 1983 claim is not required.

The holding in Wax'n Works does not control the outcome in this case. The motions to dismiss for failure to exhaust state law remedies are denied on this basis.

## E.    Motion to Dismiss Standard

Rule 12(b)(6) provides for dismissal if the plaintiffs fail to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In evaluating the defendants' Rule 12(b)(6) motion, the court accepts as true all of the factual allegations contained in plaintiffs' complaint and grants all reasonable inferences in favor of plaintiffs as the nonmoving party.  Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) ("a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' ") (citing Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).  See

18

also Crooks, 557 F.3d at 848 (the court must review "a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting the facts alleged in the complaint as true and granting all reasonable inferences in favor of the plaintiff, the nonmoving party.") (brackets omitted).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 556 U.S. at 679.

### 1.    Whether the defendants are policymakers under § 1983

Liability for a government entity under 42 U.S.C. § 1983 can exist only where the challenged policy or practice is "made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978).  A policy maker is one who "speak[s] with final policymaking authority . . . concerning the action alleged to have caused the particular constitutional or statutory violation at issue," that is one with "the power to make official policy on a particular issue." Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989); see also Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir. 1987) ("In an official-capacity suit, the plaintiff must prove more than that his constitutional rights

19

were violated by the named individual defendant, for a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the violation.  That is, the entity's 'policy or custom' must have 'caused' the constitutional violation; there must be an 'affirmative link' or a 'causal connection' between the policy and the particular constitutional violation alleged.").

An "official policy" involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish governmental policy.  <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 483 (1986).

### a.   Judge Davis

Judge Davis asserts "[i]n order for the Court to sustain Plaintiffs' Due Process claims, Plaintiffs' must first make the threshold showing [he] is a 'policymaker.'" (Docket 34 at p. 12).  Judge Davis contends "the process involved in the 48-hour hearings is set by statute . . . [and he] is compelled by oath to follow the procedures set forth in those statutes." <u>Id.</u>

Plaintiffs say they are not challenging the procedures at 48-hour hearings which are prescribed by South Dakota statute.  (Docket 43 at p. 20). Rather, plaintiffs claim Judge Davis has instituted six of his own policies, practices and customs for 48-hour hearings which violate the Due Process Clause and ICWA.  (Docket 43 at pp. 3-4).  These include: not allowing Indian

parents to see the ICWA petition filed against them; not allowing the parents to see the affidavit supporting the petition; not allowing the parents to cross-examine the person who signed the affidavit; not permitting the parents to present evidence; placing Indian children in foster care for a minimum of 60 days without receiving any testimony from qualified experts related to "active efforts" being made to prevent the break-up of the family; and failing to take expert testimony that continued custody of the child by the Indian parent or custodian is likely to result in serious emotional or physical damage to the child.  Id. at pp. 2-4.

Taking the allegations in the complaint as true, the court finds that Judge Davis is a policymaker.

### b.    Kim Malsam-Rysdon and Luann Van Hunnik

Ms. Malsam-Rysdon is the Cabinet Secretary for the South Dakota Department of Social Services (SDDSS) and is responsible for the administration and functioning of the SDDSS.  (Docket 38 at p. 1).  Ms. Van Hunnik is a Regional Manager for Region 1 which is comprised of Pennington County.  Id. at p. 2.  As the Regional Manager, Ms. Van Hunnik oversees the Rapid City office for the Division of Child Protection Services and supervises Child Protection Supervisors within the region.  Id.

Ms. Malsam-Rysdon and Ms. Van Hunnik (hereinafter referred to as "DSS defendants") contend they are not policymakers because "the process

beginning at the 48-hour hearing juncture is fully within the control of the presiding judicial official" and SDDSS employees and officials "clearly have no control over a judicial official's interpretation or application of applicable law." Id. at p. 4.  DSS defendants contend the complaint does "not allege that an unconstitutional 'policy or custom' of the State or South Dakota Department of Social Services was the 'moving force' behind the injuries." Id. at p. 6.  DSS defendants suggest the complaint does not identify any policy, practice or custom of DSS that "restricts the level of due process afforded at the 48 hour hearings." Id. at p. 8.

Plaintiffs claim DSS defendants are "overlooking the scope of Plaintiffs' allegations against them." (Docket 44 at p. 5).  Plaintiffs' complaint alleges DSS has an independent obligation to provide Indian parents with copies of the petition for temporary custody and the ICWA affidavit prior to the 48-hour hearing.  Id.  Plaintiffs argue defendants' failure to train their staff accordingly violates plaintiffs' rights to due process.  Id.  Plaintiffs also allege "DSS defendants fail to take appropriate actions _during and after_ the 48-hour hearing to satisfy their constitutional duty to ensure that Indian parents receive 'an adequate post-deprivation hearing.' "  Id. (emphasis in original). Plaintiffs argue the DSS defendants should do everything they reasonably can to ensure the parents receive a meaningful hearing at a meaningful time.  Id. Instead of fulfilling these obligations, the complaint alleges DSS defendants

"have a policy, practice, and custom of ratifying and acquiescing in the policy, practice, and custom of Judge Davis to deny Indian parents a meaningful hearing at a meaningful time." Id. at pp. 5-6.  The complaint also alleges DSS defendants failed to train their staff on how to seek and secure for Indian parents the federal rights to which those parents are entitled and, as a result, Indian parents suffer irreparable injury.  (Docket 1 at ¶¶ 46 & 48).

Because neither Ms. Malsam-Rysdon nor Ms. Van Hunnik appear at the 48-hour proceedings personally, the claims made by plaintiffs relate to a "failure to train" other DSS employees whom they supervise.  To survive a motion to dismiss on a "failure to train" claim, plaintiffs must show (1) the policymaker's training practices were inadequate, (2) the policymaker was deliberately indifferent to the rights of the plaintiffs, and (3) the training deficiencies cause constitutional deprivation.  Ulrich v. Pope Cnty., 715 F.3d 1054, 1061 (8th Cir. 2013).

At this point in the litigation, the court is "bound to accept as true, for purposes of [a Rule 12(b)(6)] motion, the facts alleged by the plaintiff[s]." Stephens v. Assoc. Dry Goods Corp., 805 F.2d 812, 814 (8th Cir. 1986). Plaintiffs allege "DSS is intimately involved in every aspect of temporary custody proceedings involving Indian children in Pennington County—conducting the investigation, preparing the affidavit, attending the hearing, and controlling what happens to the child during the 60 days

following the hearings—and has primary responsibility during that entire time for both the physical and legal custody of the child." (Docket 44 at p. 2).

Specifically, plaintiffs allege DSS defendants contribute to the plaintiffs' injuries by failing to provide a copy of the petition and ICWA affidavit to Indian parents prior to the 48-hour hearing, by adopting the unconstitutional practices of the circuit court during 48-hour hearings, by failing to ensure Indian parents receive an adequate post-deprivation hearing, and by failing to properly work with Indian parents following the 48-hour hearings. These claims, if true, are sufficient to survive a Rule 12(b)(6) motion to dismiss and are cognizable under 42 U.S.C. § 1983. See Whisman ex rel. Whisman v. Rinehart, 119 F.3d 1303, 1310 (8th Cir. 1997) (state officials who remove children from their parents' custody have a constitutional duty to ensure those parents receive an "adequate post-deprivation hearing"). These allegations, if true, would constitute a "moving force" behind the violations. The court finds Ms. Malsom-Rysdon and Ms. Van Hunnik are policymakers with regard to the allegation made in the complaint.

### c.    Mark Vargo

Mark Vargo is the State's Attorney for Pennington County. Mr. Vargo asserts plaintiffs' complaint alleges few facts regarding what plaintiffs believe he does or does not do which violates plaintiffs' rights. (Docket 40 at p. 2).

Mr. Vargo contends he "has no 'policies, practices, and customs' of his own, but rather follows South Dakota statute regarding 48-hour hearings."  Id.

Plaintiffs' complaint alleges Mr. Vargo has a policy, practice and custom of (1) not providing Indian parents with a copy of the petition or ICWA affidavit that forms the case against them either before or during the 48-hour hearing; (2) never seeks to introduce evidence to comply with the requirement of § 1912(d) and (e) of ICWA; (3) never seeks a meaningful hearing for at least sixty days and instead ratifies and acquiesces in the policy of Judge Davis; and (4) ignores ICWA's § 1922 requirement that emergency placement of an Indian child terminate immediately when the imminent physical danger has been removed.  (Dockets 45 at p. 2 & 1 at  ¶¶ 42, 46-47, 94-95, 98, 101, 111). Plaintiffs assert there is no South Dakota law preventing Mr. Vargo from complying with the alleged requirements.

Mr. Vargo cites Slaven v. Engstrom, 710 F.3d 772 (8th Cir. 2013) in support of his position that he is merely following South Dakota law and lacks any policymaking authority regarding 48-hour hearings.  (Docket 40 at pp. 3-4).  However, Slaven is distinguishable from the facts alleged in plaintiffs' complaint.  Slaven was decided under the summary judgment standard.  In this case, the standard is not whether Mr. Vargo is entitled to judgment as a matter of law; rather, the standard is whether, taking the facts alleged by plaintiffs as true, the complaint fails to state a claim for relief.  Braden, 588

25

F.3d at 594.  In addition, the plaintiffs in <u>Slaven</u> were attempting to hold county officials liable for the non-discretionary duty of enforcing state law. <u>Slaven</u>, 710 F.3d at 781 ("The Slavens' complaint essentially alleges that *Minnesota law*, and the state court judge's application of that law—not an independent Hennepin County policy—caused the procedural due process violations.") (emphasis in original).  In this case, plaintiffs contend "all of the activities that [Mr.] Vargo is engaging in that allegedly violate Plaintiffs' rights are discretionary activities that are *not* required by state law."  (Docket 45 at p. 4) (emphasis in original).

A policymaker must be "an official who is determined by state law to have the final authority to establish governmental policy" and who makes "a deliberate choice to follow a course of action made from among various alternatives."  <u>Ware v. Jackson County, Mo.</u>, 150 F.3d 873, 880 (8th Cir. 1998) (quotation omitted).  The facts as set forth in the complaint, which this court is bound to accept as true, are sufficient to support a finding that Mr. Vargo is a policymaker.

Mr. Vargo also asserts he is "entitled to absolute prosecutorial immunity from § 1983 suits when the attorney acts are within the scope of his prosecutorial duties."  (Docket 40 at p. 4).  Plaintiffs contend "[p]rosecutorial immunity protects prosecutors only from suits for damages."  (Docket 45 at p. 4).

26

The Supreme Court held "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." Imbler v. Pachtman, 424 U.S. 409, 431 (1976).  However, the Supreme Court's holding in Imbler does not establish that prosecutors are immune from suit for declaratory or injunctive relief.

In Heartland Acad. Cmty. Church v. Waddle, 427 F.3d 525 (8th Cir. 2005), "[Michael] Waddle, as Chief Juvenile Officer for the Second Circuit of Missouri, effected the removal of 115 boarding students from Heartland Christian Academy." Id. at 528.  Heartland filed suit seeking "declaratory and injunctive relief against Waddle and others under 42 U.S.C. § 1983 for alleged violations of the First, Fourth, and Fourteenth Amendments." Id. at 529.  The district court "granted Heartland a permanent injunction and declaratory relief." Id.

Waddle appealed the district court's decision.  On appeal, Waddle, citing a Ninth Circuit case, Coverdell v. Dep't of Soc. & Health Servs., 834 F.2d 758, 763 (9th Cir. 1987), argued he was entitled to absolute immunity from civil suit because he was a child services worker. Id. at 530.  Waddle argued his position as a child services worker was akin to a prosecutor. Heartland, 427 F.3d at 530-31.  The Eighth Circuit expressed some skepticism "that the immunity afforded prosecutors for their work in bringing criminals to justice should be available to juvenile officers in civil removal proceedings that are

unrelated to detaining juveniles for reasons of delinquency or their caretakers on criminal charges related to the care of the juveniles," but did not reach the issue. Id. at 531.

The Eighth Circuit concluded the holding in Coverdell was "inapposite" because "[i]n Coverdell, the prosecutorial-immunity defense was raised in response to the plaintiff's claim for damages, not in defense of the request for an injunction." Id. The court found "Heartland [was] not seeking damages from Waddle nor to punish him for his past judgment in effecting the mass removal of student from HCA without notice or hearing. Instead, Heartland has sought and received only declaratory and prospective injunctive relief prohibiting Waddle, as juvenile officer, from acting in violation of the Constitution when and if he removes (or directs the removal of) children from Heartland facilities in the future." Id. The court found Waddle was not entitled to absolute immunity and affirmed the decision of the district court. Id.

Mr. Vargo asserts the Eighth Circuit's holding in Heartland is not applicable here because the court did not indicate the reasons for its holding. (Docket 50 at p. 16). This court disagrees with Mr. Vargo's interpretation. The Eighth Circuit noted Heartland was not seeking damages or punishment of Waddle for his past behavior in removing children. Rather, it was to prevent constitutional violations going forward. This is precisely what plaintiffs' complaint is seeking. Plaintiffs are not seeking money damages from Mr. Vargo

28

nor are plaintiffs attempting to punish Mr. Vargo for the alleged constitutional violations which plaintiffs claim have already occurred.  Plaintiffs' complaint seeks to prevent future constitutional violations.  The court finds Mr. Vargo is not entitled to prosecutorial immunity for prospective injunctive or declaratory relief.

This court is not alone in reaching that conclusion.  The courts of appeal for the Eleventh Circuit and Fifth Circuit have held prosecutors are not immune from claims for injunctive relief.  See Bolin v. Story, 225 F.3d 1234, 1242 (11th Cir. 2000); Tarter v. Hury, 646 F.2d 1010, 1012 (5th Cir. 1981); see also VanHorn v. Nebraska State Racing Com'n., Civ. Nos. 4:03-cv-3336, 4:09-cv-3378, 2006 WL 3408055, *1 (D. Neb. 2006) (finding the Eighth Circuit and Eleventh Circuit held "that not even prosecutors are immune from suit for injunctive relief under § 1983") (citing Heartland, 427 F.3d at 530-31; Bolin, 225 F.3d at 1242).

In Watkins v. Garrett, Civ. No. 6:09-cv-6077, 2010 WL 2584287, *2 (W.D. Ark. 2010), the district court noted "[w]hile the Supreme Court has not held that prosecutors are immune from declaratory or injunctive relief, a plaintiff seeking such relief must show some substantial likelihood that the past conduct alleged to be illegal will recur."  Here, plaintiffs' complaint makes this exact claim, the conduct alleged to be a violation of the Due Process

Clause and ICWA will continue to recur at each 48-hour hearing involving

Indian parents.  Mr. Vargo's motion to dismiss on this basis is denied.

### 2.    Claim II: 25 U.S.C. § 1922

Defendants contend plaintiffs' claim for relief under 25 U.S.C. § 1922

should be dismissed for failure to state a claim.  (Docket 34 at pp. 6-12).

Plaintiffs' complaint asserts § 1922 provides both procedural and substantive

rights and that defendants are infringing upon those rights.  (Docket 1).

25 U.S.C. § 1922 provides:

> Nothing in this subchapter shall be construed to prevent the emergency removal of an Indian child who is a resident of or is domiciled on a reservation, but temporarily located off the reservation, from his parent or Indian custodian or the emergency placement of such child in a foster home or institution, under applicable State law, in order to prevent imminent physical damage or harm to the child. The State authority, official, or agency involved shall insure that the emergency removal or placement terminates immediately when such removal or placement is no longer necessary to prevent imminent physical damage or harm to the child and shall expeditiously initiate a child custody proceeding subject to the provisions of this subchapter, transfer the child to the jurisdiction of the appropriate Indian tribe, or restore the child to the parent or Indian custodian, as may be appropriate.

25 U.S.C. § 1922.

Defendants claim § 1922 "defers emergency custody cases involving

Indian children . . . to the respective state law procedures."  (Docket 34 at p. 7).

In other words, defendants contend § 1922 "creates an exception to the

important requirements of ICWA in these emergency situations to protect the best interests of the child." Id.  Under this interpretation, defendants assert "South Dakota statutory law is the source of the procedures governing emergency custody proceedings, not ICWA." Id. at p. 8.

Plaintiffs agree in part with defendants' interpretation of § 1922.  (Docket 43 at p. 6).  Plaintiffs agree the first sentence of § 1922 "authorizes state officials to employ state procedures to obtain emergency custody of the child." Id.  However, plaintiffs contend the second sentence of § 1922 requires these officials, once emergency custody of an Indian child is obtained, "to do two things for the protection of Indian parents and Indian children: insure that the emergency removal '*terminates immediately*' when the child can be returned home safely, and '*expeditiously initiate* a child custody proceeding.' " Id. (emphasis in original).  Defendants disagree, arguing the plaintiffs "focus only on a partial reading of the second sentence." (Docket 48 at p. 4).  Defendants point out the second sentence of § 1922 provides "the emergency *removal or placement* terminates immediately when such *removal or placement* is no longer necessary to prevent imminent physical damage or harm to the child and shall expeditiously initiate child custody proceedings subject to the provisions of this subchapter. . ." Id. (quoting 25 U.S.C. § 1922) (emphasis added).

Defendants also urge this court to consider holdings by six state courts which find that § 1922 is a statute of deferment.  (Docket 34 at pp. 7-8).

31

Defendants cite <u>Cheyenne River Sioux Tribe v. Davis</u>, 822 N.W.2d 62 (S.D. 2012); <u>State ex rel. Juvenile Dep't v. Charles</u>, 688 P.2d 1354 (Or. App. 1984); <u>D.E.D. v. State of Alaska</u>, 704 P.2d 774, 779 (Alaska 1985); <u>Matter of the Welfare of J.A.S.</u>, 488 N.W.2d 332 (Minn. Ct. App. 1992); <u>In re S.B. v. Jeannie V.</u>, 30 Cal. Rptr. 3d 726 (Cal. App. 4th 2005); and <u>State ex rel. Children, Youth and Families Dep't v. Marlene C.</u>, 248 P.3d 863 (N.M. 2011).  These cases are not binding on this court and, in fact, do not deal with the specific issue involved in this case.  These cases stand for the proposition that the first sentence of § 1922 permits state procedures to be used in the initial removal of an Indian child.  Plaintiffs agree with this principle.

The court finds under a plain reading of § 1922, the second sentence provides a substantive right to Indian parents.  A finding the second sentence of § 1922 contains a substantive right is harmonious with the purposes of ICWA.  Both plaintiffs and defendants agree Congress's purpose in enacting ICWA was to curb the alarmingly high rate of removal of Indian children from Indian parents.  (Dockets 43 at pp. 8-9 & 48 at p. 3).  Congress declared "that it is the policy of this Nation to protect the best interest of Indian children and to promote the stability and security of Indian tribes and families."  25 U.S.C. § 1902.  Congress found "there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children." 25 U.S.C. § 1901(3).

Defendants' argument that plaintiffs ignore a portion of the second sentence is overstated.  The second sentence of § 1922 provides the "official or [state] agency involved shall insure that the emergency *removal or placement* terminates immediately when such *removal or placement* is no longer necessary."  25 U.S.C. § 1922 (emphasis added).  A plain reading of the sentence contemplates that the emergency which existed when the child was taken from the home may no longer exist at the time of the 48-hour hearing or prior to placement.

The plaintiffs' complaint alleges defendants violate their substantive duties under § 1922 during 48-hour hearings because there is never an "inquiry into whether the cause of the removal has been rectified, nor does the court direct DSS to pursue that inquiry after the hearing."  (Docket 1 at ¶ 95).  Accepting as true the allegations in the complaint, plaintiffs set forth a valid claim for relief.  Defendants' motions to dismiss on this basis are denied.

### 3.    42 U.S.C. § 1983

Defendants contend even if plaintiffs' ICWA based claims are valid, the plaintiffs nonetheless "cannot vindicate those rights through an action brought pursuant to 42 U.S.C. § 1983" because ICWA provides a comprehensive remedial framework.  (Docket 34 at p. 11).  Generally, statutes which create individual rights are presumptively enforceable by § 1983.  See City of Rancho Palos Verdes, Cal. v. Abrams, 544 U.S. 113, 120 (2005) (recognizing a

33

rebuttable presumption that § 1983 provides an avenue for relief against a state actor who violates federal law); Gonzaga Univ. v. Doe, 536 U.S. 273, 284 (2002) ("Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983."); Blessing v. Freestone, 520 U.S. 329, 341 (1997) (noting if a plaintiff demonstrates a federal statute creates an individual right, a rebuttable presumption exists that the right is enforceable under § 1983).  A defendant may defeat this presumption by demonstrating "that Congress shut the door to private enforcement either expressly, through 'specific evidence from the statute itself,' or 'impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.' " Gonzaga Univ., 536 U.S. at 284 n. 4 (quotations omitted).

Defendants argue the sole remedy for claims based on alleged ICWA violations is provided in 25 U.S.C. § 1914, which permits an Indian child to petition the court to invalidate an action upon the showing of certain violations.  See 25 U.S.C. § 1914.  The Eighth Circuit has not considered whether § 1914 was intended to be a comprehensive remedial framework thereby making § 1983 inapplicable to claims based on alleged ICWA violations.

Plaintiffs argue "[n]othing in ICWA expressly displaces § 1983 as a vehicle to vindicate the rights that ICWA creates." (Docket 43 at p. 11).  The

34

plaintiffs agree § 1914 of ICWA "established certain remedies that help tribes and families protect some of their rights," but argue "courts have recognized that these remedies were not intended to eliminate the remedies under § 1983. . . ." Id.  Other courts have found § 1914 does not eliminate other rights of action available pursuant to § 1983.  In Curyung, the Supreme Court of Alaska found "that in passing § 1914, Congress attempted to provide a remedy that is not ordinarily available under § 1983." Curyung, 151 P.3d at 411.  The court found "Congress intended § 1914 not to displace § 1983, but rather to supplement it." Id. at 412; see also Native Village of Venetie I.R.A. Council v. State of Alaska, 944 F.2d 548 (9th Cir. 1991).  The court held allowing the § 1983 action to proceed "would not undermine or even affect" § 1914. Curyung, 151 P.3d at 412.

Defendants cite Doe v. Mann, 285 F. Supp. 2d 1229, 1240-41 (N.D. Cal. 2003), in support of their position that ICWA provides a comprehensive remedial framework for litigating alleged violations of ICWA.  (Docket 34 a p. 11).  On appeal, however, the Ninth Circuit Court of Appeals reaffirmed the holding in Venetie "that Congress intended to create a federal private right of action in tribes and individuals to seek a determination of their ICWA rights and obligations in federal district court . . . ." Doe v. Mann, 415 F.3d 1038, 1045 (9th Cir. 2005).

35

The court finds § 1914 does not bar plaintiffs from seeking remedies under § 1983 for violations of ICWA to which § 1914 is inapplicable.  Rather, § 1914 supplements the remedies available under § 1983.  See Curyung, 151 P.3d at 412.  Plaintiffs may seek a determination of their ICWA rights under § 1983 in federal court.

### 4.    Claim I: Due Process

Plaintiffs' complaint alleges "[t]he policy, practice, and custom of the Defendants is to wait at least sixty days (and more often ninety days) before providing parents whose children have been removed from their custody with adequate notice, an opportunity to present evidence on their behalf, an opportunity to contest the allegations, and a written decision based on competent evidence."  (Docket 1 at ¶ 65).  Plaintiffs contend this behavior violates the Due Process Clause.  (Docket 1).

"The due process clause ensures every individual subject to a deprivation 'the opportunity to be heard at a meaningful time and in an meaningful manner.' " Swipies v. Kofka, 419 F.3d 709, 715 (8th Cir. 2005) (quoting Mathews v. Eldridge, 424 U.S. 319, 333 (1976).  "To set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake.  Second, the plaintiff must prove that the defendant deprives him of such an interest without due process of law." Gordon v. Hansen, 168 F.3d 1109, 1114 (8th Cir. 1999) (citations omitted).

36

In this case, plaintiffs' complaint meets the first requirement.  The Due Process Clause of the Fourteenth Amendment "protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children."  Troxel v. Granville, 530 U.S. 57, 66 (2000).  The defendants agree the "private interests of the individual Plaintiffs at stake here are no doubt fundamental."  (Docket 34 at p. 13).

Defendants contend the policies, practices, and customs challenged by plaintiffs do not deprive the plaintiffs of due process.  Id. at pp. 13-14.  In determining what due process requires, the court considers three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the functions involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 335.

As indicated above, the first factor is satisfied.  The second factor requires this court to consider the risk the procedures used will lead to erroneous decisions.  Id.  Plaintiffs allege the procedures used by defendants do lead to erroneous decisions because at the 48-hour hearings the Indian parents are not permitted to see the petition filed against them, are not permitted to see the affidavit in support of that petition, are not permitted to cross-examine the person who signed the affidavit, and are not permitted to

present evidence.  (Docket 1 ¶ 42 & Docket 43 at p. 13).  Under a motion to dismiss, the court accepts these allegations as true.  <u>Braden</u>, 588 F.3d at 594.

Defendants contend the procedures established and used during 48-hour hearings protect the due process rights of plaintiffs.  Defendants compare South Dakota's emergency custody procedures to a probable cause hearing in the criminal context.  Defendants note, in the criminal context, after an arrest and arraignment, it is not unusual for a defendant to wait months before receiving a full trial on the merits.  (Docket 34 at p. 15).  While this may be factually correct, what is distinct is that defendants in a criminal case are often represented by counsel at an arraignment and are provided a copy of the information or indictment.  In this case, the plaintiffs allege a copy of the petition is not provided to the parents nor is any supporting affidavit.  Rather, Indian parents are left in the dark not knowing the allegations against them while suffering the consequence of losing custody of a child for 60 to 90 days.

One of the core purposes of the Due Process Clause is to provide individuals with notice of claims against them.  In this case, taking the allegations in the complaint as true, the court finds the risk of erroneous deprivation high when Indian parents are not afforded the opportunity to know what the petition against them alleges.  This deprivation is compounded if the child is taken from the parents without considering whether the emergency that permitted the child's removal still exists.

38

Mr. Vargo asserts there is no statute requiring him to provide the Indian parents with the evidence compiled against them at the 48-hour hearings. (Docket 50 at p. 3).  Mr. Vargo correctly identifies the issue as whether the "Due Process Clause require[s] that the Petition for Temporary Custody Order and ICWA affidavit be given to the parents before or at the 48-hour hearing." Id.  The plaintiffs need not prove their claims at this point.  The standard under Rule 12(b)(6) is whether, taking the facts alleged by plaintiffs as true, the complaint fails to state a claim on which relief can be granted.  Braden, 588 F.3d at 594.  Keeping Indian parents in the dark as to the allegations against them while removing a child from the home for 60 to 90 days certainly raises a due process issue.

The third factor requires the court to consider the fiscal and administrative burdens of providing Indian parents with a copy of the petition and ICWA affidavit at their 48-hour hearings.  Eldridge, 424 U.S. at 335.  The court finds the burden is inconsequential.  The petition and affidavit are provided to the presiding judge and can at very little cost be provided to Indian parents.

Defendants argue permitting evidence to be admitted at the 48-hour hearing and allowing parents to cross-examine the state's witnesses would be an undue burden because it would not provide the child's attorney, the parent's attorney, or the state's attorney an opportunity to fully and fairly

investigate and prepare their case.  (Docket 34 at p. 15).  Plaintiffs argue

allowing parents the opportunity to present evidence and cross-examine

witnesses is the same burden the defendants shoulder later in the process and

merely providing the safeguards sooner is not an undue burden.  (Docket 43 at

p. 15).  Assuming the allegations in the complaint are true, the court cannot

say that providing these safeguards sooner imposes an undue administrative or

financial burden on defendants.  Fundamental rights are at issue in the 48-

hour hearings.  If the allegations in the complaint are true, under the current

procedures, Indian parents are required to wait 60 days or longer before being

given the opportunity to present evidence and cross-examine witnesses in an

effort to return their children to their care or the care of an Indian custodian.

At that point, the deprivation of liberty has occurred.  The court finds the

allegations in the complaint, taken as true, establish a claim for a violation of

plaintiffs' due process rights.

> **5.    Claim III: Coercion**

Plaintiffs' complaint alleges Judge Davis and other "Seventh Circuit

judges have pursued a policy, practice, and custom of coercing Indian parents

into waiving" their rights under both the Due Process Clause and ICWA.

(Docket 1 at ¶ 113).  Plaintiffs claim the "presiding judge tells parents at the

outset of each 48-hour hearing that if they agree to 'work with' DSS, the court

will enter an order that could result in a return of their children by DSS

without further court involvement." Id. at ¶ 114.  Plaintiffs claim many parents

are "[e]nticed by the prospect of an early reunification" and agree to " 'work

with' DSS and waive their rights under the state and federal law to adequate

notice and timely hearing." Id. at ¶ 115.  Plaintiffs allege the presiding judge

fails to provide important information to parents prior to asking the parents to

waive their rights, including:

> (a) the parents are not provided with adequate notice of
> the allegations against them and are not shown the
> petition for temporary custody or the ICWA affidavit; (b)
> the parents are not told that by agreeing to "work with"
> DSS, this will authorize DSS to retain custody of their
> children for at least another sixty days, during which
> time the parents will be allowed to visit their children only
> when and if DSS permits it; (c) the parents are not told
> that if they opt not to "work with" DSS, they may get a
> hearing more quickly; and (d) the parents are not told
> that if they decline, DSS has a duty under both state and
> federal law to work with the parents (and engage in active
> efforts to reunite the family) *anyway.*

Id. at ¶ 117 (emphasis in original).

Plaintiffs contend the other defendants acquiesce in this procedure.

Defendants note South Dakota law allows for this "informal" process "and,

therefore, it is an option that parents may choose to exercise." (Docket 34 at p.

20) (citing SDCL § 26-7A-19(2)).  Plaintiffs agree South Dakota law permits the

"informal" process, however, plaintiffs contend the "manner in which [Judge]

Davis (and the other Defendants) offer and apply it" is coercive.  (Docket 43 at

p. 21).  Plaintiffs claim the presiding judge fails to properly explain the

consequences of choosing the "informal" process.  Id.

41

A party may waive constitutional rights only if the waiver is knowing and voluntary and the waiving party "understand[s] the significance and consequences of a particular decision and [if] the decision is uncoerced." Godinez v. Moran, 509 U.S. 389, 401 n.12 (1993) (citation omitted). "[C]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights." Johnson v. Zerbst, 304 U.S. 458, 464 (1938) (citation and internal quotation marks omitted). "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." Id.

A failure to provide parents with the advisement of their fundamental rights or coercing a parent into waiving those rights would certainly amount to a constitutional violation. See Belinda K. v. Baldovinos, Civ. No. 10-02507, 2012 WL 13571, *7 (N.D. Cal. 2012) (finding plaintiff stated a claim for ineffective assistance of counsel where plaintiff's counsel did not adequately explain the significance of waiving rights under ICWA); Rivera v. Marcus, 696 F.2d 1016, 1026 (2d Cir. 1982) (finding no evidence in the record suggesting the party "intentionally and intelligently waived her due process rights.").

At this point in the litigation, the court is "bound to accept as true, for purposes of [a Rule 12(b)(6)] motion, the facts alleged by the plaintiff[s]." Stephens v. Assoc. Dry Goods Corp., 805 F.2d 812, 814 (8th Cir. 1986). As a result, although defendants contend the procedures followed during a 48-hour hearing appropriately advise parents of their constitutional and statutory rights, the facts as set forth by plaintiffs allege the rights are not appropriately

42

explained and the proceedings are conducted in such a way that the parents are not voluntarily and knowingly waiving their rights.  If the facts alleged by plaintiffs are true, plaintiffs' complaint sets forth a claim upon which relief may be granted.  Defendants' motions to dismiss on this basis are denied.

Based on the court's analysis and pursuant to the standards governing Rule 12(b)(6) motions, the court finds the plaintiffs' complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim [for] relief that is plausible on its face.' "  Braden, 588 F.3d at 594 ("quoting Iqbal, 556 U.S. at 663).  Accordingly, it is hereby

ORDERED that defendant Judge Jeff Davis' motion to dismiss (Docket 33) is denied.

IT IS FURTHER ORDERED that defendants Kim Malsam-Rysdon's and Luann Van Hunnik's motions to dismiss (Dockets 36 & 37) are denied.

IT IS FURTHER ORDERED that defendant Mark Vargo's motion to dismiss (Docket 39) is denied.

Dated January 28, 2014.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE

43