UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| OGLALA SIOUX TRIBE and | ) | Civ. 13-5020-JLV |
| ROSEBUD SIOUX TRIBE, as | ) | |
| *Parens patriae,* to protect the | ) | |
| Rights of their tribal members; and | ) | |
| MADONNA PAPPAN, and LISA | ) | |
| YOUNG, individually and on | ) | |
| behalf of all other persons | ) | |
| similarly situated, | ) | **DEFENDANTS' RESPONSE PLAINTIFFS'** |
| | ) | **MOTION FOR SUMMARY JUDGMENT** |
| Plaintiffs, | ) | **RE: 25 U.S.C. § 1922** |
| vs. | ) | |
| | ) | |
| LUANN VAN HUNNIK;  MARK VARGO; | ) | |
| HON. JEFF DAVIS;  and | ) | |
| KIM MALSAM-RYSDON, in their | ) | |
| Official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

In 1978, Congress enacted the Indian Child Welfare Act, 25 U.S.C. §§ 1901 et seq. ("ICWA"), as a remedial statute in order to address "the consequences to Indian children, Indian families, and Indian tribes of abusive welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." *Adoptive Couple v. Baby Girl*, ___ U.S. ___, 133 S. Ct. 2552, 2557 (2013) (internal citation omitted). "At the heart of the ICWA are its provisions concerning jurisdiction over Indian child custody proceedings." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 36 (1989).  "Various other provisions of ICWA Title I set procedural and substantive standards for those child custody proceedings that do take place in state court.  The procedural safeguards include requirements concerning notice and appointment

of counsel; parental and tribal rights of intervention and petition for invalidation of illegal proceedings; procedures governing voluntary consent to termination of parental rights; and a full faith and credit obligation in respect to tribal court decisions." *Id.* (citing 25 U.S.C. §§ 1901-1914).

Plaintiffs' Motion for Summary Judgment Re: 25 U.S.C. § 1922 (Document 110) deals with only one provision of ICWA, and specifically Judge Davis's interpretation of one provision of ICWA.  It does not discuss ICWA's other sections that Plaintiffs claimed in their Complaint were violated by Defendants, or how those provisions may affect Defendants' application of 25 U.S.C. § 1922. Section 1922 provides:

> Nothing in this subchapter shall be construed to prevent the emergency removal of an Indian child who is a resident of or is domiciled on a reservation, but temporarily located off the reservation, from his parent or Indian custodian or the emergency placement of such child in a foster home or institution, *under applicable State law*, in order to prevent imminent physical damage or harm to the child. The State authority, official, or agency involved shall insure that the emergency removal or placement terminates immediately when such removal or placement is no longer necessary to prevent imminent physical damage or harm to the child and shall expeditiously initiate a child custody proceeding subject to the provisions of this subchapter, transfer the child to the jurisdiction of the appropriate Indian tribe, or restore the child to the parent or Indian custodian, as may be appropriate.

(emphasis added).  Plaintiffs' argue that § 1922 of ICWA imposes twin duties on state officials: (1) "insure that the emergency removal or placement terminated immediately when such removal or place is no longer necessary to prevent imminent physical damage or harm to the child, and (2) "expeditiously initiate a child custody proceeding subject to the provisions of this subchapter, transfer the child to the jurisdiction of the appropriate Indian tribe, or restore the child to the parent or Indian custodian." (Document 110, p. 3) (citing 25 U.S.C. § 1922.)  Defendants have in fact argued that these twin duties are met. (Document 34, p. 7.)

Plaintiffs further contend that these twin duties apply to the South Dakota Department of Social Services ("DSS"), law enforcement, State's Attorney's office, and the state court judge as

the "authority, official, or agency involved" in the Indian child's emergency removal and placement. (Document 110, p. 14.)  Defendants agree that the twin duties apply to Defendants independently, but disagree that they apply to the Defendants in the collective for reasons discussed below.

Plaintiffs claim that the only way in which Defendants can meet these twin duties is to have an evidentiary hearing at the 48-hour hearing on the issue of whether the emergency removal or placement is still necessary. (Document 9-10.) Defendants disagree that evidence of the ongoing emergency is not received and considered by the trial court during 48-hour hearings, but agree that the evidence is not presented in accordance with the ordinary rules of evidence. *See Cheyenne River Sioux Tribe v. Davis*, 2012 SD 69, ¶ 12, 822 N.W.2d 62. Judge Davis, or the presiding judge, reviews either a "Pick-up-and-Place" Order, pursuant to SDCL § 26-7A-13(1)(b), or reviews the police report and ICWA affidavit, if the removal is done without prior court approval, pursuant to SDCL § 26-7A-12(4). In either case, the police report and ICWA affidavit are sufficient evidence for a trial court to order continued custody, based on "imminent danger to the child's life or safety."  *See Davis*, 822 N.W.2d at 65-66.

This Court ruled earlier this year that *if* Plaintiffs' could establish that during 48-hour hearings Defendants never inquire into "whether the cause of the removal has been rectified, nor does the court direct DSS to pursue that inquiry after the hearing," *then* Plaintiffs had set forth a valid claim. (Document 69, p. 33.) However, the record reflects that Defendants *do* inquire into ongoing "imminent danger" to the child when the ICWA affidavit or police report necessitate such additional inquiry.  Declaration of Peter Beauchamp ("Beauchamp Decl."), Exhibit ("Ex.") 1, Case Nos. A12-571, A12-468, A12-36, and A14-445.  Moreover, Judge Davis directs DSS to pursue that inquiry of "imminent child protection issues" in almost every one of his temporary

custody orders ("TCOs"), by authorizing the child(ren)'s return if no imminent danger remains. Beauchamp Decl. Ex 2.

Defendants wholeheartedly agree that the significance of what is at stake here cannot be understated.  (Document 110, p. 5.) Plaintiffs Motion for Summary Judgment Re: 25 U.S.C. § 1922 seeks to delete the first sentence of § 1922.   Plaintiffs ask the Court to interpret 25 U.S.C. § 1922 as no longer requiring "applicable State law" to make emergency removals or placements. This is contrary to the South Dakota Supreme Court's holding in *Cheyenne River Sioux Tribe v. Davis*, 2012 S.D. 69, 822 N.W.2d 62. While this holding is not binding on this Court, it is binding on Defendants.

The record establishes that Defendants collectively insure that the need for emergency removal and placement terminates immediately, and that Defendants "expeditiously initiate a child custody proceeding subject to the provisions of this subchapter, transfer the child to the jurisdiction of the appropriate Indian tribe, or restore the child to the parent or Indian custodian," as required by 25 U.S.C. § 1922.

Contrary to Plaintiffs' insistence, evidence *is* introduced, and *considered*, at the 48-hour hearing.   The ICWA affidavit and police report (if available) are evidence of the need for continued emergency placement. *See* Beauchamp Decl., Ex. 7. If a parent requests an evidentiary hearing, at or after the 48-hour hearing, one can be held ten days after notice of such proceeding is provided to the parent and the Tribe.   25 U.S.C. § 1912(a); SDCL § 26-7A-15.1(3); Beauchamp Decl. Ex. 1, A12-302, at 14:16-22. Affidavit of Robert L. Morris in Support of Defendants' Response to Plaintiffs' Motions for Partial Summary Judgment ("Morris Aff."), Exhibit ("Ex.") 27, A14-456. In the interim, DSS is authorized to return full legal and physical custody to the parent once no further imminent child protection issues remain. Beauchamp Decl.

Ex. 2.  DSS has voluminous protocols which dictate how such determinations are made. Morris Aff. Exs. 1-11.

However, because a "show cause" hearing could result in the termination of the emergency custody proceeding, and the initiation of the child custody proceeding, subject to the full panoply of ICWA's substantive and procedural rights, the trial court cannot convene such a proceeding until after the parent and Tribe have received ten-days notice of the "show cause hearing." 25 U.S.C. § 1912(a); SDCL 26-7A-15.1(3). The Tribes most often receive notice of the 48-hour hearing on the day of the 48-hour hearing, via email from Mr. Vargo's office.  Morris Aff. Ex. 26, Affidavit of Roxanne Erickson ¶ 28.  Even if ICWA permitted the trial court to do what Plaintiffs' suggest, i.e. continue the 48-hour hearing for a day or two, the trial court would still have to enter a temporary custody order to cover the interim period the child is in state custody. SDCL 26-7A-14.

Lastly, Plaintiffs have presented no evidence that Judge Davis has enacted a "policy, practice, or custom," for which the other named Defendants, or their staff, could acquiesce. Judge Davis and the other judges are interpreting 25 U.S.C. § 1922 with little jurisprudential guidance, but that does not establish a "policy, practice, or custom."  *See R.W.T. v. Dalton*, 712 F.2d 1225, 1232 (1983). Under the principle of stare decisis, litigants in similar situations should be treated the same. *Burgard v. Benedictine Living Communities*, 2004 S.D. 58, ¶ 13, 680 N.W.2d 296.

The record establishes that the issues raised by Plaintiffs are routinely raised by Plaintiffs' counsel, Dana Hanna, on behalf of his tribal clients. Beauchamp Decl. Ex. 1.  "In the judicial setting, previously decided questions of law involving similar fact situations often provide precedential value, embodying the concept of *stare decisis*." *Yellow Robe v. Bd. of Trustees of S. Dakota Retirement Sys.*, 2003 S.D. 67, ¶ 14, 664 N.W.2d 517 (citation omitted).

Thus, Judge Davis's consistency in his interpretation is not a "policy, practice, or custom" it is *stare decisis*. Consequently, Plaintiffs' cannot establish this threshold issue as to Judge Davis.

Because Defendants Vargo, Van Hunnik, and Valenti cannot acquiesce to a policy that does not exist, Plaintiffs' Motion for Summary Judgment Re: 25 U.S.C. § 1922 should be denied.

### FACTUAL BACKGROUND

Much of what Plaintiffs identify as "undisputed facts" are merely their interpretations of the transcripts produced in this case.   (Document 107.)   However, in offering these interpretations, Plaintiffs have cherry picked the facts that support their contentions, and ignored those that do not. *Cf.* Morris Aff. Ex. 27.

Plaintiffs have provided the Court with the evidence admitted and considered at the 48-hour hearing. Beauchamp Decl. Ex. 7. With rare exception, at 48-hour hearings involving Indian children, the State presents the judge with an ICWA affidavit from a DSS staff member outlining the basis for the child(ren)'s removal, including all exigent circumstances, and the staff members effort to place the Indian child(ren) within ICWA's placement preferences. *Id.*

Based on the evidence presented at the 48-hour hearing, the judge, if appropriate, issues a Temporary Custody Order ("TCO") which indicates that there is probable cause to find that the child(ren) is/are abused and neglected.  The trial court may not always articulate the basis for the TCO on the record, but in many instances the basis for the TCO is verbalized on the record. Beauchamp Decl. Ex. 1, Case Nos. A12-244, at 13:6-19; A12-712, at 9:17-21; A12-749, at 18:18-22; A13-20, at 14:20-23; A13-49, at 11:7-17; A13-560, at 7:22-25; A14-445, at 9:14-15, 11:21-23.  The TCO further provides that DSS is authorized to return full legal and physical custody of the child(ren) to the parents, guardian, or custodian if the Department "concludes that no further *imminent* child protection issues remain." Beauchamp Decl. Ex. 2 (emphasis added).

Next, in the more than 120 court files produced in this litigation, only one case involved a parent appearing at the 48-hour hearing with an attorney. Beauchamp Decl., Ex. 1, A12-302. In over ninety-nine percent of cases, parents, guardians, and custodians appear *pro se* at the 48-hour hearing. *See generally* Beauchamp Decl., Ex. 1. In the single case in which the parent appeared with an attorney, the parent sought to present testimony at the 48-hour hearing. Beauchamp Decl., Ex. 1, A12-302. Judge Thorstenson denied the request but scheduled an evidentiary hearing to convene twelve days later. *Id.* In other cases, the parents, guardians, and custodians were allowed to comment and ask questions of the court, but none asked to present evidence. Beauchamp Decl. Ex. 1, Case Nos. A10-50, 6:18 (Judge Davis asking the parents if they have any questions); A10-270, 5:3 (Judge Davis asking the parents if they have any questions); A10-358, 7:14 (Judge Davis asking the parents if they have any questions before appointing her an attorney); A10-773, 4:16 (Judge Davis asking the parents if they have any questions); A10-901, 5:7-8 (Judge Davis asking the parents if they have any questions); A10-955, 4:8 (Judge Davis allowing a grandparent to discuss the emergency placement); A10-1119, 6:19-22 (Judge Thorstenson allowing parent to make a statement regarding the allegations).

The transcripts further reflect that in many instances the child's tribal affiliation is often uncertain at the 48-hour hearing. Beauchamp Decl. Ex. 1, A10-487. This makes it impossible to transfer jurisdiction of the case to the appropriate tribal court, when that issue remains in doubt. *Id.* Even when tribal affiliation is not in doubt, the Tribes do not always immediately request that the case be transferred to the tribal court. Beauchamp Decl. Ex. 1, A10-1170. In fact, it is the practice of Plaintiff Rosebud Sioux Tribe to refuse transfer until there has been an adjudication that the Indian child is abused or neglected. Beauchamp Decl. Ex. 1, A12-468 at 14:6-11. If the Tribe does not request transfer in exclusive jurisdiction cases, or the parents do not agree to

transfer in concurrent jurisdiction cases, the trial court decides whether emergency custody should continue, based on the evidence provided.

Plaintiffs' counsel, Dana Hanna, on behalf of his tribal clients, frequently argues at the 48-hour hearing that if the parent is no longer intoxicated, no longer incarcerated, or no longer harboring suicidal ideations, then the imminent harm has passed, and the Indian child(ren) should be restored to their parent or guardian.  *See e.g.* Beauchamp Decl, Ex. 1, A14-445, 11:5-16.  These arguments are received and considered at the 48-hour hearing, but in most cases, this is not sufficient to alleviate the trial court's finding regarding the need for continued emergency custody. *Id.*, at 11:21-23 (Judge Davis stating, "I'm not certain that the exigent emergency or the situation involving the child is solved simply by [father's] release from jail.")  In many cases, the facts which precipitated the child's emergency removal or placement developed in the preceding few hours. *See* Beauchamp Decl. Exs. 1 and 2. Moreover, if there is any way to avoid emergency removal or placement, law enforcement and DSS are trained to exhaust those alternatives before removal.  Morris Aff. Ex. 1.

If those alternatives are unsuccessful, then the child(ren) is taken into custody by *law enforcement*, and placed in the legal and physical custody of DSS. Morris Aff. Ex. 1. The 48-hour hearing is conducted in order to determine whether that custody should remain. SDCL 26-7A-18.  The 48-hour hearing is not a "child custody proceeding" under 25 U.S.C. § 1903(1), even though it may result in a child being placed in foster care.  Rather, it is an emergency custody proceeding under 25 U.S.C. § 1922.  Per ICWA, the State is not permitted to initiate child custody proceedings, as defined in § 1903(1), until at least ten days after the parents and appropriate Tribe receive notice of such proceeding. 25 U.S.C. § 1912(a).

At the 48-hour hearing, the state court judge has a record typically consisting of an ICWA affidavit from a DSS specialist, a petition for temporary custody incorporating the factual

allegations of the ICWA affidavit, and in some instances, a police report. Often parents do not attend the 48-hour hearing.  Morris Aff. Exs 27, Transcripts Case Nos. A10-404; A10-649; A10-544, A10-1010; A10-1012; A10-1035, A11-161; A11-1031; A11-1103; A12-65; A12-89; A12-565; A12-668; A12-791; A12-839; A12-902; A12-1022; A13-246; A13-677; A13-731; A13-738; A14-130.   In ninety-nine percent of the cases, the parents appear *pro se*. *See generally* Beauchamp Decl., Ex. 1.  The 48-hour hearing is the first time the parents appears before the judge, and the first opportunity for the state court judge to appoint counsel for parents of apparent abused and neglect children.   The state court judge has no opportunity to provide parents with counsel before this hearing.

At the conclusion of the 48-hour hearing, if the court issues a TCO, he or she will typically schedule an advisory hearing.  SDCL 26-7A-54. The scheduling of this hearing varies by case. Based on the parties' calendars, they can be convened as early as ten days after the 48-hour hearing.  25 U.S.C. § 1912(a). These proceedings initiate "child custody proceedings" as defined in 25 U.S.C. § 1903(1).  They include the entire panoply of procedural and substantive rights required by ICWA.  At the conclusion of the advisory hearing, the adjudicatory hearing is scheduled.

Similar to the advisory hearing, the scheduling of the adjudicatory hearing, SDCL 26-7A-82, varies based on the parties' calendar.   They can be done as soon as is desirable for the parents' attorney, after the advisory hearing.  In Judge Davis's Memorandum of Law in Support of Defendants' Motion to Dismiss, Judge Davis represented that the adjudicatory hearing is "usually held 30 days after the 48-hour hearing, but never longer than 90 days," except in rare circumstances.  (Document 34, p. 4.) This statement was incorrect. The statement should have been that the adjudicatory hearing is usually held *at least* 30 days after the 48-hour hearing. After reviewing the discovery, the soonest an adjudicatory hearing was convened since 2010 was 39

days after the 48 hour hearing. Beauchamp Decl., Ex. 1, A13-731. It is the adjudicatory hearing that serves as the fact finding proceeding on the state's allegations of child abuse and neglect, not just the imminent danger to the child. SDCL 26-7A-82.

If the parents are represented by an attorney and request an expedited evidentiary hearing regarding the either the petition, or on the ongoing imminent danger, such a hearing can be held. S*ee* Beauchamp Decl. Ex. 4, Davis Response to Interrogatory No. 9, and Beauchamp Decl. Ex. 1, A12-302. However, if a Tribe makes a motion for an expedited hearing, or a continued hearing, before the parent has had an opportunity to consult with an attorney it was denied in every case. Morris Aff. Ex. 27, A14-456, 7:15-18 (Judge Davis asking "Mr Hanna, are you representing [the parent] or the tribe? I'm going to appoint her an attorney and if he wants a hearing, he can call and ask.").

As of August 29, 2013, the Pennington County State's Attorney's Office, represented by Mark Vargo and Roxie Erickson, along with the Department of Social Services, represented by LuAnn Van Hunnik and supervisor Deb Horan, met with [tribal] ICWA directors in Rapid City. Attorney Dana Hanna was present, along with Casey Family Programs representative Eddie Screechowl.  One of the issues raised was the length of time between the 48-hour hearing and the advisory hearing without an opportunity for parents to appear before the Court.  The State and DSS agreed that in cases either involving a Native American Tribe or that potentially qualified as an ICWA case, and where children were removed from the home, DSS was requesting continued custody, and the children were not placed within the ICWA placement preferences, the State (meaning Pennington County only) would request an advisory hearing within 14 to 20 days.  This time period was selected to give DSS time to look for relatives and thereby be able to offer the Court additional information as to the children's temporary placement, as well as to determine whether the children could be safely returned to a parent. In return, the Tribes agreed

10

to assist DSS  in locating relatives, such as providing names of individuals for DSS to contact. This process was agreeable to the Tribes.  Mr. Hanna and Ms. Erickson went to Judge Pfeifle shortly after this meeting and informed him of their agreement. Judge Pfeifle was in agreement with those advisory hearings being added to his schedule and that procedure has continued with Judge Mandel.  Morris Aff. Ex. 29, Rule 26(a) Initial Disclosure of Mark Vargo, ¶ B. Judge Davis was not consulted on this agreement, and he did not need to be.  Beauchamp Dect. Ex. 4, Davis Am. Ans. Inter. No. 3.

## LEGAL ANALYSIS

The standard this Court applies when considering a motion for summary judgment is well established.  Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Court must view the facts, and inferences from those facts, in the light most favorable to the nonmoving party. *See Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); *Helton v. Southland Racing Corp.*, 600 F.3d 954, 957 (8th Cir. 2010) (per curiam). Summary judgment will not lie if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994). "Summary judgment is not the proper method to dispose of factual questions." *Bozied v. City of Brookings,* 2001 S.D. 150, ¶ 8, 638 N.W.2d 264, 268.  For summary judgment purposes, "[a] disputed fact is ... material [if] it would affect the outcome of the suit under the governing substantive law in that a reasonable jury could return a verdict for the nonmoving party." *Stern Oil Co., Inc. v. Brown*, 2012 S.D. 56, 817 N.W.2d 395, 400.

11

The burden is placed on the moving party to establish both the absence of any genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Once the movant has met its burden, the nonmoving party may not simply rest on the allegations in the pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See Anderson*, 477 U.S. at 256; FED. R. CIV. P. 56(e) (each party must properly support its own assertions of fact and properly address the opposing party's assertions of fact, as required by Rule 56(c)).

The underlying substantive law identifies which facts are "material" for purposes of a motion for summary judgment. *Anderson*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citing 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2725, at 93–95 (3d ed. 1983)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48.

For purposes of Plaintiffs' Motion for Summary Judgment Re: 25 U.S.C. § 1922, there are two critical substantive areas of law which are "material."  The first is 25 U.S.C. § 1922.  The second issue is not covered in extensive detail in Plaintiffs' Motion, but it is critical to it.  That issue is whether Judge Davis is a "policymaker." Because the issue of whether Judge Davis is a "policymaker" is a threshold issue, (Document 69, p. 19), that issue will be addressed first.

### 1. *Plaintiffs have not made any showing that Defendants are "policymakers."*

In Defendants' Motion to Dismiss, Plaintiffs' received the procedural benefit of all facts as plead in the Complaint.  (Document 69, p. 20.)  In denying the motion to dismiss, this Court

explained that "[l]iability for a government entity under 42 U.S.C. § 1983 can exist *only* where the challenged policy or practice is "made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.* (citing *Monell Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) (emphasis added)).   This Court, under the standard for Rule 12(b) motions, accepted the Plaintiffs' allegations as true, and found that Judge Davis is a "policymaker." (Document 69, p. 21.)  Here, that burden shifts. FED. R. CIV. P. 56.

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The court must view the facts, and inferences from those facts, in the light most favorable to the nonmoving party. *See Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); *Helton v. Southland Racing Corp.*, 600 F.3d 954, 957 (8th Cir. 2010) (per curiam). In this case, Judge Davis disputes that he is a "policymaker," (Document 34, p. 12) and Defendants Van Hunnik, Valenti, and Vargo dispute that they acquiesce to Judge Davis' "policy."  Because Defendants' liability is predicated on Judge Davis' "policy, practice, or custom" it will be addressed first.

In order to determine whether Judge Davis is a final policymaker, the Court looks to two sources: "(1) 'state and local positive law' and (2) state and local 'custom or usage' having the force of law." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1215 (8th Cir. 2013) (internal citations omitted). There is no doubt that Judge Davis is an initial decision maker, but he is not a "final policymaker." As with all litigation, if there is an error in a trial judges' legal analysis then the appellate channels are designed to resolve such errors. SDCL § 15-26A-3(6). The South Dakota Constitution vests appellate authority over adjudicatory errors made by state court judges to the South Dakota Supreme Court.  S.D. Const. Art. 5, § 5.

"[W]here the right to review a decision is retained, there has been an incomplete delegation of authority, and municipal liability may not attach."  *Ware v. Jackson County, Mo.*, 150 F.3d 873, 885 (8th Cir. 1998) (citing *Williams v. Butler*, 863 F.2d 1398, 1402 (8th Cir. 1988) (noting "fine line" between delegating final policymaking authority and entrusting discretionary authority to official.)). In their Motion for Summary Judgment Re: 25 U.S.C. 1922, Plaintiffs argue that Judge Davis "has established for his courtroom an unshakeable policy and practice of not considering whether the removal of an Indian child from his or her home 'is necessary to prevent imminent physical damage or harm to the child.'" (Document 110, p. 11.)  Plaintiffs argue that "Judge Davis 'is one who speaks with final policymaking authority . . . concerning the action alleged to have caused the particular constitutional or statutory violation at issue,' that is one with 'the power to make official policy on a particular issue.'"  (Document 110, at 11.) However, Plaintiffs have failed to present any evidence of any official policy.  It is true that Judge Davis is permitted to exercise his discretionary authority in 48-hour hearings, but there is an incomplete delegation of authority because the South Dakota Supreme Court retains jurisdiction to review any such decision.

Plaintiffs urge the Court to consider Judge Davis's statement that 25 U.S.C. § 1922 is a "statute of deferment," as dispositive of some issue. (Docket 110, at 3, 4, 5, and 9.) This is a classic "straw man" argument.  To be clear, Judge Davis has argued that 25 U.S.C. § 1922 defers "the full panoply of ICWA rights," specifically §§1912(d) and (e) of ICWA, until a "child custody proceeding," as defined in § 1903, is held. *Cheyenne River Sioux Tribe v. Davis*, 2012 S.D. 69, 822 N.W.2d 62. This is consistent with other state courts who have reviewed this issue.

The requirements of 25 U.S.C. §§ 1911(a), 1912(d), and (e), are deferred during

emergency custody proceedings.[1]   *Cheyenne River Sioux Tribe v. Davis*, 2012 S.D. 69, 822 N.W.2d 62; *State ex rel. Juvenile Dep't v. Charles,* 70 Or. App. 10, 688 P.2d 1354, 1358 (OR 1984); *D.E.D. v. State of Alaska,* 704 P.2d 774, 779 (Alaska 1985); *Matter of the Welfare of J.A.S.,* 488 N.W.2d 332, 335 (Minn.Ct.App.1992); *In re S.B. v. Jeannie V.,* 130 Cal.App.4th 1148, 30 Cal.Rptr.3d 726, 734–36 (Cal. App. 2005); *State ex rel. Children, Youth and Families Dep't v. Marlene C.,* 149 N.M. 315, 248 P.3d 863, 872–74 (N.M. 2011); *In re T.S.*, 315 P.3d 1030 (O.K. 2013) (stating "§ 1922 authorizes the application of Oklahoma law, not ICWA, to emergency removals of any child . . . in order to prevent imminent physical danger or harm to such child and emergency placements of such children in foster homes or institutions.).   25 U.S.C. § 1922 further defers to state law in determining the appropriate emergency custody procedures for cases which present "imminent physical damage or harm to the child."   *Id.*

Section 1922 does not defer itself. Judge Davis has never argued that § 1922 defers itself. To the contrary, he has argued that "[w]hether analyzed under state law or § 1922, 'the imminent danger to the child' triggers the respective emergency custody statutes where it appears 'necessary' to protect the child's best interests.'" (Document 34, at 9.) If Judge Davis is incorrect with regard to his interpretation of § 1922, which Plaintiffs' clearly think he is, then the South Dakota Supreme Court retains the authority to tell him he is wrong.

Judge Davis, by interpreting and applying § 1922 and the South Dakota statutes, is acting in his *judicial* role.  The fact that this Court may or may not "disagree with [Judge Davis] does not make [his] determination any less an act of disinterested *adjudication*."  *R.W.T., K.M.R., and T.S.C. v. Dalton,* 712 F.2d 1225 (8th Cir. 1983) (*abrogated on other grounds by Kaiser*

---

[1] Plaintiffs' Complaint alleges that Defendants' 48-hour emergency custody procedures violated 25 U.S.C. § 1912(d) and (e).  (Document 1, ¶¶ 99 - 112.) Plaintiffs have not moved for summary judgment on those claims. However, these claims were at issue in Defendants' Motion to Dismiss.

*Aluminum & Chemical Corp. et. al. v. Bonjorno,* 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990)) (emphasis added).  Such interpretation of the law is not his "practice" any more than any judicial "precedent" sets a "practice" for all lower courts.

The Eighth Circuit discusses concerns regarding a Federal District Court's jurisdiction under Article III of the Constitution in cases such as this one because no "case or controversy" exists between plaintiffs and state court judges.  *Dalton,* 712 F.2d at 1232, n. 10. The Eighth Circuit frames the issue as a "failure to state a claim" under FED. R. CIV. P. 12 (b)(6) against the improperly named defendant state court judge, and it does not relate to the issue of judicial immunity as discussed in *Pulliam v. Allen*, 466 U.S. 522 (1984); it is jurisdictional issue which cannot be waived.

By narrowing their claims through their motion for partial summary judgment, it is clear that Plaintiffs are challenging Judge Davis adjudications in 48-hour hearings. However, Judge Davis's interpretation of 25 U.S.C. § 1922 is not a final "policy, practice, or custom."  It is subject to review through the ordinary means of appellate process. SD Const. Art. 5, § 5.  It is also subject to a writ of mandamus. SDCL 21-29-1.  There is nothing "final" about Judge Davis' interpretation.

"In the judicial setting, previously decided questions of law involving similar fact situations often provide precedential value, embodying the concept of *stare decisis*."  *Yellow Robe v. Bd. of Trustees of S. Dakota Retirement Sys.*, 2003 S.D. 67, ¶ 14, 664 N.W.2d 517 (citation omitted).  Under the principle of *stare decisis*, litigants in similar situations should be treated the same.  *Burgard v. Benedictine Living Communities*, 2004 S.D. 58, ¶ 13, 680 N.W.2d 296. It is not Judge Davis's "policy, practice, or custom" which dictates the procedures of the 48-hour hearing; it is the principle of *stare decisis*. If his interpretation of § 1922 is erroneous, then it should be appealed to the final policymakers of the state's judicial system.  The South Dakota

Constitution identifies the South Dakota Supreme Court as this final policymaking body by granting it appellate jurisdiction over the decisions of the state court judges.  S.D. Const. Art.5, § 5.  Further, Judge Davis lacks any authority to control the adjudications made by the other judges.  SDCL 16-2-21.  Because Judge Davis is not a policymaker, and because Defendants Van Hunnik, Vargo, and Valenti cannot, therefore, acquiesce to Judge Davis's policy, Plaintiffs' Motion for Summary Judgment should be denied.

As to the Plaintiffs' "policy maker" argument as to Ms. Van Hunnik and Ms. Valenti, in their brief, Plaintiffs' state:

> Similarly, Defendant Mark Vargo, State's Attorney for Pennington County, and Defendants LuAnn Van Hunnik and Lynne A. Valenti, respectively the person in charge of Child Protection Services for Pennington County and the Secretary of the South Dakota Department of Social Services, *are policy makers for their offices,* and have acquiesced in Judge Davis's decision to ignore § 1922 in 48-hour hearings. . . .

Document 110, page 12.

The conclusory assertion that Ms. Van Hunnik and Ms. Valenti *are policy makers for their offices* is unsupported by the facts in Plaintiffs' filing [Document 107] and the law.  There has been no discovery on any facts to support a factual basis that Ms. Van Hunnik or Ms. Valenti are policy makers under applicable law.  In addition, there has been no affirmative motion by the Plaintiffs, with supporting factual basis, with legal argument or supporting authority on the policy maker issue.

As Plaintiffs' often do, they assume a final legal decision has been rendered on an issue based upon the Court's Order Denying the Defendants' Motion to Dismiss.  [Document 69].  The Court did state "The court finds  [the Secretary of the SD Department of Social Services] and Ms. Van Hunnik are policymakers with regard to the allegations made in the complaint." [Document 69, pg. 24].  But his statement was previously qualified by the Court when it stated "At this point in the litigation, the court is 'bound to accept as true, for purposes of [a Rule

12(b)(6)] motion, the facts alleged by the plaintiff[s].' *Stephens v. Assoc. Dry Goods Corp.*, 805 F.2d 812, 814 (8th Cir. 1986)." [Document 69, pg. 23].  As can be seen, there has been no final decision on the issue that Ms. Valenti and/or Ms. Van Hunnik are policy makers.  Nor has that issue been presented to the Court by Plaintiffs by their filings for partial summary judgment.  In fact, under the applicable law, Ms. Van Hunnik and Ms. Valenti, cannot be policy makers.

The premise of the Plaintiffs' policy maker argument is that there exists an unconstitutional policy, custom or practice, creating by Ms. Van Hunnik and/or Ms. Valenti, thereby relying on *Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658 (1978).  *Monell* held that municipalities and local government units can be sued under 42. U.S.C. where "the action that is alleged to unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's offices. *Monell*, 436 U.S. 658, 690.  Not only do the Plaintiffs' ignore 11th Amendment jurisprudence, the problem is that Ms. Valenti and Ms. Van Hunnik are not a "municipality" or a "local government."  Thus any "policy maker" claim or argument fails.

2. ***Defendants satisfy the twin duties of 25 U.S.C. § 1922.***

Next, because Judge Davis's interpretation of 25 U.S.C. § 1922 has been assailed in Plaintiffs' Motion for Summary Judgment, it merits further discussion of what Judge Davis's interpretation of § 1922 really is.  Plaintiffs urge the Court to consider Judge Davis's statement that 25 U.S.C. § 1922 is a "statute of deferment," as dispositive of some issue. (Docket 110, at 3, 4, 5, and 9.) As discussed, this is a classic "straw man" argument.

Judge Davis has argued that "[w]hether analyzed under state law or § 1922, 'the imminent danger to the child' triggers the respective emergency custody statutes where it appears 'necessary' to protect the child's best interests.  The standards under § 1922 and South

18

Dakota law are the same.'"  (Document 34, at 9.)  The evidence that § 1922 requires is coequal with what is required under South Dakota state law, i.e. "imminent physical danger" to the child.

> SDCL § 26-7A-13 provides that temporary custody may be ordered when upon
>
> application by a state's attorney, social worker of Department of Social Services, or law enforcement respecting an apparent, alleged, or adjudicated abused or neglected child stating good cause to believe . . . [t]here exists an *imminent danger to the child's life or safety* and immediate removal of the child from the child's parents, guardian, or custodian appears to be *necessary* for the protection of the child.

SDCL § 26-7A-13 (emphasis added).  25 U.S.C. § 1922 allows "the emergency removal of an Indian child who is a resident of or is domiciled on a reservation, but temporarily located off the reservation, from his parent or Indian custodian or the emergency placement of such child in a foster home or institution, under applicable State law, in order to prevent *imminent physical damage or harm to the child*. (emphasis added). Therefore, when the state court judge issues a temporary custody order at the conclusion of the 48-hour hearing, it is considering the "imminent danger to the child's life or safety."   At the 48-hour hearing parents are not prohibited from arguing that the imminent danger has passed, but the trial judge may still not be satisfied based on the evidence that the "exigent emergency or the situation involving the child is solved." Beauchamp Decl. Ex. 1, A14-445.

The South Dakota Supreme Court stated in *Cheyenne River Sioux Tribe v. Davis*, "the temporary custody hearing proceeded on State's petition for temporary custody and the accompanying police report and ICWA affidavit from a DSS specialist. The report and affidavit set forth facts concerning the need for temporary custody.  While these documents might not constitute evidence within the normal bounds of the Rules of Evidence, those rules are not applicable at the temporary custody hearing." 2012 S.D. 69, ¶ 12, 822 N.W.2d 62 (emphasis added) (citing SDCL 26-7A-34).

Therefore, *Davis* is the prevailing state law on the issue of what "evidence" may be considered to serve as the basis for Judge Davis's TCOs.  The transcripts and accompanying records establish that the temporary custody orders are based on evidence of the need for continued custody due to "imminent child protection issues." SDCL 26-7A-13(1)(b).  If the trial court has any doubt about whether the imminent danger has been alleviated based on the representations of the parties, additional inquiry is made.  Beauchamp Decl. Ex. 4, Davis Am. Ans. Inter. No. 9. Thus, Defendants are satisfying the first step of § 1922, by applying "applicable state law" to make the initial "imminent danger" finding.

The South Dakota Supreme Court in *Davis* agreed that the ICWA affidavit of DSS, and the police report, provide sufficient evidence for the need for continued custody under applicable state law. 2012 S.D. 69, ¶ 11, 822 N.W.2d 62. The Temporary Custody Orders signed at the conclusion of the 48-hour hearings reflects that the state court judge makes a probable cause finding, under applicable state law, that the child(ren) is/are abused or neglected, meaning that there is a probable cause finding (not burden) that "continued custody of the child(ren) by the parents or Indian custodian is likely to result in serious emotional or physical damage to the child(ren)." Beauchamp Decl. Ex. 2.  Thus, the 48-hour hearing is used to determine whether continued custody should continue based on imminent harm, and in most instances, that finding is made and the case continues under the state's emergency custody procedures.  *See* SDCL 26-7A-13(1)(b); 25 U.S.C. § 1922.

**a. Defendants insure that emergency custody terminates immediately.**

This Court has ruled that 25 U.S.C. § 1922 requires state officials to "insure" that the emergency custody terminates immediate when it is no longer necessary to prevent the imminent physical danger or harm to the child.  (Document 69, p. 33)  Defendants have two separate

means of "insuring" that the emergency custody terminates as soon as it is no longer necessary to prevent the imminent physical damage or harm to the child.

The first is accomplished by appointing Indian parents with an attorney at the 48-hour hearing, and if requested by the parents' attorney, to schedule an evidentiary hearing on the ongoing emergency.  Morris Aff. Ex. 27, A14-456.  Parents are almost always unrepresented by legal counsel at the 48-hour hearing. *See generally* Beauchamp Decl. Ex 1. The 48-hour hearing is the parents' first opportunity to request court-appointed counsel.  Even if an attorney could be appointed at the 48-hour hearing, the attorney would need a reasonable amount of time to conduct his or her due diligence, to meet with the client, engage in discovery, and craft a defense for his or her client. To account for this fact, Judge Davis has stated that if a parents' attorney wants a hearing, then that attorney can notice a hearing.  Morris Aff. Exhibit 27, A14-456.  He has, however, rejected the notion that the Tribe can schedule an evidentiary hearing on a parent's behalf. *Id.*

In the dozens of transcripts produced in this litigation there was only one instance in which the parent was represented by counsel, Mr. Patrick Duffy, at the 48-hour hearing. Beauchamp Decl. Ex. 1, A12-302. In that instance, Mr. Duffy requested and received an expedited hearing to be held 10 days after the 48-hour hearing.  Mr. Duffy originally asked to put his client on the stand to present testimony, but that request was denied by Judge Thorstenson because "the State needs to be also prepared to present [evidence]." Beauchamp Decl. Ex. 1, A12-302, 7:22-25.

This case illustrates two facts: (1) inquiries on the record are made into the status of ongoing imminent danger to the Indian child at the 48-hour hearing in cases where the ICWA affidavit and/or police report suggest an abeyance of imminent harm; and (2) Defendants do permit "full-blown evidentiary" hearings on the factual allegations alleged by the State, within

ten days, if the circumstances permit it.  However, admittedly, this is the exception to the almost uniform problem of unrepresented parents at 48-hour hearings.

The second way state officials "insure" that the emergency custody terminates as soon as it is no longer necessary to prevent the imminent physical danger to the child is accomplished through the TCOs issued at the conclusion of the 48-hour hearing. Beauchamp Decl. Ex. 2.  The TCOs also include a finding that the "Department of Social Services is hereby authorized to return full legal and physical custody of the minor child(ren) to the parent(s), guardian or custodian (without further court hearing) at any time during the custody period granted by this Court if, the Department of Social Services concludes that no further imminent child protection issues remain and that temporary custody of the child(ren) is no longer necessary."  *Id.* The Department of Social Services has very specific policies for assessing imminent child protection issues, and for ensuring that the temporary custody terminates immediately when no further imminent child protection issues remain.  Morris Aff. Exs. 1-13. DSS's training materials defines imminent as "the belief that dangerous family behaviors, conditions or situations will remain active or become active within the next several days to a couple of weeks.  This is consistent with a degree of certainty of inevitability that danger and severe harm are possible, even likely outcomes, without intervention."  Morris Aff. Ex. 23, DSS Ans. Inter. No. 2.

SDCL 26-7A-12(4) and SDCL 26-7A13(1)(b) uses the terminology  "imminent danger to the child's life or safety."  25 U.S.C. § 1922 uses the terminology "imminent physical damage or harm."  It is beyond dispute that "danger to the child's life or safety" or "physical damage or harm" contemplate the same considerations. Unfortunately, neither the referenced statutes and associated child protection statutes do not define the term "imminent."  Nor does § 1922 or other associated ICWA statutes.

In a separate context, the South Dakota Supreme Court identified "imminent" as "near at hand; mediate rather than immediate; close rather than touching; *impending*; on the point of happening; threatening; menacing; perilous" in *State v. Archambeau*, 322 N.W.2d 879, 880 (S.D. 1982).  [Emphasis supplied.]  Other courts have also addressed the definition of imminent.  The Connecticut Superior Court referenced that the definition of "imminent" in context, means "about to occur or *impending*."   *State v. Turner*, No. HHDCR096632655, WL 4424754, *3 (Conn. Super., September 6, 20110. [Emphasis supplied].   The Tennessee Supreme Court adopted the following of "imminent" from Black's Law Dictionary:

> "Near at hand; mediate rather than immediate; close rather than touching; *impending*; on the point of happening; threatening; menacing; perilous. Something which is threatening to happen at once, something close at hand, something to happen upon the instant, close although not yet touching, and on the point of happening."

*State v. Payne*, 7 S.W.3d 25, 28 (Tenn.1999) (quoting Black's Law Dictionary 750 (6th ed.1990)) (emphasis added).

The Iowa Supreme Court has also had occasion to define "imminent."  Relying on a dictionary definition, the Court has defined "imminent" for purposes of  a self-defense statute to mean " 'ready to take place,' 'near at hand,' 'hanging threateningly over one's head,' and 'menacingly near.' " *State v. Shanahan*, 712 N.W.2d 121, 142 (Iowa 2006) (citing Webster's Third New International Dictionary 1130 (unabr. ed.2002)). Relying on this same definition, the Court explained in another case that "imminent" means a threatened act "is *impending* or about to occur." *State v. Lane*, 743 N.W.2d 178, 182 (Iowa 2007) (emphasis added).

Just as it is indisputable that "danger to the child's life or safety" and "physical damage or harm" are synonymous, it is indisputable that "imminent" and "impending" are synonymous. One need only look at the information in the ICWA Affidavits to discern why law enforcement was forced to take emergency custody.  The task of a highly trained CPS staff worker is to

ultimately make a determine as to whether the circumstances which caused emergency removal no longer exist and to determine whether imminent/impending physical damage or harm to the child exists if he/she is reunited with his/her parent.  These CPS staff workers should be hailed for their work rather than vilified.  One can only imagine the hue and cry that would result if CPS did not properly investigate and evaluate thereby leading to a premature reunification and the child suffered physical damage or harm. Therefore, Defendants satisfy their first obligation under § 1922 in two separate ways.

### b. Defendants expeditiously initiate child custody proceedings, transfer to the tribal court, or restore the child to the Indian parent or custodian.

Under § 1922, once the State terminates emergency custody, it has three options if the court decides that there are no "imminent" threats to the Indian child: (1) transfer the case to the appropriate tribal court; (2) restore the child to the Indian parent or custodian; or (3) expeditiously initiate child custody proceedings.  25 U.S.C. § 1922.  If there are no "imminent child protection issues," the Indian child can be restored to the parent or custodian at any time without an additional hearing.  Beauchamp Decl. Ex. 2.

From the very start of the emergency removal of the child, a CPS staff worker begins to actively investigate and evaluate whether the emergency situation which led to removal has ended and there is no imminent/impending physical damage or harm to the child.  *See* Morris Aff. Ex. 1.  If imminent/impending danger is determined not to exist or if it can be safely managed, children are reunified with their parents immediately.   In some cases, such investigation and evaluation leads to reunification of the children prior to the 48 Hour hearing. Morris Aff. Ex. 1.  In some cases families are reunified the day of the 48 Hour Hearing.  Morris Aff. Ex. 1-11.  In some cases it is three to four days after the 48 Hour hearing. *Id.*

If the case is an exclusive jurisdiction case, all the tribal court must do is request transfer, and the state court obliges. Beauchamp Decl. Ex. 1, A10-1035, 3:2-15.   If the case is a

concurrent jurisdiction case, if the parents and the tribal court agree to transfer, then that is granted by the state court judge. Beauchamp Decl. Ex. 1, A10-1201, 3:13-16 (Judge Davis stating to ICWA director, "Your word is good with me. I'll sign the transfer orders then with the understanding we don't make transfers until [the tribal court's] order hits the file."). Many cases have been transferred by the Tribes from State jurisdiction to tribal jurisdiction the day of the 48 Hour hearing.  Morris Aff. Exs. 1 and 11.  Many children are transferred in one to four days after the 48 Hour hearing.  *Id.*

In the period, January 1, 2010 through April 1, 2014, 894 children were the subject of a 48 Hour hearing in Pennington County.  719 of the 894 children – 80.4 percent - were reunited with their parent(s) or transferred by a tribe.  584 of the 719 children – 81.2 percent – were reunited with their parent(s) or transferred by a tribe in 0 to 59 days of the 48 Hour hearing. Unfortunately, it is the policy of Plaintiff Rosebud Sioux Tribe to not pursue transfer until after an adjudication has been made.  Beauchamp Decl. Ex. 1, Case No. A12-468 at 14:6-8. Therefore, in cases involving Plaintiff Rosebud Sioux Tribe, at or after the 48-hour hearing, the State can only initiate child custody proceedings or restore the child to his or her parents or custodians, under § 1922.

After the state court judge makes a finding at the 48-hour hearing that there exists "imminent child protection issues," that finding cannot be reheard for at least ten days because at that rehearing, the state has the right to "initiate a child custody proceeding," 25 U.S.C. § 1922; 25 U.S.C. § 1912(a). *See also In re T.S.*, 315 P.3d 1030, 1140 (stating "Instead of the other two § 1922 options, State chose to 'initiate a child custody proceeding subject to [ICWA] on August 30, 2012, by 1) seeking to continue legal custody of the Indian children at the show cause hearing, which the juvenile court granted after finding State had met its burden for Father and both mothers, and, 2) promptly filing the original and amended petitions to adjudicate the Indian

children as deprived and requesting they be made wards of the State.").  Thus, 25 U.S.C. §§ 1922 and 1912(a) create a Catch-22 for state courts.

Plaintiffs agree that the only court, other than this Court, which has reviewed the substantive requirements of § 1922 is the Court of Civil Appeals of Oklahoma in *In re T.S.*, 315 P.3d 1030 (O.K. Civ. App. 2013).  There, the Oklahoma court held that emergency hearings held pursuant to § 1922 were not "child custody proceedings" as defined in § 1903(1).  *T.S.*, 315 P.3d at 1040.  "The second sentence of § 1922 contains two mandates for State, which combined further clarifies the emergency removal of the Indian children and their placement in foster home is not part of a 'child custody proceeding' to which ICWA applies."  *Id.*  The court in *T.S.* held that "child custody proceedings" begin once the trial court found the child was no longer in imminent danger, and the state filed an amended petition for adjudication one week after the emergency custody hearing.  *Id.*

Defendants agree that "child custody proceedings" as defined in 25 U.S.C. § 1903(a), were expeditiously initiated at the "show cause" hearing, but would point out that in reaching this decision, the *T.S.* Court apparently failed to consider § 1912(a). This provision requires at least ten-days notice to the Indian parent, custodian, and Tribe before such a hearing can be held. 25 U.S.C. § 1912(a).  Thus, the third option under § 1922's second mandate cannot be exercised through a hearing until at least ten days after the parent, custodian, or Tribe receive notice of the child custody proceeding -- not an emergency custody proceeding.  However, if DSS determines before such a hearing that "no further imminent child protection issues remain," or if the tribal court requests transfer, then those alternatives can be accomplished -- and are accomplished -- without a "show cause" hearing.

It is undisputed that the Defendants do not explicitly cite 25 U.S.C. § 1922 in Temporary Custody Orders, but the requisite findings are nevertheless made. Beauchamp Decl. Ex. 2.

Defendants both "insure" that the emergency custody terminates immediately when it is no longer necessary through both formal and informal processes, and "expeditiously" exercise one of their three options under § 1922.

DSS trains its staff extensively on reunification.  Morris Aff. Ex. 1.  Plaintiffs' do not allege that DSS disregards the state court's authorization to restore Indian children to their parents or guardians once no imminent child protection issues remain, only that the authorization is insufficient. (Document 110, p. 14.)  However, in every case, if DSS does not return the children when the precipitating emergency abates, then the parents' attorney, the child(ren)'s attorney, or the Tribes' attorney can notice a hearing on this issue. Or, as contemplated by Congress in drafting ICWA, the tribal court can assert its jurisdiction over the case. Under either option allowed, Defendants' procedures in 48-hour hearings satisfy the second mandate of 25 U.S.C. § 1922, even though § 1922 is not specifically identified in either the PTC's, or TCOs. The substance is met even if the form is not properly identified.  At any rate, the twin-mandates of 25 U.S.C. § 1922 are satisfied, and Plaintiffs' Motion for Summary Judgment should be denied.

### 3. Plaintiffs are Not Entitled to Declaratory or Injunctive Relief

Plaintiffs' complaint request the issuance of declaratory[2] and injunctive relief pursuant to 42 U.S.C. § 1983 against Defendants to "halt on-going violations of Plaintiffs' federal rights." (Document 1, at ¶¶ 1,73, 112, and 129.)  The existence of on-going violations and prospective relief being requested are necessary for Plaintiffs' suit to meet the Ex parte Young exception to the Eleventh Amendment (*Ex parte Young,* 209 U.S. 123 (1908)) and to meet the "injury in fact" element of standing. *Park v. Forest Service,* 205 F.3d 1034, 1037 (8th Cir. 2000) ("the "injury in fact" element of standing requires a showing that the plaintiff faces a threat of ongoing or future

---

[2] Plaintiffs' request only declaratory relief against Defendant Judge Davis.  Doc. 1, Prayer for Relief, f. 1.

harm.")   Plaintiffs have, however, submitted no facts that establish that the matters they complain about have caused any injury.

Plaintiffs' claims concern Defendants' failure to "insure" that emergency custody terminates immediately and the state court judge' failure to expressly order DSS to restore Indian children to their parents or guardians as soon as the children face no imminent physical harm. 25 U.S.C. § 1922.  As discussed, Defendants "insure" emergency custody terminates immediately in two ways: (1) appointing attorneys for parents at 48-hour hearings, and permitting the attorneys for the parents, not the Tribe, to notice an evidentiary hearing; and (2) without an evidentiary hearing, by authorizing DSS in the TCO's to return children once no imminent child protection issues remain.  Through these procedures, State officials expeditiously exercise one of its three alternatives addressed in § 1922.

Plaintiffs' claim raises an issue with form over substance.  It is undisputed that 25 U.S.C. § 1922 is not cited in Defendants' PTCs or TCOs.  However, this fact does not mean this failure deprived Indian families of their rights under ICWA. Under *Ex Parte Young*, Plaintiffs must show that this failure to cite § 1922 caused *injury in fact*. 209 U.S. 123 (1908).  Defendants' compliance with the substantive requirements of § 1922 illustrates that Plaintiffs' cannot make this showing.  As such, declaratory and injunctive is unavailable.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants respectfully request the Court deny Plaintiffs'

Motion for Summary Judgment Re: § 1922.

Dated this 5th day of September, 2014.

**MORRIS LAW FIRM, Prof. LLC**
*Attorneys for LuAnn Van Hunnik and Lynne A.*
*Valenti*

By :   <u>*/s/ Robert L. Morris*</u>
Robert L. Morris
117 5th Avenue, PO Box 370
Belle Fourche, SD 57717-0370
(605) 723-7777
bobmorris@westriverlaw.com

*Special Assistant Attorney General*

29

Dated: September 5, 2014

Nathan R. Oviatt
Special Assistant Attorney General
GOODSELL QUINN, LLP
246 Founders Park Drive, Suite 201
P.O. Box 9249
Rapid City, SD 57709-9249
Office:  605-343-3000
Fax:  605-343-3251

Dated: September 5, 2014

**GUNDERSON, PALMER, NELSON
& ASHMORE, LLP**
*Attorneys for Mark Vargo*

By: _____
J. Crisman Palmer
P.O. Box 8045
Rapid City, SD 57709-8045
(605) 342-1078
cpalmer@gpnalaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 5th day of September, 2014, I electronically filed **DEFENDANTS RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE: 25 U.S.C. § 1922** with the Clerk of the Court for the United States District Court for the Western Division by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.


BY: _/s/  Robert L. Morris_____