## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH DAKOTA
## WESTERN DIVISION

| | | |
|---|---|---|
| OGLALA SIOUX TRIBE, et al, | ) | Civ. 13-5020-JLV |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **DEFENDANTS' STATEMENT OF** |
| vs. | ) | **MATERIAL FACTS IN RESPONSE TO** |
| | ) | **PLAINTIFFS' MOTION FOR** |
| LUANN VAN HUNNIK, et al, | ) | **SUMMARY JUDGMENT** |
| | ) | **RE: 25 U.S.C. § 1922** |
| Defendants. | ) | |
| | ) | |

Pursuant to Local Rule 56.1, Defendants, by and through its counsel of record, submits the following separate statement of material facts in response to Plaintiffs' Motion for Summary Judgment Re: 25 U.S.C. § 1922. (Document 110.)

**Introduction:** Defendants deny that they fail to perform the duties required of them by 25 U.S.C. § 1922 of the Indian Child Welfare Act of 1978, 25 U.S.C. §§ 1901 et seq.

1.  Approximately one hundred 48-hour hearings involving Indian children are held each year by Defendants. (This figure was computed based on the number of transcripts that Plaintiffs received in discovery.)

    RESPONSE: Undisputed.

2.  The transcripts that were produced demonstrate that in at least 90 percent of Defendants' 48-hour hearings, orders were issued removing Indian children from their homes. It appears that in 100 percent of the hearings decided by Defendant Hon. Jeff Davis on the merits, Judge Davis issued orders removing Indian children from their homes. *See* Declaration of Peter W. Beauchamp in Support of Plaintiffs' Motion for Partial Summary Judgment ("Beauchamp Decl.") Ex. 1. Given that many of the families involved in these

1

hearings have more than one child, a total of at least 150 Indian children a year are removed from their homes as a consequence of these hearings.

RESPONSE: Disputed.  Children are removed from their parents' or guardians' custody before the 48-hour hearing by law enforcement. Affidavit of Robert L. Morris in Support of Defendants' Response to Plaintiffs' Motions for Partial Summary Judgment ("Morris Aff."), Exhibit ("Ex.") 1. The Temporary Custody Orders ("TCOs") issued at the conclusion of the hearing are based on the Court's finding that emergency custody should continue.  Of the child protection cases reviewed in this litigation, Judge Davis did order continued custody in all of the cases over which he presided. However, the TCOs were sometimes issued to cover any period the child(ren) was in state custody prior to a release, or transfer of the child protection case to the tribal court.  Morris Aff. Ex. 27, A10-1201.

3.  25 U.S.C. § 1922 requires a prompt hearing whenever an Indian child is removed from the home to determine whether continued out-of-home placement is "necessary to prevent imminent physical damage or harm to the child." However, *in not one 48-hour hearing* did Defendants determine whether continued out-of-home placement was necessary to prevent imminent physical damage or harm to the child, except in fewer than five cases when the issue was raised by a parent or by an attorney representing an Indian tribe. *See* Beauchamp Decl. Ex 1. Judge Davis concedes that: (a) not once in any of the 48-hour hearings over which he presided did the court inquire whether the cause of the child's emergency removal had been rectified prior to the hearing; and that (b) he knows of only three 48-hour hearings, Case Nos. A12-571, A12-468, and A12-36, conducted in the Seventh Judicial Circuit since January 2010 in which an inquiry was made by the

2

court into whether the cause of the child's emergency removal had been rectified. Beauchamp Decl. Ex. 4, Davis Am. Interrog. No. 9. Furthermore, in two of those three cases, the inquiry into whether the cause of the child's emergency removal had been rectified was initiated by counsel for an Indian tribe, and not by the court. *See* Beauchamp Decl. Ex. 1, Case Nos. A12-571 and A12-36.

RESPONSE: Disputed.  Consideration of whether continued out-of-home placement is necessary to prevent imminent physical damage or harm to the child is undertaken in every 48-hour hearing. See generally Beauchamp Decl. Exs. 1 and 2.  The trial judge considers the evidence of the need for continued placement, which usually consists of an ICWA affidavit of a DSS specialist, and a police report.  The judge then hears from the parents, if present, and tribal representative, if present, to determine if any factual basis beyond what is provided in the record justifies return of the child(ren).  *Id.*  Judge Davis and the other judges of the Seventh Circuit regularly direct DSS to inquire into whether the cause for removal has been rectified because the TCO authorize DSS to return full legal and physical custody of the child(ren) as soon as no further imminent child protection issues remain. *Id.* DSS requires extensive training of its employees to ensure that this inquiry is made, and the judges' directive is followed.  Morris Aff. Ex. 1.

4. One reason why Defendants never complete the mandatory § 1922 inquiry is because Judge Davis believes that § 1922 is a "statute of deferment," that is, that § 1922 authorizes state courts to defer applying the protections contained in ICWA until proceedings that occur *after* 48-hour hearings are held. Defendant Davis admitted that this is his position in response to a request for admission. *See* Request for Admission No. 32: "Admit that in your memorandum of law (Docket 34) you state that 25 U.S.C. § 1922

3

is a 'statute of deferment' and that you continue to believe that is true." Answer: "Admit." (A copy of this Request for Admission is attached to the Beauchamp Decl. as Exhibit 3.) Judge Davis confirmed this point in a recent 48-hour hearing. During that hearing, counsel for an Intervenor Indian Tribe asked Judge Davis to determine whether there was any "pending imminent threat of danger" in returning an Indian child to the mother, who was present in the courtroom. Judge Davis replied: "ICWA doesn't apply to a 48-hour hearing, Mr. Hanna, and I decline your invitation. We'll be in recess." *See* Beauchamp Decl. Ex. 1-Case No. A14-444 (June 23, 2014), Transcript at 13-14. RESPONSE: Undisputed that Judge Davis believes that 25 U.S.C. § 1922 defers "the full panoply of ICWA rights."

5. Another reason why Defendants never complete the § 1922 inquiry is because as a matter of policy, practice, and procedure, Defendants do not permit testimony to be given during a 48-hour hearing. This fact was admitted by Judge Davis in response to Request for Admission No. 19 (attached to the Beauchamp Decl. as Ex. 4) (Judge Davis admits that "no oral testimony is taken at a 48-hour hearing."); *see also* Beauchamp Decl. Ex. 1-Case No. A13-609 (September 9, 2013) (Pfeifle, J.) Transcript at 2 ("We will not take testimony [during a 48-hour hearing]."); Case No. A13-616 (September 12, 2013) (Pfeifle, J.) Transcript at 2 ("we do not take evidence" during a 48-hour hearing); Case No. A14-47 (January 24, 2014) (Mandel, J.) Transcript at 2 ("This is an informal proceeding, and by that I mean that there's no testimony taken.") As a result of the fact that (a) Defendants allowed no testimony at 48-hour hearings, (b) Defendants allowed no cross-examination at 48-hour hearings, (c) often the only questions asked of the parents in a 48-hour hearing were for purposes of identification and to see if they understood

their rights, and (d) Defendants never conducted the inquiries required by 25 U.S.C. §
1922, Defendants' 48-hour hearings were completed rather quickly. Judging from the
length of the transcripts that were produced, the average length of time it took to
complete a 48-hour hearing, Plaintiffs estimate, was under four minutes. A number of
these hearings appear to have been completed in about sixty seconds.

RESPONSE: Disputed that Defendants do not complete the § 1922 inquiry.  Admit that
no oral testimony is taken at the 48-hour hearing because in ninety-nine percent of 48-
hour hearings, the parents appear pro se.  *See generally* Beauchamp Decl. Ex. 1. The
parents have a right to not incriminate themselves, and a right to counsel.  These rights
must be balanced against their right to a speedy trial.  The tribes' attorney cannot
represent the parents.  The Tribe's interest is not the same as the parents, so there is an
inherent conflict of interest between these two parties.

6.  The following 31 cases, listed below in chronological order and whose transcripts are
included in the Beauchamp Decl. Ex. 1, demonstrate that Defendants never on their own
initiative conducted a § 1922 inquiry in any 48-hour hearing. For instance, in Case No.
A10-50 (January 11, 2010) (Davis, J.), no facts were mentioned in the hearing regarding
the emergency that caused the child's removal or whether the emergency had terminated.
In fact, Judge Davis granted a request from the Department of Social Services ("DSS")
for 60 days of additional custody before he asked the parents if they understood their
rights. *See* Transcript at 4.

RESPONSE: Undisputed that the trial judge reviews the record evidence, which usually
consists of an ICWA affidavit, and police report (if available). The practice is to allow
the parties to informally make statements or ask questions, but they are cautioned about

making any statements that may incriminate them criminally, or waive any defenses without consulting their attorney. *See generally*, Beauchamp Decl., Ex. 1.The transcript in A10-50 speaks for itself, but it does not reflect all of the evidence considered by the judge.

7. Case No. A10-270 (February 25, 2010) (Davis, J.): Once again, Judge Davis did not require DSS or the State's Attorney to present any facts as to the emergency that caused the children's removal or whether the emergency had terminated. Nevertheless, Judge Davis signed an order granting DSS additional custody for 60 days. The parents were not asked any questions until the very end of the hearing, after Judge Davis had already announced his intentions to sign the order allowing DSS to keep their children. *See* Transcript at 4-5.

   RESPONSE: Case No. A10-270 (February 25, 2010) (Davis, J.): The transcript speaks for itself.  The ICWA affidavit provides facts as to need for continued emergency custody.  The children had resided for a month with their maternal grandmother, who notified law enforcement that she could no longer care for the children.  The mother was admitted to detox, and the father was absent.  *See* Beauchamp Decl., Ex. 3.The parents appeared at the 48-hour hearing, advised Defendants that they intended to hire their own attorney, and declined further comment.  There was no evidence which could indicate that the emergency had abated.

8. Case No. A10-306 (March 8, 2010) (Davis, J.): Here again, the court sought no evidence during the hearing as to why the removal was necessary or whether the emergency had ceased. Nevertheless, Judge Davis signed an order granting DSS custody for 60 days.

   RESPONSE: Case No. A10-306 (March 8, 2010) (Davis, J.):  The transcript speaks for

itself. The only indication Judge Davis had that ICWA might apply to this case is that the mother believed "ONTRAC" was going to intervene in the case.

9.  Case No. A10-358 (March 8, 2010) (Davis, J.): Again, no facts were discussed during the hearing as to why removal was necessary or whether the children could be safely returned. Nevertheless, Judge Davis signed an order granting DSS custody for an additional 60 days.

    RESPONSE: Case No. A10-358 (March 8, 2010) (Davis, J.): The transcript speaks for itself.  The ICWA affidavit indicates that Child Protection Services in Sioux Falls was granted an additional 10 days to complete an investigation on the family to assure safety of the children.  The investigation was completed and it was determined that the children would not be safe returning to their parents at the time.  *See* Beauchamp Decl., Ex. 3. Based on the safety concerns set out in the ICWA affidavit, including drug and alcohol use while operating (and crashing) a motor vehicle with the children in the vehicle, Judge Davis ordered continued emergency custody.

10. Case No. A10-460 (April 5, 2010) (Davis, J.): Similarly, no facts were mentioned, and yet Judge Davis signed an order granting DSS custody for 60 days. The only questions Judge Davis asked the mother and father were whether they were present and could hear him.

    RESPONSE: Case No. A10--460 (April 5, 2010) (Davis, J.): The transcript speaks for itself. There was nothing presented during the 48-hour hearing that could indicate that ICWA applied to the case. The basis for the finding that ICWA applied to the case is unknown.

11. Case No. A10-783 (July 12, 2010) (Davis, J.): The State's Attorney claimed during the

hearing that the mother was involved in a car accident while intoxicated and that the father was unavailable. No one discussed whether the emergency had terminated and the mother was now able to care for the children. Nevertheless, Judge Davis signed an order granting DSS custody for 60 days.

RESPONSE: Case No. A10-783 (July 12, 2010) (Davis, J.): The transcript speaks for itself.  There were no facts discussed during the 48-hour hearing.  However, Judge Davis did consider the evidence of the need for continued emergency custody.  The mother was incarcerated and the father could not be located.  The ICWA affidavit reflected these facts. *See* Beauchamp Decl., Ex. 3. The need for continued custody was obvious.

12. Case No. A10-1064 (September 27, 2010) (Davis, J.): As in all of his other hearings, Judge Davis granted DSS's request for a 60-day continuation of custody without considering the facts of the case, neither what caused DSS to take custody nor whether the emergency had terminated.

RESPONSE: Case No. A10-1064 (September 27, 2010) (Davis, J.): The transcript speaks for itself. Judge Davis absolutely considered the fact that the two-year old child was unsupervised away from his home, and his parents did not attend the 48-hour hearing to offer any suggestion that the imminent harm had passed. The child was placed with the grandparents while the matter was investigated.

13. Case No. A10-1116 (October 14, 2010) (Thorstenson, J.): Similar to Judge Davis, Judge Thorstenson (filling in for Judge Davis) did not inquire as to the emergency that necessitated the child's removal from the home or whether that emergency had terminated. When Judge Thorstenson, without conducting any factual hearing, announced her intention to grant DSS's request for 60 days of additional custody, the mother asked:

"You can't do it any sooner than that?" *See* Transcript at 5. Judge Thorstenson then set

the next hearing for 45 days instead of 60.

RESPONSE: Case No. A10-1116 (October 14, 2010) (Thorstenson, J.): The transcript

speaks for itself.  Judge Thorstenson was reviewing the ongoing emergency based on the

fact that the child's Indian Custodian had abandoned the child.  The child was placed

with the parents who had placed the child with the Indian Custodian due to their inability

to care for the child caused by substance abuse and domestic violence.  Based on these

facts, Judge Thorstenson continued the child's emergency custody.

14. Case No. A10-1119 (October 14, 2010) (Thorstenson, J.): Without conducting any

factual investigation during the hearing, Judge Thorstenson informed the father that the

court was "going to go ahead and adopt the recommendations of the State's Attorney to

leave the child right now in the care of DSS and hopefully they can work with you on

other options for where the child may be." *See* Transcript at 5. The father responded: "I

would like to know what the allegations were." *Id*. Judge Thorstenson would not tell him,

stating: "I don't want you discussing the details of the case, but work with DSS and see

what they can do." *Id*. at 6.

RESPONSE: Case No. A10-1119 (November 8, 2010) (Thorstenson, J.):  Plaintiffs have

flatly misrepresented this case to the Court.  A factual investigation was done by the

judge (see transcript at 5:18-25 and 6:1-6). The state's attorney specifically stated, in

response to the father's request, that the child had a life threatening illness that required

medical treatment, and that the parents were alleged to be missing those appointments.

Based on the imminent harm confronting the child, Judge Thorstenson ordered continued

custody.

9

15. Case No. A10-1191 (November 8, 2010) (Davis, J.): The mother and father both attended the hearing. All that is discernable from the transcript is that the mother apparently had been intoxicated and her son was taken from her custody. The father, however, informed Judge Davis "I wasn't intoxicated," and the father requested that the boy be released to his custody. *See* Transcript at 4. In response, Judge Davis claimed that the court had only two options: "to allow you to work with" DSS to regain custody of his son "or set the matter for a full, formal hearing." *Id*. at 5. The father again asked why he was losing custody of his son, and when Judge Davis did not supply an answer, the father and Judge Davis then had this conversation:

THE FATHER: I would just like to know what I did wrong that my son is not with me. That's all I'm asking.

THE COURT: That, sir, I honestly can't tell you at this point because noting has been checked out and verified to come to me yet.

*Id*. at 5. Notably, a representative from DSS was in the courtroom during the hearing. Judge Davis did not explain why the court was unwilling to ask DSS to supply a response to the father's (legitimate) question. What is clear, however, is that Judge Davis did not know whether the emergency had ceased, and saw no need to address that question. Instead, the court granted DSS's request for continued custody for 60 days.

RESPONSE: Case No. A10-1191 (November 8, 2010) (Davis, J.): The transcript speaks for itself.  The ICWA Affidavit reflects that law enforcement were called to the children's home to address an aggravated assault involving the mother, and one of the children's father. After the father had broken mother's tooth, the mother threatened father with a knife, at which point the child interfered and disarmed the mother.  After arresting mother, law enforcement placed the children in DSS custody.  *See* Beauchamp Decl., Ex.

3. Judge Davis ordered that continued custody was in the children's best interests.  Judge Davis explained that the case was still "fresh and just happened within the last couple of days, and everyone wants to be certain that we err on the side of caution. I would never forgive myself if I returned the child in a courtroom setting like this and missed something in the process."  Transcript at 5:14-16. Judge Davis clearly understood the emergency situation as he explained to the mother:  "I understand, what has happened has happened and now we're trying to best determine how to move forward."  Transcript at 6:4-6. At this point, the state was not even certain if this was an ICWA case.  That is often the case at the 48-hour hearing, unless the family was previously involved in child protection cases.

16. Case No. A10-1238 (November 18, 2010) (Eklund, J.): No evidence was presented in this hearing. The Deputy State's Attorney merely asked the court to allow DSS to continue custody for 60 days "to keep things moving and give the mother an opportunity to work with DSS and certainly, if she wants counsel appointed, we can address those issues as well." *See* Transcript at 4. Judge Eklund responded: "Okay. I'll grant that temporary custody order then." *Id*. at 5. The proceedings were then recessed.

RESPONSE: Case No. A10-1238 (November 19, 2010) (Eklund, J.): Plaintiffs again misrepresent this case to the Court. The transcript reflects that the state provided Judge Eklund with a report to the court, as well as an ICWA affidavit from DSS staff. Transcript at 4:19-22. Judge Eklund's order on continued custody was based on that evidence.

17. Case No. A10-1320 (December 13, 2010) (Thorstenson, J.): No evidence was offered during the hearing regarding why the removal was necessary or whether the emergency

had terminated. However, the father asked why his child had been taken, given that the last disturbance at the home "was over two months ago." *See* Transcript at 2. The court replied: "Okay. I don't want to get into the details of your case specifically just because that's stuff that's going to be coming out." *Id*. at 2-3. Judge Thorstenson then set the next hearing for 60 days and granted DSS's request for custody until that time.

RESPONSE: Case No. A10-1320 (December 13, 2010) (Thorstenson, J.): The ICWA Affidavit is evidence. Judge Thorstenson specifically references this document in the transcript. Transcript at 4:3-6. The affidavit reflects that the father had recurring alcohol issues which triggered domestic abuse. *See* Beauchamp Decl., Ex. 3.

18. Case No. A11-497 (May 23, 2011) (Davis, J.): The transcript is unclear as to why her son was removed but apparently it had to do with an allegation that the mother had been the victim of an assault by the father of the child. The mother informed Judge Davis, however, that the father "is gone," that she has nothing more to do with him, and she sees no reason why her son should not be returned. *See* Transcript at 4. Judge Davis declined to consider whether the boy could safely be returned, telling the mother that "the harsh reality is the department has the ability to return him to you at any time during these proceedings." *Id*. The mother then asked: "Your Honor, I'm sorry, but why am I getting punished for what his dad did?" *Id*. at 5. Rather than conduct an evidentiary hearing, Judge Davis signed an order granting custody to DSS for 60 days.

RESPONSE: Case No. A11-497 (May 23, 2011) (Davis, J.):  The ICWA affidavit and police report indicate that the day before the 48-hour hearing, the child was assaulted by father, resulting in a fractured skull and subdural hematoma. *See* Beauchamp Decl., Ex. 3. The mother indicated that she did not want to press charges against the father.  Judge

Davis continued custody with DSS because he needed more information about what happened and the likelihood of it happening in the future. Transcript at 4:18-22.

19. Case No. A11-645 (July 5, 2011) (Eklund, J.): A mother brought her child to a babysitter. Later that day, the child was placed into DSS's custody when the babysitter became intoxicated and was seen stumbling. The mother stated at the hearing that the babysitter was sober when she dropped off her daughter and she had no idea that this might happen. Yet the court made no effort to determine whether the mother was in the least bit culpable for this incident, nor did the court require DSS to provide any basis for believing that the child would be in danger if returned to the mother. Instead, the court granted DSS's request for 60 days of additional custody, informing the mother that in the meantime she could "attempt to work things out" with DSS. *See* Transcript at 3.

RESPONSE: Case No. A11-645 (July 5, 2011) (Eklund, J.): The transcript speaks for itself. Judge Eklund specifically referenced the police report in this case. Transcript at 2:24-25 and 3:1. Judge Eklund stated that his goal was reunification, but that DSS "first has to make sure that there's safe provisions for the care of that child."  Under the circumstance, Judge Eklund order continued custody.

20. Case No. A11-1004 (November 7, 2011) (Eklund, J.): Judging from the sparse facts in the transcript, the parents apparently were going through a divorce, the mother  had custody of the children, and the father was living in Oklahoma. As soon as the father heard that his children had been taken into state custody, he rushed to Rapid City to attend the 48-hour hearing. He told the court: "I have money, I have everything for my kids. I have been in Oklahoma for two months . . . . I want my kids." *See* Transcript at 2.

13

Rather than ask DSS to offer some legitimate basis for denying the father's request, the court granted DSS's custody request for 45 days.

RESPONSE: Case No. A11-1004 (November 7, 2011) (Eklund, J.): The transcript speaks for itself.  The police report and ICWA affidavit indicates that the children had not been in the custody of an adult caretaker for two months, and had not been in school during that time. *See* Beauchamp Decl., Ex. 3. The evidence also indicated that there was uncertainty as to the child custody arrangement of the children, but that neither parent had reported the children as runaways. Transcript at 2:12-16. Based on these facts, the court ordered continued custody with DSS.  (Father visited children in Wellspring for about two weeks. Mother never visited.)

21. Case No. A11-1075 (December 5, 2011) (Eklund, J.): The transcript of this hearing is fifteen sentences in length. The mother was present but the court did not even ask her to verify her name. The court granted custody to DSS for 60 days without any discussion of the facts, nor did the court advise the mother of her rights.

RESPONSE: Case No. A11-1075 (December 5, 2011) (Eklund, J.): The transcript speaks for itself.  However, from the state's attorney's statement, it appears that the mother was working informally with DSS to resolve the child custody issues. Transcript at 2:11-14.

22. Case No. A12-219 (March 1, 2012 )(Davis, J.): This is the only transcript produced in discovery in which Judge Davis told Indian parents that they "would want to be aware of your rights under the Indian Child Welfare Act and see that they're exercised." Transcript at 5. However, Judge Davis did not advise the parents what those rights were, and he violated their rights under 25 U.S.C. § 1922. Indeed, counsel for an Intervenor Tribe asked the court "to order the state to present some kind of factual basis to support the

finding" that the child should be removed from the home. *Id*. at 8. The court denied the motion and granted custody to DSS.

RESPONSE: Case No. A12-219 (March 1, 2012) (Davis, J.): The transcript speaks for itself. The ICWA Affidavit supported the order for continued custody. *See* Beauchamp Decl., Ex. 3. The parents voluntarily elected to work with DSS, and agreed to allow the tribal court to accept jurisdiction of the case. Judge Davis granted the transfer.

23. Case No. A12-245 (March 8, 2012) (Thorstenson, J.): Counsel for Intervenor Tribe asked the court to continue the hearing for ten days rather than grant DSS's motion for 60-day custody, and specifically invoked ICWA. *See* Transcripts at 14-15. The court denied the request. There was no discussion as to whether the emergency had terminated.

RESPONSE: Case No. A12-245 (March 8, 2012) (Thorstenson, J.): The transcript speaks for itself. Judge Thorstenson specifically identified the evidence she was considering in making her ruling. Transcript at 13:5-18. Of note, Plaintiff Rosebud Sioux Tribe explained that it is the Rosebud Tribal Court's policy to refuse to accept transfer of cases until there is "an adjudication". See A12-468 at 14:6-11.

24. Case No. A12-468 (May 14, 2012) (Thorstenson, J.): Judge Thorstenson informed DSS that she would "like" the children to be returned to the home if it was safe to do so. *See* Transcript at 10. Unfortunately, the court conducted no hearing to determine if it *was* safe to return the child to the home. Instead, the court signed an order granting DSS's request for custody of 60 days.

RESPONSE: Case No. A12-468 (May 14, 2012) (Thorstenson, J.): The transcript speaks for itself. The mother declined to comment on the case because she wanted to speak to an attorney first. Transcript at 10:3-7. Based on the ICWA affidavit (Beauchamp Decl.,

15

Ex. 3.), Judge Thorstenson ordered continued emergency custody. Transcript at 10:10-14.

25. Case No. A12-648 (July 9, 2012) (Davis, J.): Here again, Judge Davis failed to require that any evidence be introduced concerning why the child had been removed from the home. After reading a list of rights, Judge Davis asked the mother if she wanted an attorney. When the mother said she did, the court told her to "fill out an application." *See* Transcript at 6. The hearing was then recessed and Judge Davis signed an order granting DSS further custody for 60 days.

RESPONSE: Case No. A12-648 (July 9, 2012) (Davis, J.): The transcript speaks for itself.  The mother was asked how she wanted to proceed.  She indicated that she would like to receive some legal advice from an attorney.  Judge Davis provided the mother with the application for court appointed services.  Given, the police report, ICWA affidavit (Beauchamp Decl., Ex. 3), and mother's position that she wanted to consult an attorney before proceeding, Judge Davis ordered continued custody.

26. Case No. A12-712 (August 2, 2012) (Thorstenson, J.): The Deputy State's Attorney informed the court that the children were placed with DSS because the adults in the home were inebriated. *See* Transcripts at 9. However, while that fact might explain the emergency that precipitated the removal, it does not address the § 1922 issue of whether "such removal or placement is no longer necessary to prevent imminent physical damage or harm to the child." *See id.* The court conducted no inquiry into that subject but instead signed an order allowing DSS to retain custody until the next hearing in 60 days.

RESPONSE: Case No. A12-712 (August 2, 2012) (Thorstenson, J.):  The transcript speaks for itself.  Judge Thorstenson specifically references the report to the court, and requests the state's attorney to recite the facts necessitating emergency removal and

placement.  Transcript at 9:7-10. Based on that report, and recital, Judge Thorstenson found continued custody to be appropriate.

27. Case No. A12-749 (August 20, 2012) (Thorstenson, J.) Counsel for Intervenor Tribe asked the court "to hear evidence" on the issue of whether to grant DSS's motion for continued custody. *See* Transcript at 16. The court denied the motion and granted DSS's request to extend custody for 60 days.

RESPONSE: Case No. A12-749 (August 20, 2012) (Thorstenson, J.): The transcript speaks for itself.  It reflects that the parents, the tribe, and the state were trying to determine whether the paternal grandmother was an Indian custodian, and that the state was waiting to receive confirmation of this fact from the tribe.  Judge Thorstenson set a continued hearing for the following week to have an evidentiary hearing on this issue, if DSS was going to contest the grandmother's guardianship status.  In the meantime, DSS was authorized to return the child to the grandmother if it was determined that the grandmother's guardianship was effective.

28. Case No. 12-867 (September 24, 2012) (Thorstenson, J.): This case is similar to all the others, in that no evidence of a continuing emergency was mentioned. However, it is significant because when counsel for Intervenor Tribe requested an evidentiary hearing, the court denied the request based on one ground. According to Judge Thorstenson: "ICWA does not apply to emergency [48-hour] hearings." *See* Transcript at 11.

RESPONSE: Case No. A12-867 (September 24, 2012) (Thorstenson, J.): The transcript speaks for itself. Judge Thorstenson stated that the ICWA affidavit and police report "are all part of the court file, will be accessible to [the parents] and [their] attorney and will be able to be looked at."  Further, she explained "[t]he fact that there was no adult present at

the home and that [father] was, in fact, arrested for a DUI and incarcerated . . . satisfies the emergency aspect of this."  Transcript at 14:4-15.  Judge Thorstenson even agreed that if the father's attorney wanted to have any other matters addressed, the attorney just needs to contact the court. Transcript at 14:21-23. When the tribe's attorney pressed about the specific issue of providing the court's files to the father, Judge Thorstenson stated, "They're part of the court file.  They're available to him at all times." Transcript at 15:15-17.

29. Case No. A13-20 (January 7, 2013) (Pfeifle, J.): Counsel for Intervenor Tribe informed the court that although the parents had been incarcerated, the father was no longer in jail and, therefore, the children should be returned to the father "unless the State is ready to present some kind of evidence to suggest why the placement requirements of the Indian Child Welfare Act should not govern." *See* Transcript at 12. The court, however, denied counsel's request, conducted no evidentiary hearing, and granted continued custody to DSS for 30 days.

RESPONSE: Case No. A13-20 (January 7, 2013) (Pfeifle, J.): The transcript speaks for itself.  Judge Pfeifle granted continued emergency custody based on the ICWA affidavit, and police records indicating the mother was incarcerated, and the father was recently released for a DUI with the children in the car.  Transcript at 14:20-23. Notably, the tribe's attorney asked Judge Pfeifle to set an evidentiary hearing within a couple days so that the parents could consult with their attorneys. Transcript at 13:4-6. Judge Pfeifle denied the tribe's motion.

30. Case No. A13-30 (January 10, 2013) (Pfeifle, J.): Counsel for Intervenor Tribe asked the court to hold an evidentiary hearing because the father was prepared to testify that

18

although the mother had difficulties with child care, the father "is ready, willing, and able to take custody" of his child, that the father had already found a "responsible caretaker" to care for the child while the father was working, and that the father would testify as to "what he can do to ensure the safety of the child." *See* Transcript at 11. The court denied the request, granting continued custody to DSS for 30 days.

RESPONSE: Case No. 13-30 (January 10, 2013) (Pfeifle, J.):  The transcript speaks for itself.  The father was not prepared to testify.  He indicated as much when he asked to consult with his attorney. Transcript at 9:4-7. Judge Pfeifle denied tribe's motion for an expedited hearing on the ongoing emergency while the father consulted his attorney.

31. Case No. A13-49 (January 22, 2013) (Pfeifle, J.): Counsel for Intervenor Tribe asked the court to return the child to the mother because, now that the mother had been released from jail, "there is no longer any legal justification" for separating the family. *See* Transcript at 9. Specifically invoking § 1922, counsel asked that a hearing be convened "in which the State will have the burden of showing that continued placement is necessary for the protection of the child." *Id*. at 10. The court denied counsel's motion and instead granted DSS's motion to continue custody for 60 days.

RESPONSE: Case No. A13-49 (January 22, 2013) (Pfeifle, J.): The transcript speaks for itself. The mother voluntarily chose to proceed informally, and declined to seek legal counsel.  The court's continued custody order was based on the report to the court, and the ICWA affidavit.  However, the tribe's motion to have those records provided to the parent was not resolved during the hearing.

32. Case No. A13-609 (September 9, 2013) (Pfeifle, J.): Even though counsel for Intervenor Tribe informed the court that, in the Tribe's opinion, the child would not be in imminent

danger if returned to the home and counsel requested an evidentiary hearing, the court denied counsel's request and ordered continued custody for 30 days to DSS. *See* Transcript at 8.

RESPONSE: Case No. A13-609 (September 9, 2013) (Pfeifle, J.): The transcript speaks for itself.  The ICWA affidavit, as discussed on the record, alleged that the mother was intoxicated and making suicidal threats in front of the children, and that she regularly made such threats while intoxicated.  *See* Beauchamp Decl., Ex. 3. The mother was allowed to explain to the Judge Pfeifle that this was not a serious threat.  The tribe's attorney advised Judge Pfeifle that she was to undergo an "assessment" the following week.  Based on all of this information, Judge Pfeifle ordered continued emergency custody.

33. Case No. A13-616 (September 12, 2013) (Pfeifle, J.): Counsel for Intervenor Tribe informed the court that the mother is no longer incarcerated and that the father has always been available to care for the child, and that therefore the state cannot meet its burden to prove imminent danger. *See* Transcript at 8. However, the court denied the request to reunite the family and granted DSS continued custody for 30 days.

RESPONSE: Case no. A13-616 (September 12, 2013) (Pfeifle, J.):  The transcript speaks for itself.  Judge Pfeifle ordered continued custody based on the police report, ICWA affidavit, and statements made during the hearing.  He granted the state's petition for 14 days.

34. Case Nos. A14-444, A14-445, and A14-446 (June 23, 2014) (Davis, J.): Judge Davis held three 48-hour hearings back-to-back and the court reporter combined all three hearings into one transcript. In not one of these hearings did Judge Davis conduct the inquiry

20

required by § 1922. To the contrary, as noted earlier, when counsel for an Intervenor

Indian Tribe asked Judge Davis to include such an inquiry in the hearing, Judge Davis

denied the request on the grounds that, in his opinion, "ICWA doesn't apply to a 48-hour

hearing." *See* Transcript at 14.

RESPONSE: Case Nos. A14-444, A14-445, and A14-446 (June 23, 2014) (Davis, J.):

The transcripts speak for themselves.  The first two fathers were incarcerated at the 48-

hour hearings, and obviously, not in a position to provide the necessary care for the

children.  Judge Davis further articulated to the Tribe's attorney that the fathers' release,

by itself, would not satisfy him that the imminent harm to the child had ceased.

35. Plaintiffs received more than 120 transcripts of 48-hour hearings conducted since January

1, 2010. Plaintiffs also received the Temporary Custody Orders that were entered in

nearly all of those cases.  Every one of these orders contains the following provision:

> The Department of Social Services *is hereby authorized* to return
> full and legal custody of the minor child(ren) to the parent(s),
> guardian or custodian (without further court hearing) at any time
> during the custody period granted by this Court, if the Department
> of Social Services concludes that no further child protection issues
> remain and that temporary custody of the child(ren) is no longer
> necessary. (Emphasis added.)

*See* Beauchamp Decl. Ex. 2.

RESPONSE: Undisputed.

36. Thus, DSS was *authorized* by these orders to return custody of Indian children to their

homes when the emergency has terminated but DSS was *never ordered* to do so. *See*

Beauchamp Decl. Ex. 2.

RESPONSE: Undisputed, but would contend that this is a distinction without a

difference.  The court's authorization necessarily requires DSS to pursue the inquiry of

impending harm.  If the court's directive is not followed, the parties can bring the matter before the court.

37. Similarly, in their oral directives during the hearings, presiding judges never ordered DSS to return an Indian child to the home when the emergency ended. At most, the presiding judges indicated a preference for that result, and merely authorized DSS to return the child. *See, e.g.,* Beauchamp Decl. Ex. 1-Case No. 11-1060 (December 1, 2011) (Eklund, J.) Transcript at 4 (stating that DSS "will be authorized in this case" to return the children to the parents); Case No. A12-468 (May 14, 2012) (Thorstenson, J.) Transcript at 12 (stating that DSS has "the authority" to return the child); Case No. A12-712 (August 2, 2012) (Thorstenson, J.) Transcript at 9 (stating that the court gives "the Department authority to return the children"); Case No. A13-609 (September 9, 2013) (Pfeifle, J.) Transcript at 9 (stating that DSS has "the capability" to return the child); Case No. A13-616 (September 12, 2013) (Pfeifle, J.) Transcript at 9 (stating that if DSS determines "that return of custody is appropriate, that may happen."); Case No. A13-845 (December 23, 2013) (Mandel, J.) Transcript at 6 (stating that DSS is "authorized" to return the child); Case No. A14-444 (June 23, 2014) (Davis, J.) (stating that under his order, DSS could return the children "without further proceedings" but not ordering DSS to return the children at any particular time).

RESPONSE: Undisputed that the various judges made the oral directives during the respective hearings. The transcripts speak for themselves.

38. Counsel for Plaintiffs have read all of the hearing transcripts and all of the orders following those hearings that have been produced in this lawsuit. In not one hearing and in not one order was DSS directed, instructed, or ordered to return an Indian child to his

or her home at any particular time. In addition, in not one transcript is there any indication that the State's Attorney or any DSS employee made any attempt to introduce the evidence required by § 1922, except in those few hearings in which the State's Attorney happened to mention that a parent was incarcerated or hospitalized. Furthermore, although the ICWA affidavits prepared by DSS employees and submitted in 48-hour hearings often discussed the events that led up to the child being removed from the home, they almost never discussed in any meaningful or comprehensive manner whether the child would likely suffer injury if returned to the home.

RESPONSE: Disputed as to Plaintiffs' counsel's characterization of the orders.  The orders authorize DSS to return the child(ren) as soon as there are no imminent child protection issues.  DSS must meet certain protocols established by the department's extensive training requirements.  The Department's training requires an analysis on "imminent danger" based on not only immediate harm, but also the foreseeability or recurrent danger.  During the 48-hour hearing, the court is determining whether emergency custody should continue.  These decisions are based on the record evidence. The § 1922 findings are based on this evidence.

Dated:  September 5, 2014

<div style="margin-left:3em;">

**MORRIS LAW FIRM, Prof. LLC**
*Attorneys for LuAnn Van Hunnik and Lynne A. Valenti*

By :   */s/ Robert L. Morris*
 Robert L. Morris
117 5th Avenue, PO Box 370
Belle Fourche, SD 57717-0370
(605) 723-7777
bobmorris@westriverlaw.com

*Special Assistant Attorney General*

</div>

23

Dated: September 5, 2014

Nathan R. Oviatt
Special Assistant Attorney General
GOODSELL QUINN, LLP
246 Founders Park Drive, Suite 201
P.O. Box 9249
Rapid City, SD 57709-9249
Office:  605-343-3000
Fax:  605-343-3251

Dated: September 5, 2014

<div align="center">

**GUNDERSON, PALMER, NELSON**
**& ASHMORE, LLP**
*Attorneys for Mark Vargo*

</div>

By: _____

J. Crisman Palmer
P.O. Box 8045
Rapid City, SD 57709-8045
(605) 342-1078
cpalmer@gpnalaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 5th day of September, 2014, I electronically filed **DEFENDANTS' STATEMENT OF MATERIAL FACTS IN RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE: 25 U.S.C. § 1922** with the Clerk of the Court for the United States District Court for the Western Division by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Dated this 5th day of September, 2014.

BY: <u>/s/ *Robert L. Morris*</u>
(Electronically Filed)