UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| OGLALA SIOUX TRIBE, et al, | ) | Civ. 13-5020-JLV |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **DEFENDANTS' STATEMENT OF** |
| vs. | ) | **MATERIAL FACTS IN RESPONSE TO** |
| | ) | **PLAINTIFFS' MOTION FOR** |
| LUANN VAN HUNNIK, et al, | ) | **SUMMARY JUDGMENT** |
| | ) | **RE: DUE PROCESS VIOLATIONS** |
| Defendants. | ) | |
| | ) | |

Pursuant to Local Rule 56.1, Defendants, by and through its counsel of record, submits the following separate statement of material facts in response to Plaintiffs' Motion for Summary Judgment Re: Due Process Violations. (Document 109.)

1.  From January 2010 to the present, in 100 percent of the 48-hour hearings conducted by Judge Davis (except for those in which jurisdiction over the child was promptly transferred to a tribal court), Judge Davis granted the South Dakota State's Attorney's and Department of Social Service's ("DSS") (together, "the State") request for continued custody and removed all the Indian children involved in those hearings from their homes. See Transcripts of 48-hour hearings before Judge Davis, Beauchamp Decl. Ex. 1, Case Nos. A10-50, A10-177, A10-270, A10-306, A10-358, A10-404, A10-460, A10-523, A10-544, A10-773, A10-783, A10-901, A10-955, A10-1035, A10-1064, A10-1170, A10-1191, A10-1191, A10-1201, A11-480, A11-497, A12-219, A12-648, A12-839, A14-444, A14-445, and A14-446.

RESPONSE:  Disputed. Judge Davis does not remove children from their home. Law enforcement removes children from their home. During 48-hour hearings, Judge Davis

determines whether emergency custody should continue if there is good cause to believe that "[t]here exists an imminent danger to the child's life or safety and immediate removal of the child from the child's parents, guardians, or custodians appears to be necessary for the protection of the child."  SDCL 26-7A-13(1)(b). In the cases listed above Judge Davis did order continued custody.  Judge Davis will also issue a temporary custody order for an Indian child, when jurisdiction is transferred to cover any time in the interim of the 48-hour and the actual transfer of the child to tribal court. SDCL 26-7A-14.

2.  Between 2010 and 2013, eighty-nine percent of the 823 children involved in 48-hour hearings remained in the continued care or custody of DSS for at least one day following the hearing. In forty-five percent of those cases, the children remained in DSS custody for more than 30 days following the 48-hour hearing. In thirty-four percent of those cases, children remained in DSS custody for more than 60 days following the 48-hour hearing.

RESPONSE:  This assertion is confusing as numbers used for calculation are not provided.  Proper calculations for the years 2010, 2011, 2012, and 2013 are as follows:

- 823 Indian children were involved in 48 Hour hearings.  100 percent.

- 87 children were discharged from DSS custody the day of the 48 Hour hearing.  10.6 percent.

- 736 of the 823 children remained in court ordered custody of DSS for at least 1 day after the hearing – 89.4 percent.

- 207 of the 736 children were discharged from DSS custody within 1 – 15 days.  36.4 percent.

- 114 of the 736 children were discharged from DSS custody within 16 – 30 days.  15.5 percent.

- 44 of the 736 children were discharged from DSS custody within 31 – 45 days.  6.0 percent.

- 50 of the 736 children were discharged from DSS custody within 46 – 60 days.  6.8 percent.

- 476 of the 736 children were discharged from DSS custody within 1 – 60 days.  64.7 percent.

- 260 of the 736 children remained in court ordered custody of DSS from more than 60 days after the 48 Hour hearing.  35.3 percent.

- 563 of the 823 children were discharged from DSS custody within 0 – 60 days of the 48 Hour hearing.  68.4 percent.

- 260 of the 823 children remained in court ordered custody of DSS for more than 60 days after the 48 Hour hearing.  31.6 percent.

- It is noted that in order to determine whether custody was court order under a Temporary Custody Order or based upon a Petition for Adjudication regarding any child, the individual Court file would have to be reviewed.

Affidavit of Robert L. Morris in Support of Defendants' Response to Plaintiffs' Motions for Partial Summary Judgment ("Morris Aff."), Exhibit ("Ex.") 23.

3.   During 2010, 2013, and thus far in 2014, fewer than twenty percent of adjudicatory custody hearings held in Pennington County pursuant SDCL § 26-7A-1(2) involving an Indian child were held within 50 days of the child's removal from their home. Beauchamp Decl. Ex. 3, Davis RFA Nos. 26-28.

RESPONSE:  This statement is factually accurate, but the reason for this statistic is important.  Parents' attorneys require preparation time to prepare their clients' defense. If the parents' attorneys are prepared and request an expedited hearing, the request can be considered.  Beauchamp Decl. Ex 4, Davis Ans. RFA No. 10; Defendants' Exhibit 27, A14-456.

3

4.  During 2010 and 2013, fewer than twenty percent of advisory hearings held in
    Pennington County pursuant to SDCL § 26-7A-54 involving an Indian child were held
    within 30 days of the child's removal from their home. Beauchamp Decl. Ex. 3, Davis
    RFA Nos. 29-30.

    RESPONSE: This statement is factually accurate, but the reason for this statistic is
    important.  Parents' attorneys require preparation time to prepare their clients' defense.
    If the parents' attorneys are prepared and request an expedited hearing, the request can be
    considered.  Beauchamp Decl. Ex. 3, Davis Ans. RFA No. 10; Defendants' Exhibit 27,
    A14-456.

5.  No South Dakota state statute prohibits Judge Davis and the other Seventh Circuit judges
    from convening an adjudicatory custody hearing (as referenced in SDCL § 26-7A-1(2))
    within 10 or 20 days of the 48-hour hearing. Beauchamp Decl. Ex. 4, Davis Am. Interrog.
    No. 12(c). Nonetheless, Judge Davis does not schedule adjudicatory custody hearings
    within 20 days of the 48-hour hearing because of his belief that "in practice it is
    impossible." *Id. But see* Beauchamp Decl. Ex. 3, Def. Davis' Am. Answers to Pls.' First
    Set of Reqs. for Admissions ("Davis Am. RFA") No. 10 (admitting that if "the attorneys
    for the interested parties are in agreement that the advisory and adjudicatory hearings
    should be expedited, then the circuit judge could consider that stipulation").

    RESPONSE:  Undisputed.

A. *Defendants Have Failed to Provide Plaintiffs with Adequate Notice*

6.  Judge Davis relies upon the State's Attorney and/or DSS employees to provide parents
    with copies of the petition for temporary custody and the ICWA affidavit, despite the fact
    that SDCL 26-7A-37 authorizes the court to provide parents with these documents.

Beauchamp Decl. Ex. 3, Davis Am. RFA Nos. 22-23.

RESPONSE: Disputed.  DSS has had a written policy of providing parents who attend 48-hour hearings with the ICWA affidavit.  Judge Davis conveys the contents of the petition for temporary custody to the parents during 48-hour hearings.  If Judge Davis learns that the parents have not received a copy of something contained in the court's file, other than the police report, he ensures that the parents receive copies. Morris Aff. Exs. 1 and 27, A14-456.

7. Although Judge Davis "allows all parents to receive copies of all records which are requested, with the exception of police reports, which are specifically exempted from discovery," Beauchamp Decl. Ex. 4, Davis Am. Interrog. No. 4, he does not specifically order that parents be provided with copies of these documents unless he "is made aware that the parents have not received a copy of any documents in the file," *id.*, Davis Am. Interrog. No. 7. *See also id.* ("Judge Davis interprets [SDCL 26-7A-37] to permit copies to be made for parents *who request them*." (emphasis added)); *id.* No. 12 ("If Judge Davis is made aware that a parent has made a request for documents to [DSS], and the document is not provided, then he will *typically* order it be provided." (emphasis added)); Beauchamp Decl. Ex. 3, Davis Am. RFA Nos. 11-12.

RESPONSE: Disputed.  DSS has had a written policy of providing parents who attend 48-hour hearings with the ICWA affidavit. Defendants' Exhibits 15, 23.  Judge Davis conveys the general substance of the petition for temporary custody to the parents during 48-hour hearings.  If Judge Davis learns that the parents have not received a copy of something contained in the court's file, other than the police report, he ensures that the parents receive copies. Morris Aff. Ex. 27, A14-456.

5

8.  Between January 2010 and January 2014, DSS did not provide parents with the
    documents relevant to their case, including the petition for temporary custody and the
    ICWA affidavit. DSS instead deferred to "the social worker in court to decide whether or
    not a parent would receive documents," though the social worker did not typically
    provide parents with a copy of the petition for temporary custody. Beauchamp Decl. Ex.
    5, Def. Vargo's Answers to Pls.' First Interrog. ("Vargo Interrog.") No. 1.

    RESPONSE:  Disputed.  As to any assertion against DSS, this is untrue and a
    misrepresentation of DSS policy and practice as expressed in Van Hunnik/Valenti
    Answers to Interrogatories.

    - Petition for Temporary Custody – This is a document prepared by the State's
      Attorney's office.  DSS does not have a policy for distribution of a State's
      Attorney prepared document.

    - ICWA Affidavit – The DSS issued a policy directive on November 23, 2005, that
      an ICWA Affidavit was to be used in temporary custody proceedings.  It has been
      the common practice of DSS to provide parent(s) with a copy of the ICWA
      Affidavit prior to June, 2012.  Since June 2012, it has been the written policy of
      DSS to provide a copy of the ICWA Affidavit to the parent(s), if present at the 48
      Hour Hearing.  Whether before or after June 2012, if a parent(s) did not receive a
      copy, it would be considered an oversight and not intentional on the part of the
      child protection staff.  In addition, by statute the parent and assigned attorneys
      have access to the complete court file.

    Morris Aff. Ex. 23.

9.  Between January 2014 and May 2014, nearly a year after the filing of the present lawsuit,
    DSS began to provide parents present at 48-hour hearings with copies of the ICWA
    Affidavit, the DSS affidavit, and a Court Report when applicable. During these five
    months, however, parents still did not typically receive a copy of the Petition for
    Temporary Custody. Beauchamp Decl. Ex. 5, Vargo Interrog. No. 2.

RESPONSE: Disputed.  As to any assertion against DSS, this is untrue and a misrepresentation of DSS policy and practice as expressed in Van Hunnik/Valenti Answers to Interrogatories.

- Petition for Temporary Custody – This is a document prepared by the State's Attorney's office.  DSS does not have a policy for distribution of a State's Attorney prepared document.

- ICWA Affidavit – The DSS issued a policy directive on November 23, 2005, that an ICWA Affidavit was to be used in temporary custody proceedings.  It has been the common practice of DSS to provide parent(s) with a copy of the ICWA Affidavit prior to June, 2012.  Since June 2012, it has been the written policy of DSS to provide a copy of the ICWA Affidavit to the parent(s), if present at the 48 Hour Hearing.  Whether before or after June 2012, if a parent(s) did not receive a copy, it would be considered an oversight and not intentional on the part of the child protection staff.  In addition, by statute the parent and assigned attorneys have access to the complete court file.

Morris Aff. Ex. 23.

10. Parents who are present at the 48-hour hearings have only received a copy of the Petition for Temporary Custody since May 2014. Beauchamp Decl. Ex. 5, Vargo Interrog. No. 2.

RESPONSE: Undisputed.

11. A mandate that DSS or the State's Attorney provide parents with copies of temporary custody petitions, ICWA affidavits, or police reports relevant to their case prior to or during the 48-hour hearing would impose at most "limited" difficulties "and the expense would be minor." Beauchamp Decl. Ex. 5, Vargo Interrog. No. 10.

RESPONSE: Disputed to the extent that this statement suggests that DSS has no such mandate which predated this lawsuit. Morris Aff. Exs. 15 and 23.   Undisputed to the extent that providing such documents, other than police reports, would impose limited expense and difficulty, which is why it is done.

12. Judge Davis fails to advise parents of the allegations of abuse and neglect that have been made against them, alluding to unspecified "issues" that DSS has brought to the attention

7

of the court. *See, e.g.*, Beauchamp Decl. Ex. 1, Case Nos. A10-460 at 2 (Judge Davis describes "issues regarding children in your respective families that were drawn to the attention of Department of Social Services . . . and then drawn to my attention" as basis for hearing), A10-50 at 2 (Judge Davis tells parents "there have been some issues regarding the children that have come to the State of South Dakota's attention" and "The allegation is that the children are abused and neglected by statute and by definition"), A10-404 at 2 (Judge Davis details "there have been issues involving care, custody and control of children in your respective care that's been brought to the Department of Social Services' attention"), and A10-487 at 4-5 (Judge Davis tells parents "it's obvious that there are issues with children in your respective families that have been brought to the attention of the Department of Social Services").

RESPONSE: Disputed.  The transcripts speak for themselves but do not tell the whole story.  Parents at 48-hour hearings receive copies of the ICWA affidavit from the DSS specialist who attends the hearing. Morris Aff. Exs. 1 and 23.  The ICWA affidavit contains the factual allegations supporting the petition for temporary custody ("PTC's").  Judge Davis relates the substance of the PTC's to the parents during his advisement at 48-hour hearings.  The PTC's do not contain the factual allegations.  Beauchamp Decl. Ex. 8.

13. Judge Davis and the other Seventh Circuit judges distinguish between the petition for temporary custody sought by the State during 48-hour hearings and "formal" petitions for temporary custody, which parents must specifically request during 48-hour hearings. Beauchamp Decl. Ex. 4, Davis Am. Interrog. No. 1. *See also* Beauchamp Decl. Ex. 1, Case Nos. A12-749 at 10 (Judge Thorstenson instructs parents, "If anyone wants to

proceed with a more formal basis to start with, you need to let me know and the State can decide whether or not they'd like to file that formal petition immediately or how they'd like to proceed."), and A10-955 at 3 (Judge Davis instructs, "You have a right . . . to a court proceeding . . . and to make the state prove the allegations in the petition, if you wish, on a more formal basis").

RESPONSE: Undisputed as to Judge Davis.

14. Judge Davis and the other Seventh Circuit judges regularly suggest that parents "work with DSS" and instruct parents that a "formal" petition has not been filed, implying that "significant rights" of the parents have not yet been implicated. *See, e.g.*, Beauchamp Decl. Ex. 1, Case Nos. A10-460 at 3 (Judge Davis informs parents, "If the state elects to file a formal petition the matter becomes much more serious."), A10-404 at 2-3 (Judge Davis instructing parents, "You have an opportunity to work with the department [DSS] . . . to see if the issues are resolved and the children returned. If that doesn't take place the state has a right to file a petition alleging abuse and neglect. . . . If the state elects to file on a formal basis, either today or at a later time, you folks need to understand that there are significant rights here"), and A10-783 at 4 (Judge Davis advising "the state has the ability to file a formal abuse and neglect petition, which then kind of ramps things up and there's a full hearing, [and] you're entitled to be represented by counsel").

RESPONSE: Disputed. The transcripts speak for themselves. He does not suggest or imply that "significant rights" have not yet been implicated. SDCL 26-7A-19(2) specifically permits the "informal process" described by Judge Davis in the transcripts. Judge Davis conveys that option to parents in his advisement. Beauchamp Decl. Ex. 1,

and Case Nos. A10-1007, A11-480, A11-497, A12-191, A12-219, A12-648, A12-659,

A14-443, A14-445, A14-446, A14-455, A14-456.

15. Judge Davis and the other Seventh Circuit judges regularly place the onus on parents to

decide if they "want to work with the State on a voluntary basis" for up to 60 days in an

attempt to resolve "issues" or to opt for more formal proceedings. *See* Beauchamp Decl.

Ex. 1, Case Nos. A10-177 at 4 (Judge Davis instructing mother "You can ask that more

formal proceedings take place, otherwise you work through it on an informal basis and

the issues are resolved and everyone goes on down the road."), and A12-749 at 10 (Judge

Thorstenson instructs family members, "If anyone wants to proceed with a more formal

basis to start with, you need to let me know and the State can decide whether or not

they'd like to file that formal petition immediately or how they'd like to proceed.").

RESPONSE:  Disputed.  Judge Davis does not "place the onus on parents to decide if

they 'want to work with the State on a voluntary basis' for up to 60 days in an attempt to

resolve 'issues' or to opt for a more formal proceedings."  The parents have a right to

demand that the State file a petition alleging abuse and neglect.  Thus, it is a mutual

decision between the State and the parents to decide if an informal resolution is

agreeable.  If the parents refuse then this option is unavailable. Beauchamp Decl. Ex. 1,

and A10-1007, A11-480, A11-497, A12-191, A12-219, A12-648, A12-659, A14-443,

A14-445, A14-446, A14-455, A14-456.

16. Indian parents are never asked during Defendants' 48-hour hearings whether the

emergency that required the removal of their child(ren) has terminated. *See* Beauchamp

Decl. Ex. 4, Def. Davis' Am. Answers and Resps. to Pls.' First Set of Interrogatories and

Second Set of Reqs. for Production ("Davis Am. Interrog.") No. 15. *See also* Beauchamp

Decl. Ex. 1, Case No. A10-1320 at 2-3 (Reflecting a father's attempt to explain that domestic issue ended "over two months" prior, and Judge Thorstenson's response: "I don't want to get into the details of your case").

RESPONSE: Disputed.  There is no Answer to Interrogatory No. 15 from Judge Davis. Further, Judge Thorstenson has not had the opportunity to explain her statement in Case No. A10-1320. In any case, the 48-hour hearing is used to determine whether emergency custody should continue if there is good cause to believe that there exists an imminent danger to the child's life or safety.  SDCL 26-7A-13(1(b).  Therefore, this inquiry is always made even if it is not verbalized on the record. Beauchamp Decl. Exs. 1, A12-571, A12-468, and A12-36 are examples of when this inquiry is verbalized on the record. Beauchamp Decl. Ex. 4, Davis Am. Ans. Inter. No. 9.

17. Judge Davis concedes that: (a) not once in any of the 48-hour hearings over which he presided did the court inquire whether the cause of the child's emergency removal had been rectified prior to the hearing; and that (b) he knows of only three 48-hour hearings, Case Nos. A12-571, A12-468, and A12-36, conducted in the Seventh Judicial Circuit since January 2010 in which an inquiry was made by the court into whether the cause of the child's emergency removal had been rectified. Beauchamp Decl. Ex. 4, Davis Am. Interrog. No. 9. Furthermore, in two of those three cases, the inquiry into whether the cause of the child's emergency removal had been rectified was initiated by counsel for an Indian tribe, and not by the court. *See* Beauchamp Decl. Ex. 1, Case Nos. A12-571 and A12-36.

RESPONSE: This is a misleading statement. The 48-hour hearing is used to determine whether emergency custody should continue if there is good cause to believe that there

exists an imminent danger to the child's life or safety.  SDCL 26-7A-13(1(b).  Therefore, this inquiry is always made even if it is not verbalized on the record.  A12-571, A12-468, and A12-36 are examples of when this inquiry is verbalized on the record.  Beauchamp Decl. Davis Ans. To Pls' Interrog. No. 9. A14-456 is an example of where Judge Davis verbalized that he was not satisfied that the emergency circumstances had ended.  Morris Aff. Ex. 27, A14-456.

18. The state's Petitions for Temporary Custody, submitted to Judge Davis and the Seventh Circuit judges as recently as June 23, 2014, routinely fail to cite § 1922 or its standard. *See* Beauchamp Decl. Ex. 8, Petitions for Temporary Custody filed in the three 48-hour hearings held on June 23, 2014.

RESPONSE: Undisputed.

*B. Defendants Have Failed to Provide Plaintiffs with an Adequate Opportunity to Present Evidence.*

19. From January 2010 to the present, it has been the prevailing practice of Judge Davis and the other Seventh Circuit judges during 48-hour hearings to continue to deprive Indian parents of legal and physical custody of their children for up to an additional 60 days without advising those parents that they have a right to testify during the 48-hour hearing. *See, e.g.*, Beauchamp Decl. Ex. 1, Case Nos. A10-50 (Judge Davis announces "intention to sign" 60-day Temporary Custody Order *before* asking parents if they understand their rights), A10-270 (Judge Davis signs 60-day Temporary Custody Order before ever addressing parents present in courtroom), A10-306 (Judge Davis signs Temporary Custody Order without allowing parents to testify), and A10-460 (same).

RESPONSE:  Undisputed that Judge Davis does not advise parents that they have a right to testify in the 48-hour hearing.  In ninety-nine percent of 48-hour hearings, parents

12

appear without an attorney.  *See generally*, Beauchamp Decl. Ex. 1. It would be extremely prejudicial to their case to allow them to testify without consulting with an attorney.

20. To the contrary, in a number of transcribed hearings, judges on the Seventh Circuit have expressly told Indian parents either that they are not permitted to say anything about the facts concerning their child(ren)'s removal during the 48-hour hearing, or that they are not permitted to give testimony. *See, e.g.*, Beauchamp Decl. Ex. 1, Case Nos. A10-1119 (Judge Thorstenson telling father: "Sir, I don't want you to say anything with regard to the allegations per se but if you have questions about your -- about the procedures or the process, absolutely. I just want to make sure you don't say anything."), A10-1320 (Judge Thorstenson telling father: "I don't want to get into the details of your case specifically just because that's stuff that's going to be coming out [in a later proceeding]."), A12-244 (Judge Thorstenson denying counsel's request to present evidence at the 48-hour hearing, stating that a 48-hour hearing is not "that type of hearing."), and A12-219 (following counsel's request that "the court to order the state to present some kind of factual basis to support" continued custody of the child, Judge Davis denying the request on the grounds that "[t]his is a 48-hour hearing.").

RESPONSE:  Undisputed that Judge Davis regularly cautions parents that anything they say can and will likely be used against in either the child custody proceeding or a corresponding criminal proceeding. *See generally* Beauchamp Decl. Ex. 1. He encourages parents to avail themselves of the right to counsel they have invoked.  He will deny a tribe's request for testimony from parents. Morris Aff. Ex. 27, A14-456. However, no parent in any of the transcripts produced in this case has ever requested that they be

allowed to testify at the 48-hour hearing. *See generally*, Beauchamp Decl. Ex. 1.

21. Indeed, Judge Davis admits that "no oral testimony is taken at a 48-hour hearing." Beauchamp Decl. Ex. 3, Davis Am. RFA No. 19. *See also* Beauchamp Decl. Ex. 4, Davis Am. Interrog. No. 4(c)-(f).

RESPONSE:  Undisputed.

22. From January 2010 to the present, in not one of the more than 120 transcribed hearings did Judge Davis or any other Seventh Circuit judge ever in fact provide an Indian parent with the opportunity to testify during a temporary custody hearing. *See, e.g.*, Beauchamp Decl. Ex. 1, Case Nos. A13-609 at 2 (Addressing a number of cases, Judge Pfiefle advises, "This is an informal proceeding. We do not hold a full evidentiary hearing. We will not take testimony"), A13-639 at 3 (Judge Pfiefle advising "This is not a time and place for an evidentiary hearing. That remains for a later date."), A13-738 at 2 ("This is an informal proceeding. By that I mean we don't take any testimony"), A13-560 (Judge Pfiefle advising, "This is not a formal hearing in terms of presentation of evidence.") and A13-731I at 2 (Judge Pfiefle advising "These are informal proceedings, meaning no testimony is taken"). *See also* Beauchamp Decl. Ex. 1,Case No. A12-302 at 6-7 (in which Judge Thorstenson refuses to allow mother to testify despite requests by private counsel "to put her on the stand").

RESPONSE: Disputed.  Judge Davis never had occasion in any of the 120 case produced in this litigation to consider such a request from a parent. *See generally* Beauchamp Decl. Ex. 1.  Nonetheless, Judge Davis allows parents to be heard during the 48-hour hearing, he does, however, caution them about preserving their right to remain silent.  See e.g. Beauchamp Decl. Ex. 1, A10-306 5:13-24 (advising the parent, "This is not a criminal

14

proceeding, nevertheless I always like to advise everyone that you to be careful as to what you say . . . Anything that you say or admit to throughout the proceedings that might implicate you, either in a direct action or a failure to act, could and would be used against you at subsequent hearings or proceedings.").

23. From January 2010 to the present, in not one of the more than 120 transcribed hearings did Judge Davis or any other Seventh Circuit judge ever advise an Indian parent that they have a right to call witnesses in the 48-hour hearing. *See generally* Transcripts of 48-Hour Hearings before Judge Davis, Beauchamp Decl. Ex. 1.

RESPONSE: Undisputed.

24. In the 48-hour hearings over which he presided in 2010, Judge Davis typically did not specifically ask parents at the hearings if they wanted the opportunity to present evidence as to whether (a) the State had in fact undertaken active efforts to prevent a break-up of their family, and (b) their child(ren) might safely be returned to the home. Beauchamp Decl. Ex. 3, Davis RFA Nos. 15-16.

RESPONSE: Undisputed.

*C. Defendants Have Failed to Provide Plaintiffs with an Adequate Opportunity to Confront and Cross-Examine*

25. From January 2010 to the present, in not one of the more than 120 hearings that were transcribed did Judge Davis or any other Seventh Circuit judge ever advise any parent or custodian of an Indian child that they had a right to contest the State's Petition for Temporary Custody during the 48-hour hearing. *See generally* Beauchamp Decl. Ex. 1, Transcripts of 48-Hour Hearings before Judge Davis.

RESPONSE: Undisputed.

26. From January 2010 to the present, in not one of the more than 120 hearings that were transcribed did Judge Davis or any other Seventh Circuit judge ever provide an Indian parent with the opportunity to contest the State's Petition for Temporary Custody during the 48-hour hearing. *See, e.g.*, Beauchamp Decl. Ex. 1, Case Nos. A12-867 at 9-13 (Tribe's attorney notes that Court has "not advised [parent] whether he has a constitutional right to oppose the petition for temporary custody in this hearing nor have you provided him with his advice of his rights under the Indian Child Welfare Act," and that "were he and the Tribe provided with an opportunity to contest the facts as they've been set forth, he would testify, and the evidence would show, that contrary to the affirmation made by the State here, there was no altercation at his house"), and A10-1119 at 6 (Judge Thorstenson instructs parent "I don't want you to say anything with regard to the allegations").

RESPONSE: Disputed.  The parents or family members regularly have an opportunity to be heard.  Beauchamp Decl. Ex. 1, Case Nos. A10-50, 6:18 (Judge Davis asking the parents if they have any questions); A10-270, 5:3 (Judge Davis asking the parents if they have any questions); A10-358, 7:14 (Judge Davis asking the parents if they have any questions before appointing her an attorney); A10-773, 4:16 (Judge Davis asking the parents if they have any questions); A10-901, 5:7-8 (Judge Davis asking the parents if they have any questions); A10-955, 4:8 (Judge Davis allowing a grandparent to discuss the emergency placement); A10-1119, 6:19-22 (Judge Thorstenson allowing parent to make a statement regarding the allegations).

27. From January 2010 to the present, it has been the prevailing practice of Judge Davis and the other Seventh Circuit judges, in conjunction with the State), to deprive parents of

legal and physical custody of Indian children for up to 60 days in temporary custody hearings without allowing the parents to exercise their legal right to contest the State's Petition for Temporary Custody during the 48-hour temporary custody hearing ("48-hour hearing"), pursuant to the Due Process Clause of the Fourteenth Amendment of the United States Constitution and 25 U.S.C. § 1922 of the Indian Child Welfare Act ("ICWA"). *See generally* Transcripts of 48-Hour Hearings before Judge Davis, Beauchamp Decl. Ex. 1. *See also* Beauchamp Decl. Ex. 3, Def. Davis' Answers to Pls.' First Set of Reqs. for Admissions ("Davis RFA") No. 18 (admitting that in the 48-hour hearings over which he presided in 2010, Judge Davis normally scheduled the next hearing for approximately 60 days later).

RESPONSE: Disputed.  This is argument, not a statement of fact. Ninety-nine percent of parents attend the 48-hour hearing without legal counsel.  Parents are not prohibited from contesting the State's petition for temporary custody by Judge Davis.  Beauchamp Decl. Ex. 1, Case Nos. A10-50, 6:18 (Judge Davis asking the parents if they have any questions); A10-270, 5:3 (Judge Davis asking the parents if they have any questions); A10-358, 7:14 (Judge Davis asking the parents if they have any questions before appointing her an attorney); A10-773, 4:16 (Judge Davis asking the parents if they have any questions); A10-901, 5:7-8 (Judge Davis asking the parents if they have any questions); A10-955, 4:8 (Judge Davis allowing a grandparent to discuss the emergency placement); A10-1119, 6:19-22 (Judge Thorstenson allowing parent to make a statement regarding the allegations). However, without an attorney to offer evidence, cross examine witnesses, or directly examine the testimony of the parents, there is an unfair risk of

prejudice to the parents.  If the parents attorney requests a hearing, that can be held. Morris Aff. Ex. 27, A14-456.

28. From January 2010 to the present, in not one of the more than 120 transcribed hearings did Judge Davis or any other Seventh Circuit judge ever provide an Indian parent with an opportunity to hear and confront the State's evidence and cross-examine the State's witnesses during the 48-hour hearing. *See generally* Transcripts of 48-Hour Hearings before Judge Davis, Beauchamp Decl. Ex. 1. *See also* Beauchamp Decl. Ex. 3, Davis RFA 14 (admitting that in the 48-hour hearings over which he presided in 2010, Judge Davis normally did not specifically ask the parents if they wanted the opportunity to cross-examine the person who signed the ICWA affidavit).

RESPONSE: Disputed.  All parents are afforded an opportunity to be heard. See generally Beauchamp Decl. Ex. 1.  Parents also receive the written ICWA affidavit of the DSS specialist during the 48-hour hearing. Morris Aff. Exs. 1 and 23.  It is undisputed that Judge Davis did not specifically ask parents if they wanted the opportunity to cross examine the affiant of the ICWA affidavit.

*D. Defendants Have Failed to Provide Plaintiffs with Meaningful Access to Counsel*

29. From January 2010 to the present, in not one of the more than 120 transcribed hearings did Judge Davis or any other Seventh Circuit judge ever advise an Indian parent that they have a right to appointed counsel to represent them at the 48-hour hearing if they are indigent, or that they may request a brief continuance of the 48-hour hearing so that they may retain counsel. *See* Beauchamp Decl. Ex. 4, Davis Am. Interrog. No. 8 ("At the 48-hour hearing, parents and children . . . are almost always unrepresented at this stage."); *id.* No. 12 ("At this initial stage, it is functionally impossible for the parents or the

18

children to have access to informed counsel."). *See generally* Beauchamp Decl. Ex. 1,

Transcripts of 48-Hour Hearings before Judge Davis.

RESPONSE: Undisputed. However, in case number A10-404, Judge Davis advises the

parents that if they are hiring a lawyer, he would grant "a reasonable continuance for you

to have time to talk with an attorney and appear back in court." Beauchamp Decl. Ex. 1,

Case No. A10-404, at 4:5-9.

30. From January 2010 to the present, in not one of the more than 120 transcribed hearings

did Judge Davis or any other Seventh Circuit judge ever in fact provide an Indian parent

with an opportunity to be represented by appointed counsel at the 48-hour hearing if the

parents were indigent, nor did they ever grant a request for a continuance of the 48-hour

hearing so that they might retain counsel. *See generally* Transcripts of 48-Hour Hearings

before Judge Davis, Beauchamp Decl. Ex. 1. This practice has effectively ensured that all

Indian parents appear *pro se* at the 48-hour custody hearings. *See* Beauchamp Decl. Ex.

4, Davis Am. Interrog. No. 12.

RESPONSE: Disputed, to the extent that it is not the "practice" of Defendants to ensure

that all Indian parents appear *pro se* at 48-hour hearings. Beauchamp Decl. Ex. 1.

Counsel is appointed for indigent parents at the 48-hour hearing. This is the first

opportunity the state court judge has to appoint an attorney for Indigent parents.

31. Of the more than 120 transcribed temporary custody hearings reviewed by Plaintiffs'

counsel, in only one was a parent represented by counsel, Mr. Pat Duffy, who happened

to arrive at the hearing with the parent. *See* Beauchamp Decl. Ex. 1, Case No. A12-302.

RESPONSE: Undisputed.

32. From January 2010 to the present, every time Judge Davis and the other judges on the Seventh Circuit have agreed during a 48-hour hearing to appoint counsel for Indian parents, the judges have delayed appointment of counsel until after the hearing's conclusion and the granting of the Temporary Custody Order. *See, e.g.*, Beauchamp Decl. Ex. 1, Case Nos. A12-648 at 6-7 (following a mother's request to meet with a public defender before deciding how to precede at 48-hour hearing, Judge Davis instructs her to "fill out an application [to] determine your eligibility" after the hearing), A13-298 at 11 (Judge Pfeifle instructs parents to "fill out a form" requesting court-appointed counsel after the hearing and submit the request "between now and the time of our next hearing."), A12-867 at 14 (Judge Thorstenson rejects request by Tribe's attorney "to briefly continue this hearing for perhaps no more than a day so that [the father] can consult with counsel, come back here and present a meaningful answer to the accusations that have been made against him"), and A10-1238 at 3-4 (Judge Eklund tells to a parent who "wanted to work with the Dakota Plains [attorneys]," "Okay. That can be appointed later.").

RESPONSE: Undisputed, but misleading. Counsel is appointed at the hearing. If the parents' attorney seeks a rehearing, that can be held. Morris Aff. Ex. 27, A14-456.

E. *Judge Davis Has Failed to Base His Rulings on Evidence Adduced in the 48-Hour Hearing*

33. From January 2010 to the present, it has been the prevailing practice of the defendants to act together to deprive Indian parents of custody of their child(ren) in 48-hour proceedings without advising parents that the State has any burden of proof in the hearing or that the court will order return of custody to the parents if the State fails to meet that burden of proof. *See generally* Beauchamp Decl. Ex. 1, Transcripts of 48-Hour Hearings

20

before Judge Davis.

RESPONSE: Disputed. The judges regularly advise the parents that the court considers the best interests of the child in granting or denying the State's petition. *See generally* Beauchamp Decl. Ex. 1.

34. From January 2010 to the present, in not one of the more than 120 transcribed hearings did Judge Davis or any other Seventh Circuit judge ever advise an Indian parent that the State had the burden of proof in the hearing, or that the law would obligate the court to order return custody of the child(ren) to the parent(s) if the State failed to meet that burden of proof. *See generally* Ex. 1, Transcripts of 48-Hour Hearings before Judge Davis. *See also* Beauchamp Decl. Ex. 3, Davis Am. RFA No. 19 (admitting "that an active efforts 'probable cause' finding is required for the temporary custody order, and that if an order is executed this 'probable cause' finding is made").

RESPONSE: Disputed.  The burden applied is the best interests of the child.  That standard is relayed to the parents in most 48-hour hearings.  Beauchamp Decl. and Morris Aff. Ex. 27, Case No. A10-253, A10-270, A10-304, A10-306, A10-487, A10-1007, A10-1064, A10-1116, A10-1119, A10-1320, A12-36, A12-168, A12-302, A12-375, A12-468, A12-565, A12-571, A12-698, A12-712, A12-749, A12-805, A12-867, A12-1152, A13-20, A13-30, A13-49, A13-53, A13-609, A13-665, A13-677, A13-697, A13-698, A13-731, A13-738, A13-805, A13-806, A14-47, A14-103, A14-114, A14-144, A14-145, A14-304, A14-311, A14-527.

35. From January 2010 to the present, in not one of the more than 120 transcribed hearings did Judge Davis or any other Seventh Circuit judge ever advise an Indian parent that the State had the burden at the hearing of proving that returning custody of the child(ren) to

the parent(s) would be likely to result in serious emotional or physical harm to the child(ren). *See generally* Beauchamp Decl. Ex. 1, Transcripts of 48-Hour Hearings before Judge Davis.

RESPONSE: Disputed.  The burden of proof is probable cause based on the best interests of the child.  Beauchamp Decl. Ex. 2.  The trial court must also find to continue emergency custody that "returning custody of the child(ren) to the parent(s) would be likely to result in serious emotional or physical harm to the child(ren)."  However, this finding must be made in the best interest of the child, and at the 48-hour hearing, only by the probable cause standard of proof.

36. From January 2010 to the present, in not one of the more than 120 transcribed hearings did Judge Davis or any other Seventh Circuit judge require the State to present sworn testimony from a live witness. *See generally* Beauchamp Decl. Ex. 1, Transcripts of 48-Hour Hearings before Judge Davis. *See also* Beauchamp Decl. Ex. 3, Davis RFA No. 13.

RESPONSE: Undisputed.

37. From January 2010 to the present, in not one of the more than 120 transcribed hearings did Judge Davis or any other Seventh Circuit judge receive or demand any documentary evidence as an exhibit from the State apart from the ICWA Affidavit, which, until only very recently, has been provided to Indian parents.

RESPONSE: Disputed. The ICWA affidavit has been provided to all parents who attend 48-hour hearings as a matter of written policy since June of 2012. Morris Aff. Exs. 1 and 23.  Judges receive this documentary evidence prior to the 48-hour hearing, but it is not marked as an exhibit. Morris Aff. Ex. 26.

38. From January 2010 to the present, in not one of the more than 120 transcribed hearings

did Judge Davis or any other Seventh Circuit judge make statements on the record

detailing the evidence it relied upon as a basis for the findings of fact reflected in the

Temporary Custody Order. *See generally* Ex. 1, Transcripts of 48-Hour Hearings before

Judge Davis. *See also, e.g.*, Beauchamp Decl. Ex. 1, Case Nos. A10-1191 (In response to

father's request, "I would just like to know what I did wrong that my son is not with me,"

Judge Davis replies "I honestly can't tell you at this point because nothing has been

checked out and verified to come to me yet."), A11-497 at 4-5 (Judge Davis refusing to

address mother's questions "What are the issues?" and "why am I getting punished for

what his dad did?"), and A12-219 at 8 (Judge Davis denying motion by Tribe's attorney

"asking the court to make findings of fact and conclusions of law under [South Dakota

codified law] 267(a)13").

RESPONSE: Undisputed that the facts were not "detailed" on the record.

39. From January 2010 to the present, following 48-hour hearings in which no witness

testified and no documents were offered or received as evidence, it has been the standard

practice of Judge Davis and the other judges of the Seventh Circuit to make determinative

findings of fact that: (a) DSS is making active efforts to avoid removing children from

their family; (b) foster care placement is the least restrictive available alternative; and (c)

that returning custody to the parents would likely result in serious emotional or physical

harm to the children. *See generally* Beauchamp Decl. Ex. 2, Temporary Custody Orders

signed by Judge Davis.

RESPONSE: Disputed that "no documents were offered or received as evidence." The

ICWA affidavit, and if available, the police report, provide evidence of (1) DSS's active

efforts to avoid removing children from their family; (b) why foster placement, or out-of-

23

home placement, is the least restrictive alternative available under the circumstances; and (c) why returning custody to the parents would likely result in serious emotional or physical harm to the child(ren).

40. From January 2010 to the present, following 48-hour hearings in which no witness testified and no documents were offered or received as evidence, it has been the standard practice of Judge Davis and the other judges of the Seventh Circuit to utilize a standardized Temporary Custody Order form that functions as a checklist for the above-described findings of fact. It is the prevailing practice of Judge Davis and the other judges to place checkmarks next to findings of fact without providing any explanation regarding the basis for their findings. *See generally* Beauchamp Decl. Ex. 2, Temporary Custody Orders signed by Judge Davis.

RESPONSE: Undisputed that no documents are offered as "evidence" in accordance the traditional rules of evidence. *See Cheyenne River Sioux Tribe v. Davis,* 2012 SD 69, 833 N.W.2d 62. Disputed as to the characterization as a "standard practice" of Judge Davis. Otherwise, undisputed.

41. From January 2010 to the present, during 48-hour hearings in which no witness testified and no documents were offered or received as evidence, it has been the standard practice of Judge Davis and the other judges of the Seventh Circuit to sign Temporary Custody Orders detailing determinative findings of fact that have never been described on the record or detailed to the Indian parent(s) present for the 48-hour hearing. *See generally* Beauchamp Decl. Ex. 1, Transcripts of 48-Hour Hearings before Judge Davis.

RESPONSE:   Undisputed that no documents are offered as "evidence" in accordance the traditional rules of evidence. *See Cheyenne River Sioux Tribe v. Davis,* 2012 SD 69, 833

24

N.W.2d 62. Disputed as to the characterization as a "standard practice" of Judge Davis.

Otherwise, undisputed.

42. From January 2010 to the present, during 48-hour hearings in which no witness testified and no documents were offered or received as evidence, it has been the standard practice of Judge Davis and the other judges of the Seventh Circuit to sign Temporary Custody Orders detailing determinative findings of fact that have never been described on the record or detailed to the Indian parent(s) present for the 48-hour hearing. *See generally* Beauchamp Decl. Ex. 1, Transcripts of 48-Hour Hearings before Judge Davis.

RESPONSE:   Undisputed that no documents are offered as "evidence" in accordance the traditional rules of evidence. *See Cheyenne River Sioux Tribe v. Davis,* 2012 SD 69, 833 N.W.2d 62.  Disputed as to the characterization as a "standard practice" of Judge Davis.

Otherwise, undisputed.

43. At the conclusion of each and every 48-hour hearing involving Indian children presided over by him since 2010, Judge Davis has: (a) entered a temporary custody order finding that "active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the break-up of the Indian family and that these efforts have proven unsuccessful," and (b) entered a temporary custody order finding that "continued custody of the child(ren) by the parents or Indian custody is likely to result in serious emotional or physical damage to the child(ren)." *See* Beauchamp Decl. Ex. 4, Davis Interrog. No. 14.

RESPONSE: Undisputed.

44. From January 2010 to the present, all of the orders issued by Judge Davis and his

colleagues granting custody to DSS at the conclusion of 48-hour hearings have contained

the following provision:

> The Department of Social Services is hereby *authorized* to return
> full and legal custody of the minor child(ren) to the parent(s),
> guardian or custodian (without further court hearing) at any time
> during the custody period granted by this Court, if the Department
> of Social Services concludes that no further child protection issues
> remain and that temporary custody of the child(ren) is no longer
> necessary.

*See, e.g.*, Beauchamp Decl. Ex. 2, Temporary Custody Orders (emphasis added). Thus,

while DSS is authorized to return custody of children to their parents when the

emergency has terminated, DSS is not ordered or instructed to do so. *See also*

Beauchamp Decl. Ex. 1, Case No. A10-955 at 3-4 (Judge Davis responding to mother's

inquiry "Does that mean they keep my kid for 60 days?" by saying "No. It *authorizes* that

60-day period and they're *authorized* to return him at any time within that if it looks like

it's appropriate." (emphasis added)).

RESPONSE: Undisputed.

45. Judge Davis contends that the temporary custody orders he signs at the conclusion of 48-

hour hearings "always, or almost always, include a specific instruction to the state official

to return the child(ren) to the parent or guardian once no further imminent child

protection issues remain and that temporary custody of the child(ren) is no longer

necessary." Beauchamp Decl. Ex. 3, Davis RFA No. 17. However, Plaintiffs have

reviewed dozens of temporary custody orders from Judge Davis and other judges in the

Seventh Judicial Circuit, in none of which did the presiding judge instruct DSS to return

the children. Rather, each order merely "authorized" DSS to return the children. *See generally* Beauchamp Decl. Ex. 2, Temporary Custody Orders signed by Judge Davis.

RESPONSE: Undisputed.

46. Likewise, the other Seventh Circuit judges also systematically fail to instruct DSS to return children to their parent(s) once the need for DSS custody of the children ceases. *See, e.g.*, Beauchamp Decl. Ex. 1, Case No. A13-845 at 5-6 (Judge Robert A. Mandel holding "I'm going to order that the Department of Social Services is authorized to return full legal and physical custody of the minor children to the parents, guardian, or custodian without further court hearing if it's determined – that is, if they determine or conclude that there's no further imminent child protection issues and temporary custody is no longer necessary."), and at 7 (Deputy State's Attorney Roxanne Erickson asking Judge Mandel to order "that DSS have *the discretion* to return the children to the parents if they're out of custody and it appears that the safety concerns have been alleviated," to which Judge Mandel replies, "Okay, we will do that." (emphasis added).

RESPONSE: Undisputed.

47. The printed form that Judge Davis and the other Seventh Circuit judges regularly use to enter a temporary custody order at the conclusion of a 48-hour hearing does not direct, order, or instruct DSS to return an Indian child to the home at any time; rather, this form only authorizes DSS to exercise that discretion. *See generally* Beauchamp Decl. Ex. 2, Temporary Custody Orders signed by Judge Davis.

RESPONSE: Disputed.  In order for DSS to determine if no imminent child custody issues remain, justifying returning the child(ren) to the parents, this inquiry must be made.  Beauchamp Decl. Ex. 4, Davis Am. Ans. Inter. No. 9.

Dated: September 5, 2014

**MORRIS LAW FIRM, Prof. LLC**
*Attorneys for LuAnn Van Hunnik and Lynne A.*
*Valenti*

By :    <u>*/s/ Robert L. Morris*</u>
 Robert L. Morris
117 5th Avenue, PO Box 370
Belle Fourche, SD 57717-0370
(605) 723-7777
bobmorris@westriverlaw.com

*Special Assistant Attorney General*

Dated: September 5, 2014

Nathan R. Oviatt
Special Assistant Attorney General
GOODSELL QUINN, LLP
246 Founders Park Drive, Suite 201
P.O. Box 9249
Rapid City, SD 57709-9249
Office:  605-343-3000
Fax:  605-343-3251

Dated: September 5, 2014

**GUNDERSON, PALMER, NELSON & ASHMORE, LLP**
*Attorneys for Mark Vargo*

By: _____
J. Crisman Palmer
P.O. Box 8045
Rapid City, SD 57709-8045
(605) 342-1078
cpalmer@gpnalaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 5th day of September, 2014, I electronically filed **DEFENDANTS' STATEMENT OF MATERIAL FACTS IN RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE: DUE PROCESS VIOLATIONS** with the Clerk of the Court for the United States District Court for the Western Division by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Dated this 5th day of September, 2014.

BY: /s/ *Robert L. Morris*_____
(Electronically Filed)

31