UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| OGLALA SIOUX TRIBE and ROSEBUD SIOUX TRIBE, as *parens patriae*, to protect the rights of their tribal members; MADONNA PAPPAN, and LISA YOUNG, individually and on behalf of all other persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LUANN VAN HUNNIK; MARK VARGO; HON. JEFF DAVIS; and LYNNE A. VALENTI, in their official capacities,<br><br>Defendants. | CIV. 13-5020-JLV<br><br>ORDER DENYING THE SDDSS DEFENDANTS' MOTION TO COMPEL |

**INTRODUCTION**

The South Dakota Department of Social Services ("SDDSS Defendants")[1] filed a motion to compel plaintiff Oglala Sioux Tribe to produce certain documents. (Docket 156). Plaintiffs oppose the SDDSS Defendants' motion. (Docket 178). For the reasons stated below, the SDDSS Defendants' motion is denied.

**ANALYSIS**

The SDDSS Defendants seek documents relating to children's cases which were transferred under the Indian Child Welfare Act ("ICWA) from the Seventh Judicial Circuit Court, Pennington County, South Dakota, to the jurisdiction of

---

[1]Ms. Van Hunnik retired after 30 plus years with the South Dakota Department of Social Services. (Docket 209 at p. 1 n.1). Ms. Lisa Fleming has been appointed as the Regional Manager for Region 1. Id. A motion for substitution of party pursuant to Fed. R. Civ. P. 25(d) has not been filed due to a number of pending motions. Id.

the Oglala Sioux Tribal Court. (Docket 156 at pp. 1-2). The specific requests for production of documents are as follows:

> Request for Production No. 1: The Oglala Sioux Tribe Court, Juvenile Court file, (to include but not limited to all motions, petitions, and accompanying documents, orders, and all such materials contained in the Juvenile Court file), in the Oglala Sioux Tribal Court, Oglala Sioux Tribe, Pine Ridge Indian Reservation, associated with each of the following Seventh Judicial Circuit Court, Pennington County, files:
>
> > A10-270; A10-306; Al0-460; Al0-487; Al0-587; Al0-649; Al0-783; Al0-1007; Al0-1012; Al0-1017; Al0-1035; Al0-1119; Al0-1170; Al0-1320; A11-86; A11-147; A11-152; A11-161; A11-321; A11-359; A11-441; A11-650; A11-660; A11-674; A11-681; A11-744; A11-772; A11-869; A11-893; A11-1036; A11-1060; A11-1103; A11-1119; A12-191; A12-219; Al2-394 Al2-518; A12-659; Al2-698; Al2-712; A12-746; A12-749; A12-791; Al2-839; A12-1022; Al3-20; Al3-30; Al3-53; Al3-104; Al3-l79; Al3-246; Al3-365; Al3-432; Al3-560; A13-639; Al3-665; Al3-697; Al3-698; Al3-738; A14-60; A14-444.
>
> in which the Oglala Sioux Tribe on behalf of The Oglala Nation Tiospaye Resource and Advocacy Center (ONTRAC) or other movant, requested transfer from the jurisdiction of the Seventh Judicial Circuit Court, Pennington County, to the Oglala Sioux Tribe.
>
> Request for Production No. 2: The Oglala Sioux Tribe on behalf of The Oglala Nation Tiospaye Resource and Advocacy Center (ONTRAC) Program file of each parent(s) and/or child(ren), (including all court documents, case worker reports, case worker notes, narrative reports, risk assessment reports, visitation records, correspondence, interviews, and home studies) associated with each of the following Seventh Judicial Circuit Court, Pennington County, files:
>
> > A10-270; A10-306; Al0-460; Al0-487; Al0-587; Al0-649; Al0-783; Al0-1007; Al0-1012; Al0-1017; Al0-1035; Al0-1119; Al0-1170; Al0-1320; A11-86; A11-147; A11-152; A11-161; A11-321; A11-359; A11-441; A11-650; A11-660; A11-674; A11-681; A11-744;

>> A11-772; A11-869; A11-893; A11-1036; A11-1060; A11-1103; A11-1119; A12-191; A12-219; Al2-394 Al2-518; A12-659; Al2-698; Al2-712; A12-746; A12-749; A12-791; Al2-839; A12-1022; Al3-20; Al3-30; Al3-53; Al3-104; Al3-l79; Al3-246; Al3-365; Al3-432; Al3-560; A13-639; Al3-665; Al3-697; Al3-698; Al3-738; A14-60; A14-444.
>
> in which the Oglala Nation Tiospaye Resource and Advocacy Center (ONTRAC) or other movant, requested transfer from the jurisdiction of the Seventh Judicial Circuit Court, Pennington County, to the Oglala Sioux Tribe.

(Docket 157-1 at pp. 2-4) (bold omitted). The SDDSS Defendants seek access to all the file materials of these sixty-one specifically identified cases. (Docket 156 at p. 2).

The SDDSS Defendants argue this information is necessary to "confirm, support, prove, and corroborate that from the time the children came into the custody of [the SDDSS Defendants] . . . until the children were transferred to the custody of the Oglala Sioux Tribal Court . . . that the children were subject to imminent risk/impending danger and that custody of the children with their parents was not in the best interests of the children." Id. at p. 7.

Plaintiffs oppose the motion. (Docket 178). Plaintiffs argue the motion "is based on an assumption of fact that is false." Id. at p. 2. Plaintiffs assert that "[a]s attested to by Tribal Court Judge Sheena Mousseau, the tribal court is entirely unaware of any of the facts of any individual case when it signs the conditional order accepting jurisdiction in any particular case. The tribal court's findings, including the finding of likelihood of harm, is simply the tribal court adopting and giving full faith and credit to the findings already made by the

3

state court when it signed the original temporary custody order." Id. at p. 2. Plaintiffs claim "[t]here is no independent evaluation of the facts and no evidence presented to the tribal court when its [sic] signs the order accepting jurisdiction." Id. (referencing Docket 178-1).

The affidavit of Oglala Sioux Tribal Court ("OST") Judge Sheena Mousseau is the source of plaintiffs' argument. (Docket 178-1). OST Judge Mousseau swore the "tribal court orders are conditional orders" representing that when the State of South Dakota "agrees to transfer jurisdiction of the case to tribal court, pursuant to ICWA, the Tribal Court will accept jurisdiction of the case." Id. ¶ 1. OST Judge Mousseau stated the findings of fact contained in her conditional orders "are not based on any review of facts submitted to the Tribal Court[]," but rather rely on the findings of fact made in the state court orders, "including findings that the children would suffer serious harm if returned to the custody of their parent(s) and that return of custody would not be in the best interest of the child." Id. ¶¶ 3-4. OST Judge Mousseau confirmed "[t]here is no independent inquiry into the facts or history of any particular case by the Tribal Court." Id. ¶ 4.

Because the tribal court did not take any evidence until after jurisdiction was assumed by the tribal court, plaintiffs argue the tribal court and ONTRAC records are not relevant "to the question of whether DSS has properly trained its personnel on the requirements of Section 1922, nor would those . . . tribal court case files contain any information that would be likely lead to [sic] information that is relevant to the failure to train issue." (Docket 178 at p. 3). Plaintiffs

4

further argue that "[w]hat happens in the tribal court after those cases are transferred is of no relevance . . . . to the [training] issue [because] ICWA does not apply [to] the tribal courts and DSS has no further involvement in the cases after it transfers." Id.

The SDDSS Defendants counter that under the Oglala Sioux Tribe Child and Family Code ("OST Family Code") certain procedures must be followed before the tribal court can assume jurisdiction. (Docket 188 at p. 5). SDDSS Defendants assert the OST Family Code requires the following steps:

1. Once ONTRAC receives notice of state court custody proceedings under ICWA, ONTRAC is required to notify the [Lakota Oyate Wakanyeja Owicakiyapi ("LOWO")] . . . and the [Tribal Court]. Id. at p. 5 (OST Family Code citation omitted).

2. LOWO is then mandated to perform an investigation and file a written report with ONTRAC and the Tribal Court within five (5) days . . . . In that report LOWO is mandated to make written recommendations to ONTRAC regarding transfer from or intervention in state court. Id. at pp. 5-6 (OST Family Code citation omitted).

3. If [a] petition to transfer is . . . appropriate, then ONTRAC is to file the petition . . . within five (5) days . . . . Id. at p. 6 (OST Family Code citation omitted).

The SDDSS Defendants argue the OST Family Code then requires certain procedures to occur, "including ONTRAC taking physical and legal custody, and placing the children in the care of a suitable foster or tiyospaye[2] home pending further court action." Id. Once the OST Attorney General files a petition, the SDDSS Defendants argue there must be a "hearing . . . held in accordance with the OST Code." Id.

---

[2]"Tiyospaye" or "tiospaye" refers in the Lakota language to the extended family of the child.

The SDDSS Defendants assert that in compliance with the OST Family Code requirements the following relevant records should exist:

1. LOWO written reports based upon investigations. . . .

2. LOWO written recommendations regarding transfers or intervention. . . .

3. Child in Need of Care petition[s] filed by the [OST] Attorney General. . . .

4. Records or transcripts of hearings held in accordance with the OST Code post transfer. . . .

Id. (OST Family Code citations omitted). The defendants argue these records are relevant because the investigative reports "may corroborate the determination that children were subject to impending/imminent danger . . . ." Id. at p. 8. The defendants also argue the absence of such investigative reports would be relevant to show "there . . . exist[s] a lack of factual support to allege that DSS employees are not properly trained and that others are deliberately indifferent in the training." Id. at p. 9.

"Rule 26(b) of the Federal Rules of Civil Procedure is widely recognized as a discovery rule which is liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence." Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992). "While the standard of relevance in the context of discovery is broader than in the context of admissibility (Rule 26(b)) clearly states that inadmissibility is no grounds for objection to discovery. . . ." Id. (referencing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 350-51 (1978)). A party seeking discovery

6

is merely required to make a threshold showing of relevance, which is more relaxed than the showing required for relevance in the context of admissibility. Id. at 351. The party resisting production of discovery bears the burden of establishing lack of relevancy or that complying with the request would be unduly burdensome. See St. Paul Reinsurance Co. v. Commercial Financial Corp., 198 F.R.D. 508, 511 (N.D. Iowa 2000).

ICWA governs child custody proceedings in state court and the assertion of tribal court jurisdiction over a child. See 25 U.S.C. § 1901 *et seq.* ICWA does not govern how a tribe deals with an Indian child once tribal jurisdiction is asserted and transfer from state jurisdiction occurs. See id. at § 1911. The OST Family Code provision for transfer of an Indian child from a state court under ICWA is not relevant to the plaintiffs' failure to train claim against the SDDSS Defendants. Whether the OST Tribal Court followed the OST Family Code is likewise not relevant to the plaintiffs' failure to train claim which is the basis for the SDDSS Defendants' motion to compel. Resolution of whether the SDDSS Defendants properly trained their staff and complied with federal law must be based on the evidence which existed during the time each child's case was in state court. Looking to the conduct of the tribal court and its agencies after-the-fact will not lead to the discovery of evidence relevant to plaintiffs' failure to train claim.

Plaintiffs have carried their burden that the records sought are not relevant to the failure to train claim before the court. For this reason, the SDDSS Defendants' motion to compel is denied.

## ORDER

Based on the above analysis, it is

ORDERED that the SDDSS Defendants' motion to compel (Docket 156) is denied.

Dated February 19, 2016.

BY THE COURT:

_____
JEFFREY L. VIKEN
CHIEF JUDGE
