UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| OGLALA SIOUX TRIBE and ROSEBUD SIOUX TRIBE, as *parens patriae*, to protect the rights of their tribal members; MADONNA PAPPAN, and LISA YOUNG, individually and on behalf of all other persons similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> LUANN VAN HUNNIK; MARK VARGO; HON. JEFF DAVIS; and LYNNE A. VALENTI, in their official capacities, <br><br> Defendants. | CIV. 13-5020-JLV <br><br><br> SEALED ORDER |

**INTRODUCTION**

Plaintiffs filed a motion under seal seeking sanctions against Defendant Davis, a Circuit Court Judge of the Seventh Judicial Circuit, Pennington County, South Dakota.[1]   (Docket 114).   The court permitted written discovery and depositions of Judge Davis, former Seventh Circuit Judge Mary Thorstenson,[2]

---

[1]The court permitted the motion for sanctions to be filed under seal. (Docket 112).   All pleadings and documents related to the motion for sanctions are filed under seal.   (Docket 147).

[2]Ms. Thorstenson was a Circuit Court Judge of the Seventh Judicial Circuit from December 4, 2009, through January 4, 2013.   (Docket 196 ¶ 2). In deference to the position she held at the time material to the issues before the court, all further references will be to "Judge Thorstenson."

Attorney Nathan Oviatt,[3] Attorney Marcia Whiting, and another law clerk[4] on matters relevant to the motion for sanctions.   (Dockets 147 & 151).

During the course of discovery the named deponents, other than Attorney Whiting, filed motions for protective orders.   (Dockets 179, 185, 192 & 195). Pending resolution of the motions, the court stayed all discovery on the motion for sanctions.   (Docket 201).   For the reasons stated below, the motions for protective orders are granted in part and denied in part.

## FACTUAL BACKGROUND

Plaintiffs' motion for sanctions and the motions for protective orders arise from the following facts.   On March 21, 2013, plaintiffs filed a complaint seeking declaratory and injunctive relief.   (Docket 1).   Attached to the complaint as Exhibit 6 is a memorandum opinion dated July 3, 2012, issued by Judge Thorstenson ("Judge Thorstenson's memorandum opinion").   (Docket 1-1). Judge Thorstenson's memorandum opinion was analyzed in the complaint. (Docket 1 ¶ 96).

During the course of discovery prior to plaintiffs' motions for partial summary judgment, plaintiffs served requests for production of documents ("RFPs") on Judge Davis.   RFP No. 2 and Judge Davis' response were:

---

[3]Nathan Oviatt was a law clerk for the judges of the Seventh Judicial Circuit from August 2011 to August 2012.   (Docket 117-3 ¶ 1).

[4]The law clerk was later identified as Jacob Quasney.   (Docket 192).   Mr. Quasney ended his term as a Seventh Circuit law clerk in August 2012.   (Docket 206 at p. 4).

2

Request for Production No. 2: Produce all documents of which you are aware issued by anyone other than you since you became the Presiding Judge of the Seventh Judicial Circuit that in any manner discusses, recommends, or prescribes procedures with respect to 48-hour hearings involving Indian children.

First Supplemental Response:   Judge Davis is aware of privileged documents identified in Judge Davis's attached Privilege Log (bates numbers GQ3791 to GQ3798), which may be responsive to this request.   Discovery in this case is ongoing, and Judge Davis will supplement this Request if further information becomes available.

(Docket 98-3 at p. 1) (bold omitted).   The response to the RFP was signed by Judge Davis' attorney, Nathan Oviatt.   Id. at p. 2.   Judge Davis' privilege log was attached to the response.   Id. at p. 4.

Plaintiffs' motion for sanctions asserts that a memorandum dated April 27, 2012, written by Nathan Oviatt and addressed to "Seventh Circuit Judges" entitled "Indian Children Welfare Act[5] and Temporary Custody Proceedings" ("Oviatt's Memorandum to Judges") (Docket 114-3) and Judge Thorstenson's memorandum opinion should have been produced by Judge Davis in his response to RFP No. 2.[6]   (Docket 114 ¶ 6).   On April 27, 2012, Mr. Oviatt was a law clerk to the judges of the Seventh Judicial Circuit.   Id. ¶ 3.

Plaintiffs' co-counsel, Dana Hanna, is one of the addressees who received Judge Thorstenson's memorandum opinion in 2012.   (Docket 1-1).   By

_____

[5]The Indian Child Welfare Act, 25 U.S.C. 1901 et seq. ("ICWA").

[6]Neither of these documents is identified on Judge Davis' privilege log. (Docket 98-3 at p. 4).

3

affidavit, Mr. Hanna acknowledges he received Oviatt's Memorandum to Judges in December 2012[7] from Attorney Whiting.   (Docket 114-1¶ 4).   Attorney Whiting indicated to Attorney Hanna that Oviatt's Memorandum to Judges was received from Judge Davis, who authorized Attorney Whiting to distribute the document to the Board of Directors of Dakota Plains Legal Services.   Id. ¶ 6.

By sworn affidavit, Judge Davis states he has "no specific recollection of seeing [Oviatt's Memorandum to Judges] prior to [the filing of the plaintiffs' motion for sanctions]."   (Docket 117-2 ¶ 2).   Judge Davis recalls a meeting with Attorney Whiting concerning ICWA procedures.   Id. ¶ 4.   During their meeting Judge Davis "gave her a manila file with documents within it addressing ICWA procedures," but he has "no specific recollection of which documents were given to Marcia Whiting."   Id.   Judge Davis "believe[s] [he] obtained those documents from the law-clerk's office, which would have kept notes and memoranda addressing ICWA procedures prepared by law-clerks for the other Seventh Circuit Judges."   Id.   Judge Davis states he "did not keep a copy of the documents given to Ms. Whiting."   Id.   His affidavit states he has "no copies of [Oviatt's Memorandum to Judges] in [his] files. . . . [and he has] no additional responsive documents in [his] files."   Id. ¶¶ 5 & 6.   Judge Davis "vehemently den[ies] withholding any documents intentionally."   Id. ¶ 7.

---

[7]Mr. Hanna's affidavit indicated "December 14, 2014."   (Docket 114-1 ¶ 4).   From subsequent submissions by the parties it appears the year of disclosure to Mr. Hanna was 2012.

Attorney Oviatt filed a sworn affidavit.   (Docket 117-3).   Mr. Oviatt states "[f]rom August of 2011 to August of 2012, [he] was a law clerk for the Seventh Judicial Circuit." Id. ¶ 1.   He "do[es] not recall drafting or ever seeing [Oviatt's Memorandum to Judges]." Id. ¶ 2.   He does recall drafting a document "nearly identical" to Oviatt's Memorandum to Judges, except the document was directed to "Judge Thorstenson" ("Oviatt's Memorandum to Judge Thorstenson").[8] Id.

In preparation for responding to plaintiffs' RFPs, Mr. Oviatt "requested all documents from the law clerk's computer which returned results for the search terms 'ICWA' or '48-hour hearing.' " Id. ¶ 3.   He indicates Oviatt's Memorandum to Judge Thorstenson "was included in the results; [Oviatt's Memorandum to Judges] was not." Id.   After plaintiffs' motion for sanctions was filed, Mr. Oviatt asked the South Dakota Unified Judicial System ("UJS") to determine why the initial search of the law clerk's computer did not disclose Oviatt's Memorandum to Judges. Id. ¶ 5.   Mr. Oviatt states, "UJS's technology personnel could not locate [Oviatt's Memorandum to Judges]." Id.   Because neither of Oviatt's Memorandums was identified by Judge Davis, Mr. Oviatt did not include those documents on Judge Davis' privilege log. Id.   Mr. Oviatt "vehemently den[ies] that [Oviatt's Memorandum to Judges] was deliberately

---

[8]During a telephone conference between plaintiffs' counsel and Roxanne Giedd, a former Assistant Attorney General for the State of South Dakota and former counsel for Judge Davis, Attorney Giedd disclosed that while Mr. Oviatt does not recall changing the "To" line of Oviatt's Memorandum to Judges for Oviatt's Memorandum to Judge Thorstenson, he assumes he is the individual who made the change.   (Docket 121-1 ¶ 8).

withheld." Id. ¶ 7.   As counsel for Judge Davis, Attorney Oviatt acknowledges Judge Thorstenson's memorandum opinion should have been referenced in Davis' response to RFP No. 2.   (Docket 99 at p. 4 n.1).

As part of the written discovery to the deponents, plaintiffs requested Judge Davis produce the following documents:

> RFP No. 1. Please produce [Oviatt's Memorandum to Judge Thorstenson] written by Nathan Oviatt identified in paragraph 3 of the Affidavit of Nathan R. Oviatt and all drafts of that memorandum which exist on the "law clerk's computer," as that term is used in Mr. Oviatt's affidavit.

> RFP No. 2. Please produce all documents on "the law clerk's computer" (as that term is used in Mr. Oviatt's affidavit) under the search terms "ICWA" or "48-hour hearing" authored in whole or in part by Jake Quasney and/or Nathan Oviatt.

> RFP No. 3. Please produce all correspondence between Judge Davis and Judge Thorstenson during the nine months prior to and including July 3, 2012 regarding (a) procedures to be used in 48-hour hearings, (b) whether ICWA applies to 48-hour hearings, and (c) meetings held between Judge Thorstenson and Dana Hanna regarding 48-hour hearings. (If any portions of these documents discuss the merits of a case pending before Judge Davis or Judge Thorstenson, that portion should be redacted but the remainder of the document must be produced.)

> RFP No. 4. Please produce all correspondence, including notes and memoranda, written by Nathan Oviatt and submitted to Judge Davis concerning what Mr. Oviatt observed of the conduct of, or statements of, Dana Hanna in 48-hour hearings conducted by Judge Thorstenson.

> RFP No. 5. Please produce the documents identified in Judge Davis's Privilege Log submitted in response to Request for Production No. 2 (GQ2810-40).

> RFP No. 6. Please produce all correspondence between Marcia Whiting and Judge Davis (or a law clerk working with Judge Davis) regarding ICWA procedures or to set up a meeting between Ms. Whiting and Judge Davis sent between January 1, 2012 and July 3, 2012.

(Docket 180-1 at pp. 2-3).   Plaintiffs issued a subpoena *duces tecum* directing Judge Davis to bring those same documents to his deposition as well as the following items:

> 1.   All correspondence that Judge Davis wrote to Dana Hanna at any time between November 2011 and June 2012 regarding Mr. Hanna's request to obtain copies of, or to examine, 48-hour hearing transcripts.
>
> 2.   All documents that Judge Davis read from Mr. Hanna that prompted the letters in the above paragraph, including all requests for copies of transcripts submitted by Mr. Hanna to Judge Eklund or to the clerk of court.

(Docket 185-1 at p. 2 ¶¶ 1 & 2).

The subpoena *duce tecum* directed Mr. Oviatt to bring to his deposition the following:

> All correspondence between him and Judge Davis and all correspondence between him and Judge Thorstenson written between July 1, 2011 and July 3, 2012 regarding (a) the extent to which the Indian Child Welfare Act might apply in 48-hour hearings, or (b) the procedures to be used in 48-hour hearings.

Id. at p. 3 ¶ 1.   The subpoena *duces tecum* directed Judge Thorstenson to bring to her deposition the following:

> 1.   Any and all memoranda or correspondence to Judge Thorstenson written by Nathan Oviatt, Jake Quasney, or Judge Jeff Davis, and all memoranda or correspondence from Judge Thorstenson to them, during the nine months prior to

7

and including July 3, 2012 regarding (a) procedures to be used in 48-hour hearings, (b) whether ICWA applies to 48-hour hearings, and (c) meetings held between Judge Thorstenson and Dana Hanna regarding 48-hour hearings. (If any portions of these documents discuss the merits of a case pending before Judge Davis or Judge Thorstenson, that portion should be redacted but the remainder of the document must be produced.)

2. The notes that Judge Thor[s]tenson took during her out-of-courtroom meetings with Dana Hanna between January 1, 2012 and May 30, 2012 concerning 48-hour hearings.

[3.] All correspondence, including notes and memoranda, written between Judges Davis and Thorstenson concerning the conduct of, or statements of, Dana Hanna in 48-hour hearings conducted by Judge Thorstenson.

Id. at pp. 4-5 ¶¶ 1-6[3] (bold omitted).

## MOTIONS FOR PROTECTIVE ORDERS

Because the deponents' motions for protective orders are interconnected and some of the items for which a protective order is sought are now conceded as discoverable, the court will highlight each of the deponents' positions before conducting an analysis of the motions.

### Judge Davis

In his reply brief, Judge Davis agrees to produce at his deposition Oviatt's Memorandum to Judge Thorstenson in response to RFP No. 1.   (Docket 203 at p. 3).   Judge Davis states he is not in possession of any correspondence described in RFPs Nos. 3 or 4.   Id. at pp. 6-7.   In the initial brief in support of his motion for protective order, Judge Davis makes no objection to RFP No. 6 to

the extent any correspondence with Attorney Whiting "do[es] not involve a specific case." (Docket 179 at p. 13). Judge Davis' motion for protective order focuses on the remaining unresolved requests for production of documents, RFPs Nos. 2 and 5.

Judge Davis seeks protection from the disclosure of documents requested in RFP No. 2 because production of those documents "may reveal Judge Davis's mental process, as well as disclose confidential or privileged communications." (Docket 179 at p. 6). He seeks protection from disclosure because exposure of "memoranda, drafts, correspondence, and notes written by law clerks and shared with any of the Seventh Judicial Circuit judges[] would violate the judicial privilege as such communications would have been made 'in the course of and related to their deliberative process.'" Id. at pp. 6-7 (citing In re Enforcement of a Subpoena, 972 N.E.2d 1022, 1033 (Mass. 2012) and referencing Matter of Certain Complaints Under Investigation by an Investigating Comm. of Judicial Council of Eleventh Circuit (Williams v. Mercer), 783 F.2d 1488, 1520 (11th Cir. 1986)) (bracketing omitted). Next, Judge Davis claims the documents sought are protected from disclosure by the attorney-client privilege. (Docket 179 at p. 9) (referencing Supreme Court Standard 503 and In re Bieter Co., 16 F.3d 929 (8th Cir. 1994). Finally, Judge Davis asserts the attorney work product privilege. Id. at pp. 10-11 (referencing Simon v. G.D. Searle & Co., 816 F.2d 397, 410 (8th Cir. 1987) and Baker v. General Motors, 209 F.3d 1051, 1054 (8th Cir. 2000)). He claims "[m]aterials prepared by a judge, or their staff at the

9

judge's instruction, in anticipation of *adjudicating* over a matter deserve the same degree of protection as materials prepared by attorneys in preparation for litigation." (Docket 203 at p. 5) (italics in original).

In addition to claiming the same privileges concerning RFP No. 5, Judge Davis asserts the materials contained in his privilege log are outside the scope of the motion for sanctions. (Docket 179 at p. 13). He argues in denying plaintiffs' previous motion to compel as moot, the court "implicitly ruled that many of these documents are irrelevant . . . ." Id. at p. 13 n.3.

Judge Davis asks that the court's protective order prohibit plaintiffs from posing questions "regarding communications made in the course of his judicial duties, including conversations he may have had with other judges." Id. at p. 14. Judge Davis believes "Plaintiffs intend to question [him] as to any conversations between [himself] and Judge Thorstenson regarding the areas covered by [RFP No. 3]." (Docket 203 at p. 6). He intends to assert judicial privilege and not answer those questions. (Docket 179 at p. 14).

**Nathan Oviatt**

As a former law clerk to the Seventh Circuit Judges and now attorney for Judge Davis, Mr. Oviatt says he has no documents in response to request number 1 or number 3 of the subpoena *duces tecum*. (Docket 185 at pp. 5 & 12). If plaintiffs' counsel intend to question him about correspondence or conversations with either Judge Davis or Judge Thorstenson, Mr. Oviatt believes those conversations are protected by "a judicial and/or confidential privilege."

Id. at p. 6 (referencing Williams, 783 F.2d at 1518-23 and Thomas v. Page, 837 N.E.2d 483, 489-90 (Ill. Ct. App. 2005)).   Mr. Oviatt also seeks protection under the attorney-client privilege and the work-product privilege.   Id. at pp. 9-11. He argues "[u]nless Judge Davis or Judge Thorstenson release [him] from the attorney-client communications privilege, he is bound not to disclose discussions or communications he had with Judge Davis or Judge Thorstenson about conducting 48-hour hearings."   (Docket 207 at p. 6).

**Judge Thorstenson**

Judge Thorstenson says she "does not have any of the documents listed in the subpoena in her possession or under her control."   (Docket 195 at p. 2). Concerning Oviatt's Memorandum to Judge Thorstenson, she makes a "limited waiver" so that the memorandum can be produced to plaintiffs.   Id. at p. 3. However, "[s]he does not intend to waive any other privilege including but not limited to the attorney client privilege or judicial privilege or deliberative privilege[9] which may attach to that memo in terms of her communications to others regarding that subject matter."   Id.   She claims materials prepared by law clerks at her request or with her assistance are protected by the work product privilege.   Id. at p. 5 (referencing Simon, 816 F.2d 397).

---

[9]Judge Thorstenson claims the deliberative privilege protects "[t]he mental process employed by a judge in performing judicial functions . . . ."   (Docket 195 at p. 5) (referencing United States v. Morgan, 313 U.S. 409 (1941) (citing Fayerweather v. Ritch, 195 U.S. 276 (1904); and Nixon v. Sirica, 487 F.2d 700 (D.C. Cir. 1973)).   The court considers the deliberative process to be synonymous with the judicial privilege and will analyze both as the "judicial privilege."

**Jacob Quasney**

Mr. Quasney, as a former law clerk of the Seventh Circuit, asserts his conversations with Judge Davis, Judge Thorstenson or Mr. Oviatt are protected by the attorney-client privilege.   (Docket 192 at p. 3) (referencing Supreme Court Rule 503 and In re Bieter Co., 16 F.3d 929).   Mr. Quasney argues he "should not be ordered to violate his oath as an attorney."   (Docket 206 at p. 2 (referencing S.D.C.L. § 16-18-18:   "It is the duty of an attorney . . . to maintain inviolate the confidence, and at any peril to himself to preserve the secrets of his client."). He asserts those conversations are covered by the judicial privilege.   (Docket 192 at pp. 5-6 (referencing the same cases cited by the other deponents).

## ANALYSIS

"Rule 26(b) of the Federal Rules of Civil Procedure is widely recognized as a discovery rule which is liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence."   Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992).   "While the standard of relevance in the context of discovery is broader than in the context of admissibility (Rule 26(b)) clearly states that inadmissibility is no grounds for objection to discovery. . . ."   Id. (referencing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 350-51 (1978)).   A party seeking discovery is merely required to make a threshold showing of relevance, which is more relaxed than the showing required in the context of admissibility.   Id. at 351.   The party resisting production of

discovery bears the burden of establishing lack of relevance or that complying with the request would be unduly burdensome.   See St. Paul Reinsurance Co. v. Commercial Fin. Corp., 198 F.R.D. 508, 511 (N.D. Iowa 2000).

"While a judge enjoys no special privilege from being subpoenaed as a witness, it is imperative when he is called to testify as to action taken in his judicial capacity, to carefully scrutinize the grounds set forth for requiring his testimony.   Should a judge be vulnerable to subpoena as to the basis of every action taken by him, the judiciary would be open to frivolous attacks upon its dignity and integrity, and interruption of its ordinary and proper functioning." United States v. Anderson, 560 F.3d 275, 282 (5th Cir. 2009) (citations omitted).

The issues presented by plaintiffs' motion for sanctions are:

1. Prior to serving his first supplemental responses to plaintiffs' request for production of documents (Docket 98-3 at p. 1), was Judge Davis aware of:

   a. Oviatt's Memorandum to Judges; or

   b. Oviatt's Memorandum to Judge Thorstenson; and

2. If the answer to either part of Issue 1 is "yes," did Judge Davis make a deliberate decision to conceal the existence of those documents.

(Docket 114).   The court's order allowing written discovery and depositions of five individuals is limited to developing evidence "relevant to the motion for sanctions."   (Dockets 147 at pp. 1-2; see also Docket 151).

The answers to these questions are of importance to the parties and to the general public.   At stake are "the public confidence in the judiciary," that is, the

13

validity of decisions issued by this court which are premised upon the accuracy and completeness of the evidence presented by the parties, and "a determination of the truth or falsity of the charge[]" leveled at Judge Davis.   Williams, 783 F.2d at 1522.

"It is well-settled that a judge may not be asked to testify as to his or her mental impressions or processes in reaching a judicial decision."   Thomas, 837 N.E.2d at 488 (referencing Fayerweather, 195 U.S. at 307 (other references omitted) (emphasis added); see also Anderson, 560 F.3d at 282 ("This case . . . implicates the 'mental process rule.'   This rule protects the mental process of . . . judges from compelled testimony . . . ."); Grant v. Shalala, 989 F.2d 1332, 1344 (3d. Cir. 1992) ("It has long been recognized that attempts to probe the thought and decision making processes of judges . . . are improper.").

In Thomas, the subpoenas issued to supreme court justices and their law clerks sought information and documents relating to In re Gorecki, 802 N.E.2d 1194 (Ill. 2003), a "disciplinary proceeding involving the Kane County State's Attorney, Mary Elizabeth Gorecki . . . ."   Thomas, 837 N.E.2d at 487.   The court acknowledged "there is a strong public policy favoring the protection of the confidentiality of intra-court communications made in the course of the judicial decision-making process.   The very integrity of the process often rests on judges' candid communications with their colleagues and staffs and, as a consequence, the confidentiality of such matters is a necessary component of the process."   Id. at 490.   The court observed:

14

> Because it is the public who benefits from the impartial and
> independent resolution of matters which come before a court,
> the communications between judges and their colleagues and
> staffs are among those which ought to be protected for the
> public good.   For these same reasons, we also believe that the
> damage that the judicial decision-making process would
> suffer from the disclosure of such communications would, in
> almost every instance, be far greater than the benefit which
> might be gained by those seeking disclosure.

Id.  The court concluded this "judicial decision-making process" should include

law clerks.  "Although law clerks make no judicial decisions, they are certainly

part of the judicial decision-making process.   They assist the judges in

understanding the legal issues involved in a case and they research those issues.

Law clerks confer with the judges, and judges rely on the clerks' ideas and

insights in formulating decisions."   Id. at 491.   "The rationale supporting the

recognition of a judicial deliberation privilege covering communications among

and between judges and between judges and their law clerks equally supports

the application of the privilege to communications between law clerks."   Id.

The court found the "judicial decision-making process" to be an absolute

privilege.   Id. at 493.   "There is no question that the privilege bars discovery of

any intra-court memoranda or notes generated by the justices of the supreme

court and their staffs in the course of the performance of their official duties

relating to the resolution of the Gorecki Proceedings."   Id. at 494.

Like the Williams decision, Thomas acknowledged the existence of a

qualified privilege.   "[A] qualified privilege can be defeated if the party seeking

discovery of the privileged information can demonstrate that his or her need for

the materials is sufficiently great to overcome the privilege." Id. at 492

(referencing Williams, 783 F.2d at 1522; other reference omitted).   "To meet this

burden, the party seeking the information must show 'the importance of the

inquiry for which the privileged information is sought; the relevance of that

information to its inquiry; and the difficulty of obtaining the desired information

through alternative means.' " Id. (referencing Williams, 783 F.2d at 1522).

"After the burden is met, the court then balances the demonstrated need for the

privileged information against the degree of intrusion upon the confidentiality of

the privileged communications necessary to satisfy the need." Id. (referencing

Williams, 783 F.2d at 1522).   While Thomas denied the parties access to the

"decision-making process" documents, it allowed the trial court to determine

whether documents outside the "decision-making process" are protected by the

privilege. Id. at 494.

In his amended answer to the complaint, Judge Davis essentially denied

those allegations which claimed he created policy for himself and the other

circuit court judges for the conduct of 48-hour hearings.   Compare Docket 1

¶¶ 11, 56 & 113 with Docket 80 ¶¶ 12, 25, 43.   Judge Davis actively participated

in the development of evidence for the court's consideration on plaintiffs' motions

for partial summary judgment.   See Dockets 128-131.   In the defendants'

briefs, Judge Davis argued he was not a final decision maker setting policy for

the administration of 48-hour hearings in his courtroom and the courtrooms of

other circuit court judges.   (Dockets 128 at pp. 13-17; 129 at pp. 18-22).

16

Judge Davis represented to the court that as the presiding judge of the Seventh Judicial Circuit he had no input into the administrative processes used by the other judges.   (Dockets 128 at p. 17; 130 ¶¶ 3 & 37; 131 ¶¶ 13, 19, 27, 40, 41 & 42).   Unbeknownst to the court there were two memorandums, Oviatt's Memorandum to Judges and Oviatt's Memorandum to Judge Thorstenson, which apparently circulated through the chambers of the Seventh Circuit judges.

Judge Davis argues the creation of these two memorandums was part of the judicial decision-making process and is protected by judicial privilege.   He extends the judicial privilege argument to avoid disclosure of whether and when either of these documents were directed by, disclosed to or known by him.   His argument does not explain how either of these two questions—whether and when—should be considered part of a judicial decision-making process.   The other deponents tie their judicial privilege arguments to Judge Davis' argument.

On their face, both memorandums appear to address a policy for handling ICWA proceedings and not specific judicial decision-making    for any particular case.   Judge Davis' "assertion of a confidentiality interest is generalized in nature.   [He and the other deponents] ha[ve] not directed the attention of this court to any further, specific need for secrecy over and above those needs which normally apply and give rise, in the first place, to a privilege."   <u>Williams</u>, 783 F.2d at 1524.   Inquiry by plaintiffs into communications between the individuals who sought, directed or participated in the development of either Oviatt's Memorandum to Judges or Oviatt's Memorandum to Judge Thorstenson

17

and into whether Judge Davis ever saw those documents or intentionally failed to disclose the existence of the documents does not invade the decision-making process of adjudicating a specific case before any judge of the Seventh Judicial Circuit.

The entirety of the record at the time the court authorized written discovery and depositions on plaintiffs' motion for sanctions presented credibility issues which require further development.   The expectation is that Judge Davis and the other deponents will candidly and fully respond to the subpoenas *duces tecum* and to questions posed during their depositions.

The fact these proceedings remain sealed until the court determines whether Judge Davis or Mr. Oviatt should be sanctioned "present circumstances which mitigate the force of [the] confidentiality interest in avoiding testimony about assertedly privileged communications." Williams, 783 F.2d at 1524. "[D]isclosure of the substance of the privileged communications here threatens [the] confidentiality interest little more than would *in camera* examination." Id. "[H]aving weighed the competing concerns in the balance," the court finds the "need for these witnesses' testimony outweighs [deponents'] asserted interest in non-disclosure." Id. at 1525.

Judge Davis, Mr. Oviatt and Mr. Quasney argue their relationships were protected by the attorney-client privilege.   (Dockets 179 at pp. 9-10; 185 at pp. 9-11 and 192 at pp. 3-4).   They assert that as law clerks Mr. Oviatt and Mr. Quasney were attorneys for Judge Davis.   Id.   This position is frivolous.

18

Despite their generalized argument they cite to no legal authority which specifically supports their position.   The law review article which Mr. Oviatt offers in support of his position in fact concludes to contrary.   "Judges are not 'clients' of their clerks; the ethical considerations that normally give rise to the lawyer's confidentiality duty, therefore, are not present in the clerk-judge relationship."   "Comment, The Law Clerk's Duty of Confidentiality," 129 U. Pa. L. Rev. 1230, 1260-61 (1981) (references to other law review articles omitted). The court concludes a law clerk does not act as an attorney for a judge and their communications are not protected by the attorney-client privilege.   As the drafter of one or both of the memorandums, Mr. Oviatt is in the best position to testify whether he and Judge Davis ever discussed the memorandums or earlier drafts of them, or if Mr. Oviatt otherwise possesses information which could lead the court to conclude that Judge Davis had knowledge of the documents.

Judge Davis agreed to disclose to plaintiffs Oviatt's Memorandum to Judge Thorstenson at his deposition.[10]   It would be unfair to permit Judge Davis to present only part of the story and refuse to answer questions about both memorandums.   Because the motion for sanctions charges Judge Davis and Mr. Oviatt with submitting false information by affidavit, the Oviatt Memorandum to Judges also must be the subject of thorough deposition inquiry by plaintiffs' counsel.

_____

[10]Judge Davis did not include Oviatt's Memorandum to Judge Thorstenson on his privilege log, an option which may have been available to him under Fed. R. Civ. P. 26(b)(5)(A).

The question remains whether the documents on Judge Davis' privilege log are protected or are irrelevant to the sanction issues.   If Judge Davis maintains the documents on his privilege log (Docket 98-3 at p. 4) cannot be disclosed, he must submit those documents to the court for *in camera* review.   PaineWebber Group, Inc., 187 F.3d at 992.

The court concludes the work product privilege is not applicable to the arguments made by Judge Davis.   "These materials were not prepared in anticipation of litigation or for trial."   Diversified Industries, Inc. v. Meredith, 572 F.2d 596, 611 n.4 (8th Cir. 1977) (referencing Fed. R. Civ. P. 26(b)(3); 8 Wright & Miller, Federal Practice and Procedure: Civil § 2024 (other references omitted).   Mr. Oviatt's and Mr. Quasney's assertions of judicial privilege, attorney- client privilege or work product privilege fail for the same reasons those privileges are unavailable to Judge Davis.

RFP No. 6 sought production of "all correspondence between Marcia Whiting and Judge Davis (or a law clerk working with Judge Davis) regarding ICWA procedures or to set up a meeting between Ms. Whiting and Judge Davis sent between January 1, 2012 and July 3, 2012."   (Docket 180-1 at p. 3). Judge Davis does not indicate how correspondence with Attorney Whiting is subject to any privilege or could be the subject of a protective order about ICWA procedures.   Judge Davis must fully respond to RFP No. 6.

Judge Thorstenson takes a "limited waiver" position so that Oviatt's Memorandum to Judge Thorstenson can be produced.   (Docket 195 at p. 3).

20

Notwithstanding this limited waiver, Judge Thorstenson "does not intend to waive any other privilege including but not limited to the attorney client privilege or judicial privilege or deliberative privilege which may attach to that memo in terms of her communications to others regarding that subject matter."   Judge Thorstenson has no judicial or other privilege different from those privileges unavailable to Judge Davis.   For that reason, discovery may proceed as to Judge Thorstenson within the scope of this order.   Id.

Remaining for resolution are deponents' objections to plaintiffs' position that all of the documents sought by plaintiffs must be open for discussion during the depositions.   Of particular concern are RFPs No. 3 and 4.   (Docket 180-1 at p. 2).   Plaintiffs seek correspondence between Judge Davis and Judge Thorstenson "regarding (a) procedures to be used in 48-hour hearings, (b) whether ICWA applies to 48-hour hearings, and (c) meetings held between Judge Thorstenson and Dana Hanna regarding 48-hour hearings."[11]   Id. (RFP No. 3). Plaintiffs also intend to depose Judge Davis about "the conduct of, or statements of, Dana Hanna in 48-hour hearings conducted by Judge Thorstenson."[12]   Id. (RFP No. 4).   None of these areas of inquiry are relevant to the issues presented by plaintiffs' motion for sanctions, nor are answers to these inquiries likely to

---

[11] The same information in subsections (a) and (b) is sought from Mr. Oviatt by the subpoena *duces tecum*.   (Docket 185-1 at p. 3 ¶ 1).

[12] The same information is sought from Mr. Oviatt by the subpoena *duces tecum.*   (Docket 185-1 at p. 4 ¶ 3).

lead to admissible evidence.   The same analysis applies to paragraphs 1 and 2 of the subpoena *duces tecum* directing Judge Davis to bring certain documents to his deposition.   (Docket 185-1 at p. 2 ¶¶ 1 & 2).   Plaintiffs seek from Judge Davis correspondence sent to him by Attorney Hanna.   This information is equally available to Attorney Hanna and focuses on issues irrelevant to the present inquiry.   Whether Judge Davis was irritated by Attorney Hanna's persistent assertion of parents' rights or a tribe's rights under ICWA is irrelevant to the issues before the court.

## ORDER

Based on the above analysis, it is

ORDERED that Judge Davis' motion for protective order (Docket 179) is granted in part and denied in part consistent with this order.

IT IS FURTHER ORDERED that Judge Davis shall on or before **March 28, 2016**, serve on plaintiffs, but not file with the court, written responses to RFP Nos. 1, 2 and 6 (Docket 180-1 at pp. 2-3).

IT IS FURTHER ORDERED that Judge Davis shall on or before **March 28, 2016**, serve on plaintiffs, but not file with the court, a written response to RFP No. 5 (Docket 180-1 at p. 2).   If any of the documents identified in his privilege log (Docket 98-3 at p. 4) are the subject of an unresolved privilege claim, he must specify the privilege and deliver the documents to the court's chambers for *in camera* review on or before **March 28, 2016**.

22

IT IS FURTHER ORDERED that Judge Davis is not required to produce the documents sought by paragraphs 1 and 2 of the subpoena *duces tecum,* that is:

1.   All correspondence that Judge Davis wrote to Dana Hanna at any time between November 2011 and June 2012 regarding Mr. Hanna's request to obtain copies of, or to examine, 48-hour hearing transcripts.

2.   All documents that Judge Davis read from Mr. Hanna that prompted the letters in the above paragraph, including all requests for copies of transcripts submitted by Mr. Hanna to Judge Eklund or to the clerk of court.

(Docket 185-1 at p. 2 ¶¶ 1 & 2).

IT IS FURTHER ORDERED that Nathan Oviatt's motion for protective order (Docket 185) is granted in part and denied in part consistent with this order.

IT IS FURTHER ORDERED that Mr. Oviatt is not required to produce the documents sought by paragraphs 1 and 3 of the subpoena *duces* tecum, that is:

1.   All correspondence between him and Judge Davis and all correspondence between him and Judge Thorstenson written between July 1, 2011 and July 3, 2012 regarding (a) the extent to which the Indian Child Welfare Act might apply in 48-hour hearings, or (b) the procedures to be used in 48-hour hearings.

3.   All correspondence, including notes and memoranda, written by Mr. Oviatt and submitted to Judge Davis concerning what Mr. Oviatt observed of the conduct of, or statements of, Dana Hanna in 48-hour hearings conducted by Judge Thorstenson.

(Docket 185-1 at pp. 3-4 ¶¶ 1 & 3).

IT IS FURTHER ORDERED that Jacob Quasney's motion for protective order (Docket 192) is granted in part and denied in part consistent with this order.

IT IS FURTHER ORDERED that Judge Thorstenson's motion for protective order (Docket 195) is granted in part and denied in part consistent with this order.

IT IS FURTHER ORDERED that Judge Davis, Judge Thorstenson, Nathan Oviatt and Jacob Quasney are not required to answer deposition questions about correspondence referenced in RFP Nos. 3 and 4, that is:

> RFP No. 3.  Please produce all correspondence between Judge Davis and Judge Thorstenson during the nine months prior to and including July 3, 2012 regarding (a) procedures to be used in 48-hour hearings, (b) whether ICWA applies to 48-hour hearings, and (c) meetings held between Judge Thorstenson and Dana Hanna regarding 48-hour hearings.  (If any portions of these documents discuss the merits of a case pending before Judge Davis or Judge Thorstenson, that portion should be redacted but the remainder of the document must be produced.)

> RFP No. 4.  Please produce all correspondence, including notes and memoranda, written by Nathan Oviatt and submitted to Judge Davis concerning what Mr. Oviatt observed of the conduct of, or statements of, Dana Hanna in 48-hour hearings conducted by Judge Thorstenson.

(Docket 180-1 at p. 2), paragraphs 1 and 2 of the subpoena *duces tecum*, that is:

> 1.   All correspondence that Judge Davis wrote to Dana Hanna at any time between November 2011 and June

2012 regarding Mr. Hanna's request to obtain copies of, or to examine, 48-hour hearing transcripts.

2. All documents that Judge Davis read from Mr. Hanna that prompted the letters in the above paragraph, including all requests for copies of transcripts submitted by Mr. Hanna to Judge Eklund or to the clerk of court.

(Docket 185-1 at p. 2 ¶¶ 1 & 2), paragraphs 1 and 3 of the subpoena *duces tecum*, that is:

1. All correspondence between him and Judge Davis and all correspondence between him and Judge Thorstenson written between July 1, 2011 and July 3, 2012 regarding (a) the extent to which the Indian Child Welfare Act might apply in 48-hour hearings, or (b) the procedures to be used in 48-hour hearings.

3. All correspondence, including notes and memoranda, written by Mr. Oviatt and submitted to Judge Davis concerning what Mr. Oviatt observed of the conduct of, or statements of, Dana Hanna in 48-hour hearings conducted by Judge Thorstenson.

(Docket 185-1 at pp. 3-4 ¶¶ 1 & 3) or paragraphs 1, 2, and 3 of the subpoena *duces tecum*, that is:

1. Any and all memoranda or correspondence to Judge Thorstenson written by Nathan Oviatt, Jake Quasney, or Judge Jeff Davis, and all memoranda or correspondence from Judge Thorstenson to them, during the nine months prior to and including July 3, 2012 regarding (a) procedures to be used in 48-hour hearings, (b) whether ICWA applies to 48-hour hearings, and (c) meetings held between Judge Thorstenson and Dana Hanna regarding 48-hour hearings. (If any portions of these documents discuss the merits of a case pending before Judge Davis or Judge Thorstenson, that portion should be redacted but the remainder of the document must be produced.)

25

2.     The notes that Judge Thorstenson took during her out-of-courtroom meetings with Dana Hanna between January 1, 2012 and May 30, 2012 concerning 48-hour hearings.

[3].    All correspondence, including notes and memoranda, written between Judges Davis and Thorstenson concerning the conduct of, or statements of, Dana Hanna in 48-hour hearings conducted by Judge Thorstenson.

(Docket 185-1 at pp. 4-5 ¶¶ 1, 2 & 6[3]).

IT IS FURTHER ORDERED that Judge Davis, Judge Thorstenson, Nathan Oviatt and Jacob Quasney are required to answer deposition questions relating to RFP Nos. 1, 2 and 6, that is:

RFP No. 1.   Please produce the memorandum to Judge Thorstenson written by Nathan Oviatt identified in paragraph 3 of the Affidavit of Nathan R. Oviatt and all drafts of that memorandum which exist on the "law clerk's computer," as that term is used in Mr. Oviatt's affidavit.

RFP No. 2.   Please produce all documents on "the law clerk's computer" (as that term is used in Mr. Oviatt's affidavit) under the search terms "ICWA" or "48-hour hearing" authored in whole or in part by Jake Quasney and/or Nathan Oviatt.

RFP No. 6.   Please produce all correspondence between Marcia Whiting and Judge Davis (or a law clerk working with Judge Davis) regarding ICWA procedures or to set up a meeting between Ms. Whiting and Judge Davis sent between January 1, 2012 and July 3, 2012.

(Docket 180-1 at pp. 2-3).

26

IT IS FURTHER ORDERED that Judge Davis, Judge Thorstenson, Nathan Oviatt and Jacob Quasney are required to answer questions relating to any documents released to plaintiffs by the court following the court's *in camera* review of the documents identified in Judge Davis' privilege log.

IT IS FURTHER ORDERED that Judge Davis, Judge Thorstenson, Nathan Oviatt and Jacob Quasney shall answer deposition questions concerning the issues framed by plaintiffs' motion for sanctions as contemplated by this order.

IT IS FURTHER ORDERED that all five depositions authorized by the court's orders (Dockets 147 & 151) shall be completed on or before **April 29, 2016**.

IT IS FURTHER ORDERED that if following completion of the depositions plaintiffs intend to pursue the motion for sanctions, a request for hearing must be filed on or before **May 20, 2016**.

IT IS FURTHER ORDERED that the parties to this litigation, including amicus and interested parties, shall have access to this sealed order.

IT IS FURTHER ORDERED that plaintiffs' motion (Docket 113) is denied as premature.

IT IS FURTHER ORDERED that Defendant Davis' motion (Docket 117) is granted.

Dated March 7, 2016.

BY THE COURT:

JEFFREY L. VIKEN
CHIEF JUDGE

27