UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| OGLALA SIOUX TRIBE and ROSEBUD SIOUX TRIBE, as *parens patriae*, to protect the rights of their tribal members; MADONNA PAPPAN, and LISA YOUNG, individually and on behalf of all other persons similarly situated, | CIV. 13-5020-JLV |
| Plaintiffs, | ORDER |
| vs. | |
| LISA FLEMING; MARK VARGO; HONORABLE CRAIG PFEIFLE; and LYNNE A. VALENTI, in their official capacities, | |
| Defendants. | |

## I.    Preliminary Statement

The defendants continue to disregard this court's March 30, 2015, partial summary judgment order.   That order outlined the defendants' violations of the rights of Indian children, parents, custodians and tribes guaranteed by the Due Process Clause of the Fourteenth Amendment and by the Indian Child Welfare Act.   Notwithstanding testimony confirming that South Dakota Circuit Court Judges in Meade County, Brown County, Hughes County and Minnehaha County are conducting adversarial hearings in accord with the March 2015 order prior to the extended removal of Indian children from their homes, defendants refuse to reform their violative policies and practices.   The court repeatedly invited the defendants to propose a plan for compliance with their constitutional and statutory obligations but the defendants rejected that opportunity.

This order discusses the need and the authority for this court to impose remedies to vindicate plaintiffs' rights.   Orders for declaratory and injunctive relief are filed simultaneously with this order.

## II.    Procedural History

On March 21, 2013, plaintiffs filed this civil rights action pursuant to 42 U.S.C. § 1983 asserting defendants' policies, practices and procedures relating to the removal of Native American children from their homes during state court 48-hour hearings[1] violate the Indian Child Welfare Act ("ICWA")[2] and the Due Process Clause of the Fourteenth Amendment.   (Docket 1).   Defendants denied plaintiffs' claims.   (Dockets 76, 80 & 81).

On July 11, 2014, plaintiffs filed two separate motions for partial summary judgment.   (Dockets 108 & 110).   Those motions will be identified as the "Section 1922 Claims" (Docket 110) and the "Due Process Claims" (Docket 108). Following extensive submissions by the parties, on March 30, 2015, the court entered an order granting plaintiffs' motions ("2015 order").   (Docket 150 at p. 44).   By the 2015 order, the court reserved ruling on plaintiffs' request for declaratory and injunctive relief.   Id.   On August 17, 2016, a hearing was held to address plaintiffs' prayer for relief ("remedies hearing").   (Docket 277).   For

---

[1]SDCL § 26-7A-14 directs "no child may be held in temporary custody longer than forty-eight hours . . . excluding Saturdays, Sundays, and court holidays, unless a . . . petition has been filed . . . and the court orders longer custody during a noticed hearing . . . ."   These proceedings are commonly referred to as a "48-hour hearing."

[2]25 U.S.C. § 1901 *et seq.*

2

the reasons stated below, plaintiffs' request for a declaratory judgment is granted, plaintiffs' request for injunctive relief is granted in part and plaintiffs' request for appointment of a monitor is denied without prejudice as premature.

Plaintiffs Oglala Sioux Tribe and Rosebud Sioux Tribe are Indian tribes officially recognized by the United States with reservations located within the State of South Dakota.   (Docket 150 at p. 11).   Both tribes have treaties with the federal government.   Id.   The court granted *parens patriae* status to both tribes.   (Docket 69 at p. 17).

Plaintiffs Madonna Pappan and Lisa Young reside in Pennington County, South Dakota, and are members of the Oglala Sioux Tribe and the Standing Rock Sioux Tribe, respectively.   (Docket 150 at p. 11).   The court certified these individual plaintiffs as class representatives for all similarly situated Indian parents.   (Docket 70 at pp. 14-15).   The class of plaintiffs includes "all other members of federally recognized Indian tribes who reside in Pennington County, South Dakota, and who, like plaintiffs, are parents or custodians of Indian children."   Id. at p. 14.

Defendant Lynne A. Valenti is the Secretary of the South Dakota Department of Social Services ("DSS").[3]   Id.   Defendant Lisa Fleming is the person in charge of DSS Child Protection Services ("CPS") for Pennington County,

---

[3]Pursuant to Fed. R. Civ. P. 25(d), Ms. Valenti was substituted as a proper party in her official capacity effective February 24, 2014.   (Docket 150 at p. 11 n.12).

South Dakota.[4]   In state court cases involving Ms. Pappan and Ms. Young, CPS employees under their supervision signed ICWA affidavits alleging the children of these Indian parents were at risk of serious injury if the children remained at home.   (Docket 217 at p. 6).

Defendant Mark Vargo is the duly elected States Attorney for Pennington County.   (Docket 150 at p. 11).   A Deputy States Attorney under States Attorney Vargo's supervision prepares the petitions for temporary custody for all ICWA cases.   (Docket 217 at p. 6).   Defendant Craig Pfeifle is the presiding judge of the Seventh Judicial Circuit Court of the State of South Dakota and is the chief administrator of the Seventh Judicial Circuit Court.[5]

Section 1922 of ICWA states:

> Nothing in this subchapter shall be construed to prevent the emergency removal of an Indian child who is a resident of or is domiciled on a reservation, but temporarily located off the reservation, from his parent or Indian custodian or the emergency placement of such child in a foster home or institution, under applicable State law, in order to prevent imminent physical damage or harm to the child.   The State authority, official, or agency involved shall insure that the emergency removal or placement terminates immediately when such removal or placement is no longer necessary to prevent imminent physical damage or harm to the child and shall expeditiously initiate a child custody proceeding subject to the provisions of this subchapter, transfer the child to the

---

[4]Pursuant to Fed. R. Civ. P. 25(d), Ms. Fleming was substituted as a proper party in her official capacity effective March 7, 2016.   See Dockets 221 & 226.

[5]On May 21, 2015, Circuit Court Judge Craig Pfeifle was appointed presiding judge of the Seventh Judicial Circuit by the Chief Justice of the South Dakota Supreme Court.   (Docket 226 at p. 1 n.1) (referencing Docket 205 ¶ 4). Pursuant to Fed. R. Civ. P. 25(d), Judge Pfeifle was substituted as a proper party in his official capacity effective March 7, 2016.   See Dockets 205, 222 & 226.

jurisdiction of the appropriate Indian tribe, or restore the child to the parent or Indian custodian, as may be appropriate.

25 U.S.C. § 1922.

Since January 2010, approximately one hundred 48-hour hearings involving Indian children[6] are held each year in Pennington County.   (Docket 150 at p. 12).[7]   In March 2015, the court found that despite "the clear intent of ICWA, the [Department of the Interior] Guidelines[8] and the SD Guidelines,[9] all of which contemplate evidence will be presented on the record in open court, Judge Davis[10] relied on the ICWA affidavit and petition for temporary custody which routinely are disclosed only to him and not to the Indian parents, their attorney or custodians."   (Docket 150 at pp. 34-35).   These undisclosed

---

[6]Unless otherwise indicated, all references to "child(ren)," "parent(s)," and "custodian(s)" will mean Indians as that term is defined by 25 U.S.C. § 1903(3).

[7]The undisputed testimony at the remedies hearing indicates this figure remained constant for 2015 and the 2016 figure will be approximately the same.

[8]The Department of Interior Guidelines for State Courts; Indian Child Custody Proceedings ("DOI Guidelines") were promulgated to aid in the interpretation of ICWA's provisions. 44 Fed. Reg. 67584-67595 (Nov. 26, 1979). The DOI Guidelines were revised on February 19, 2015 ("DOI Revised Guidelines").   (Docket 150 at p. 29).   The DOI Regulations were updated December 12, 2016.   See 81 Fed. Reg. 38778-38876 (June 14, 2016) and 25 CFR part 23.

[9]"South Dakota Guidelines for Judicial Process in Child Abuse and Neglect Cases" were available as of March 30, 2015, at http://ujs.sd.gov/uploads/pubs/SDGuidelinesAandNProceedings.pdf.   (Docket 150 at p. 32 n.29).

[10]Judge Davis was the Presiding Judge of the Seventh Judicial Circuit and the judge presiding over most 48-hour hearings during the time frame of 2010 to 2013.

documents are not subject to cross-examination or challenge by the presentation of contradictory evidence.   Id. at p. 35.   The practice of the state court was to "*authorize* DSS to perform the function of determining if, or when, the imminent risk of physical harm to an Indian child has passed and to restore custody to the child's parents. . . . This authorization vests full discretion in DSS to make the decision if and when an Indian child may be reunited with the parents."   Id. (italics in original; internal citations omitted).   The court found this "abdication of judicial authority" violated "the protections guaranteed Indian parents, children and tribes under ICWA."   Id.

In the March 2015 order, the court found the defendants violated plaintiffs' due process rights under the Fourteenth Amendment during the course of 48-hour hearings.   (Docket 150 at pp. 36-42).   The violations are summarized as follows:   (1) failing to appoint counsel in advance of the 48-hour hearing; (2) failing to provide notice of the claims against Indian parents, the issues to be resolved and the state's burden of proof; (3) denial of the right to cross-examine adverse witnesses; (4) denying Indian parents or custodians the right to present evidence in their own defense; and (5) removing Indian children on grounds not based on evidence presented in the hearing.   Id.

### III. Defendants' Only Consistent Policy for Handling the ICWA and Due Process Rights of Indian Children, Parents, Custodians and Tribes is Defendants' Violation of Those Rights

During the August 17, 2016, remedies hearing, the court admitted the transcripts of the deposition of Virgena Wieseler, Director of the Division of Child Protection Services, and Cara Beers, Program Specialist for Training, within the South Dakota Department of Social Services.   (Remedies Hearing Exhibits 1 and 2).   Ms. Wieseler testified that following the 2015 order and through the date of her July 20, 2016, deposition, CPS made a decision not to apply the § 1922 standard in training CPS staff.   (Remedies Hearing Exhibit 1 at pp. 128:15-133:25).   Ms. Beers testified during her July 21, 2016, deposition that DSS had not developed any new training for its staff based on the 2015 order.   (Remedies Hearing Exhibit 2 at p. 96:15-21).   During the remedies hearing, counsel argued the DSS defendants were in full compliance with their obligations under South Dakota state law and federal law but offered no supporting evidence.

States Attorney Vargo and Deputy States Attorney Roxanne Erickson testified during the remedies hearing.   Mr. Vargo acknowledged having read plaintiffs' March 21, 2013, complaint sometime after it was served.   (Docket 286 at p. 33:22-24).   The complaint specifically alleged that at 48-hour hearings:

> [Indian parents] were (a) not allowed to see the petition, (b) not allowed to see the affidavit, (c) not allowed to cross-examine the person who submitted the affidavit, (d) not allowed to offer any evidence contesting the allegations, (e) not allowed to offer any evidence as to whether the state had made active efforts to prevent the break-up of the family, and (f) not allowed to offer any evidence

7

regarding whether removal of their children was the least restrictive alternative. The only "evidence" mentioned at the hearing were hearsay statements from the state's attorney.

(Docket 1 ¶ 51).

Addressing the defendants' motions to dismiss in a January 28, 2014, order ("2014 order"), the court held that "[o]ne of the core purposes of the Due Process Clause is to provide individuals with notice of claims against them.   In this case, taking the allegations in the complaint as true, the court finds the risk of erroneous deprivation high when Indian parents are not afforded the opportunity to know what the petition against them alleges. . . . Keeping Indian parents in the dark as to the allegations against them while removing a child from the home for 60 to 90 days certainly raises a due process issue. . . . The petition and affidavit are provided to the presiding judge and can at very little cost be provided to Indian parents."   (Docket 69 at pp. 38-39).

Mr. Vargo testified that after reviewing the complaint and the 2014 order he felt the need to conduct his own research to resolve the issues raised in plaintiffs' complaint.   (Docket 286 at pp. 36:19-37:4).   It was not until May 2014 that he concluded a copy of the petition for temporary custody should be provided to Indian parents at the 48-hour hearing.   Id. at p. 36:8-18.   It was 14 months after the complaint was filed and 4 months after the 2014 order that Mr. Vargo acknowledged this basic due process principle.   Yet even at the remedies hearing Mr. Vargo testified Indian parents have no constitutional right to the

petition for temporary custody in advance of a 48-hour hearing so long as they are informed about the content of the petition.   Id. at p. 43:24-25.

Mr. Vargo testified he never specifically examined the 2015 order for the purpose of curing any constitutional deficiencies occurring in 48-hour hearings. Id. at p. 46:4-9.   He had no explanation as to why he did not review the order and discuss its content with Deputy States Attorney Roxanne Erickson who handles most 48-hour hearings.   Id. at p. 49:5-25.   He claims it was not until reading plaintiffs' April 20, 2016, remedies brief that he became aware of potential continuing ICWA violations.   Id. at pp. 50:18-51:4.

During the remedies hearing on August 17, 2016, Mr. Vargo instructed Ms. Erickson to change the petition for temporary custody to include ICWA language, although he was not specific as to what language would be included. Id. at p. 52:23-24.   He asserted he gave this directive even though he believed no change in the petition was necessary since the ICWA affidavit prepared by the CPS staff member contains language about ICWA.   Id. at p. 55:18-20.   Mr. Vargo insists it would not be an appropriate remedy to require his office to include the § 1922 standard for the removal of Indian children in future petitions for temporary custody.   Id. at p. 56: 6-7 & 9-21.

Mr. Vargo testified he initiated a policy that regardless of the outcome of a 48-hour hearing, a second hearing would be held within 15 days.   Id. at p. 59:14-18.   He could not recall when this policy was initiated and did not

testify that the judges of the Seventh Judicial Circuit were incorporating this second hearing into all ICWA proceedings.

Mr. Vargo acknowledged Ms. Erickson brought to his attention the fact that South Dakota Circuit Court Judges in Meade County, Brown County, Hughes County and Minnehaha County were conducting adversarial 48-hour hearings.  Id. at p. 63:10-23.   Other than this general knowledge, Mr. Vargo made no inquiry of Ms. Erickson or the States Attorneys in those counties to determine the impact adversarial 48-hour hearings had on their courts' dockets. Id. at p. 69:13-20.   Mr. Vargo testified he did not make the inquiry because he felt it would not be helpful since those counties did not have the same number of 48-hour hearings involving Indian families as did Pennington County.   Id. at pp. 69:22-70:5.

Ms. Erickson testified that since 2011 she has been the principal Deputy States Attorney assigned in Pennington County to handle 48-hour hearings. Id. at p. 73:5-7.   She testified that since June 2002 she has handled approximately 1,000 abuse and neglect cases.   Id. at p. 72:23-73:10.   She said the Pennington County Circuit Court typically conducts 48-hour hearings every Monday at 1:30 p.m. and every Thursday at 1 p.m.   Id. at p. 73:18-25.   She estimated there are about one hundred 48-hour hearings involving Indian children each year and that approximately 50 percent of all 48-hour hearings in the county involve Indian children.   Id. at p. 74:1-13.   Ms. Erickson stated that twice a week there could be from one to five 48-hour hearings conducted.   Id. at

10

p. 110:6-10.   If five hearings are held, they can require a total of one hour of court time.   Id.

Ms. Erickson testified Circuit Judge Robert Gusinsky took over all abuse and neglect proceedings in mid-January 2016.   Id. at p. 83:4-9.   She indicated he was well aware of this ICWA lawsuit and conducted his own legal research into the issues raised by plaintiffs.   Id. at pp. 84:15-85:1.

Ms. Erickson testified that around April 2016 Judge Gusinsky held a meeting with her, Attorney Dana Hanna as counsel for plaintiffs, and Attorney Daniel Leon of the Pennington County Public Defender's Office to discuss 48-hour hearings and ICWA.[11]   Judge Gusinsky requested briefing before the meeting on a number of issues, including which standard applied to 48-hour hearings: the South Dakota state standard or the § 1922 standard.   Id. at p. 75:8-14.   In the States Attorney's submission to Judge Gusinsky, Ms. Erickson argued Cheyenne River Sioux Tribe v. Davis, 822 N.W.2d 62 ( S.D. 2012), applied to 48-hour hearings and not § 1922.   Id. at pp. 77:23-78:1; see also Docket 239-6 at p. 10:9-18.

According to Ms. Erickson, following the meeting Judge Gusinsky concluded that (1) § 1922 was the correct standard to apply; (2) DSS should change the temporary custody order to conform to § 1922; (3) the ICWA affidavit prepared by CPS staff should incorporate § 1922; (4) Indian parents and their

_____

[11]During the course of a 48-hour hearing on April 18, 2016, Judge Gusinsky engaged in a discussion with the same attorneys about the 2015 order, § 1922 and their impact on the proceeding.   (Docket 239-6 at pp. 6:24-13:6).

11

attorneys should have access to the record at some time; (5) Judge Gusinsky would accept as factually true the affidavits and police reports presented to him during 48-hour hearings, but if there were any factual objections lodged, he would accept an offer of proof from the States Attorney and then allow a hearing at a later date.   (Docket 286 at pp. 76:7-77:2).   Ms. Erickson testified Judge Gusinsky now appoints counsel to indigent Indian parents at the 48-hour hearing and makes sure they have the petition for temporary custody and the ICWA affidavit signed by a CPS staff member.   Judge Gusinsky receives medical records, which may be made available to the attorneys present, but those records are not given to parents who are without counsel.   Id. at p. 100:7-15.   Judge Gusinsky considers any relevant police reports or summaries of the reports in the ICWA affidavit, but he does not allow police reports to be given to parents at a 48-hour hearing because of state law.[12]   Id. at pp. 96:24-97:15.   Ms. Erickson testified Judge Gusinsky does not allow any testimony during any 48-hour hearing and that for the past three years no Seventh Circuit Judge has permitted live testimony at any 48-hour hearing.   Id. at p. 81:3-6.   She testified Judge Gusinsky does not allow parents or their attorneys to cross-examine any

---

[12]The reference is to SDCL §§ 26-7A-27 and 26-27A-29 which prohibit disclosure of police reports to a parent or a parent's attorney without a court order.

witnesses until three or four months later at the adjudicatory hearing.[13]   Id. at p. 85:8-17.

Unless Judge Gusinsky retains supervision over abuse and neglect cases through June 2017, Ms. Erickson testified a different Seventh Circuit Judge will be assigned by Presiding Judge Pfeifle to take over those cases beginning in January 2017.   Id. at pp. 111:21-112:6.   She observed that since 2002 the abuse and neglect case procedures changed with every Seventh Circuit Judge assignment.   Id. at p. 82:13.

Ms. Erickson testified that after the 2015 order she attended a states attorney's conference and spoke with other South Dakota States Attorneys or deputies handling 48-hour hearings involving Indian families.   Id. at pp. 104:12-105:8.   She also visited with some of those attorneys at other times about how they handle 48-hour hearings.   Id.   Ms. Erickson testified four counties in South Dakota, Meade, Brown, Hughes and Minnehaha, conduct 48-hour hearings as full adversarial hearings.   Id. at pp. 105:10-106:18.   In each county, sworn live testimony is presented and the CPS worker and other witnesses are subject to cross-examination by Indian parents or their attorneys. Id.   When she brought this information to Mr. Vargo's attention, they did not discuss the details of how the other counties were conducting adversarial

_____

[13]Under South Dakota law, at an adjudicatory hearing the circuit court judge "shall consider whether the allegations of the petition are supported by clear and convincing evidence concerning an alleged abused or neglected child . . . ."   SDCL § 26-7A-82.

13

hearings.   Ms. Erickson never broached the subject with Judge Gusinsky.   Id. at p. 107:1-5.

Ms. Erickson testified in her May 25, 2016, deposition that Mr. Vargo never discussed with her how the States Attorney's Office could reconcile the 2015 order with Cheyenne River Sioux Tribe v. Davis.   See Remedies Hearing Exhibit 3 at p. 19:19-23.

Mr. Vargo's 15-day hearing proposal was not presented in his remedies brief as a justification for opposing declaratory judgment or injunctive relief. See Docket 257.   There is a reference to a 14-day hearing proposal in an affidavit of Luann Van Hunnik.   See Docket 132-1 ¶¶ 81-85.   Apparently beginning in September 2013 a policy was implemented that a "continued temporary custody hearing[] [would be] typically scheduled within fourteen days of the 48 hour hearing."   Id. ¶ 85.   At this status hearing a "Report to the Court" would be presented and "if an additional hearing [was] required, CPS staff will usually request that an advisory hearing be scheduled within thirty days."   Id. ¶ 85.   Defendants offer no evidence this plan was adopted by all the Seventh Circuit Judges.

For the same reasons expressed in the 2015 order, this "status hearing" procedure does not satisfy the ICWA rights or due process rights of Indian parents, their children, custodians or tribes.   See Docket 150 at pp. 36-42.

As recently as April 18, 2016, Judge Gusinsky followed a different procedural policy.   See Docket 239-6 at p. 4.   During a 48-hour hearing, Judge Gusinsky held "[t]his is a temporary custody hearing.   I will make the

14

determination as to whether up to 60 days continued temporary custody of the children is appropriate based upon the information provided to me."[14]   Id. at p. 4:14-18.   See also Docket 239-3 at p. 4:5-9 (April 4, 2016, 48-hour hearing with the same approach by Judge Gusinsky).

Illustrative of how 48-hour hearings were conducted in 2014 by Circuit Court Judge Robert Mandel is the following pronouncement to Indian parents:

> This is the time and place for the temporary custody of your children.   What happens today is I consider the State's request for continued temporary custody of the children.   The children have come to the attention of the Department of Social Services.   When that happens, the matter comes before me for determination as to whether the State's request for continued temporary custody is in the children's best interests.   This [is] an informal proceeding, and by that I mean there's no testimony taken.   I rely upon the information that is provided to me here today to make a determination as to whether continued temporary custody is appropriate and in the children's best interests.
>
> At this point in time, there's not been a formal petition alleging that the children are abused and neglected filed.   That certainly can happen.   You need to know that in the event that the State does file a formal petition, you have certain rights.   You will have the right to have a hearing on the petition at which time the State would be required to prove by clear and convincing evidence the allegations in that petition.   You would have the right to have the assistance of counsel, and if you're unable to afford counsel, one would be appointed for you.   You'd have the right to ask me to order the attendance of witnesses to testify on your behalf and you'd have the right to cross-examine any witnesses that the State might present at that hearing.
>
> What you need to know for the purposes of today's hearing is that the maximum possible consequences that can occur, in the event a formal petition is filed and in the event that the State proves those allegations, could be the termination of your parental rights and the

---

[14]Under South Dakota law, a temporary custody order must be reviewed every 60 days.   SDCL § 26-7A-19(2).

15

placement of the children with the State of South Dakota for purposes of adoption.  That's not where we're at today.  This is a temporary custody hearing.  I can make a determination as to whether continued temporary custody of the children is appropriate based upon the information provided to me for a period of up to 60 days.

(Docket 118-1 at pp. 469:15-471:7).[15]   After hearing from the Deputy States

Attorney, Judge Mandel ruled:   "I am going to grant the temporary custody [to

DSS] for a period of 16 days and I will continue this hearing [to a time and date].

I'm not going to appoint counsel at this time, but depending where we're going,

we'll see about it when we're there."   Id. at p. 473:18-23.   Between January 24

and July 31, 2014, Judge Mandel set temporary custody hearings inconsistently

anywhere between 12 and 70 days into the future.[16]

On April 24, 2015, Judge Mandel e-mailed to Ms. Erickson, Eric Whitcher,

the Director of the Pennington County Public Defender's Office, and Mr. Hanna a

copy of an article entitled, "*Federal law in the state courts---The freedom of state

courts to ignore interpretations of federal law by lower federal courts,*" Steven H.

Steinglass, 1 Section 1983 Litigation in State Courts § 5:8 (2014).   See Docket

239-2 at pp. 2-8.   In his e-mail, Judge Mandel advised "I'm passing this article

---

[15]See also Dockets 118-1 at pp. 479:11-481:1; 132-31 at pp. 29:19-31:7; 132-31 at pp. 36:13-38:1; 132-31 at pp. 49:2-50:15; 132:31 at pp. 56:13-58:1; 132-31 at pp. 69:11-70:22; 132-31 at pp. 75:10-76:23; 132-31 at pp. 105:19-107:6.   These hearings occurred between January 24, 2014, and July 31, 2014. See id.

[16]See Dockets 118-1 at p. 483:7-11 (14 days); 132-31 at p. 33:9-13 (14 days); 132-31 at p. 53:4-6 (15 days); 132-31 at p. 66:9-11 (70 days); 132-31 at p. 72:9-11 (14 days); 132-31 at p. 78:21-23 (45 days); 132-31 at p. 111:6-8 (12 days); 239-6 at p. 8:19-21 (14 days); and 239-6 at p. 14:6-8 (14 days).

along, as I think it is of interest in this matter and accurately states the law." <u>Id.</u> at p. 1.   While Judge Mandel may believe the article accurately states the law, it must be pointed out the author cautioned readers: "The issue of whether state courts should give precedential value to lower federal court cases is different from the application of the principles of preclusion against parties who have had issues decided against them." <u>Id.</u> at p. 5 n.4.

In May 2015, Presiding Judge Pfeifle made clear his position regarding the state court's response to the 2015 order.   He declared:

> It is my obligation at this point in time to follow the law that the South Dakota Supreme Court has provided to me.   Whether or not I agree with Judge Viken in my estimation is not relevant to the inquiry because the Supreme Court of South Dakota has very clearly determined for me in <u>Cheyenne Sioux Tribe v. Davis</u> that 1922 does not apply to this particular hearing, and until a Court that has the capacity to advise me of the same enters a formal order, I simply cannot do anything further than rely on that representation, so I choose to do so at this particular point in time.
>
> I also choose to follow the holding of that particular Court indicating that the manner in which these hearings are held under South Dakota law in terms of the evidence that I have received is appropriate, and I believe that I have followed those dictates, again which I am required to follow, to the letter of the law here this afternoon.

(Docket 239-1 at p.12:5-23).   Prior to the commencement of the 48-hour hearing, Judge Pfeifle did not appoint counsel for the Indian parent present, but he did appoint counsel for the hearing to occur 10 days later.   <u>Id.</u> at pp. 12:24-13:5.   Judge Gusinsky follows the same policy.   (Docket 239-3 at pp. 8:23-9:10).

### IV.   Federal Court Authority to Impose Declaratory and Injunctive Relief

Plaintiffs seek declaratory and injunctive relief against Defendant Vargo and the DSS Defendants.   (Docket 1 at p. 38 ¶¶ 3 and 4).   Plaintiffs seek only declaratory relief against Defendant Presiding Judge Pfeifle "unless he . . . ignores the declaratory judgment."   (Docket 239 at p. 7 n.4).

This court has "original jurisdiction . . . to redress the deprivation, under color of any State law . . . of any right . . . secured by the Constitution . . . ." 28 U.S.C. § 1343(a)(3).   The court also has jurisdiction "to secure equitable or other relief under any Act of Congress providing for the protection of civil rights . . . ."   28 U.S.C. § 1343(a)(4).

"The focus of this litigation is not to redress past injuries to plaintiffs; rather, it is to prevent future violations of the Due Process Clause of the Fourteenth Amendment and ICWA."   (Docket 150 at p. 42) (internal citation omitted).   As part of its equitable power to protect civil rights, the court has the authority to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.   "Any such declaration shall have the full force and effect of a final judgment . . . ."   Id.   If required to enforce the court's declaratory judgment, "[f]urther necessary or proper relief . . . may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."   28 U.S.C. § 2202.

18

The court's exercise of remedial powers has long been authorized by the United States Supreme Court.

> [I]t is established practice for [the Supreme Court] to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution and to restrain individual state officers from doing what the 14th Amendment forbids the state to do.  Moreover, where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief.  And it is also well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done.

Bell v. Hood, 327 U.S. 678, 684 (1946).

Congress restricted the court's ability to impose an injunction on a state court judicial officer.   "[I]n 1996, Congress enacted the Federal Courts Improvement Act ("FCIA"), Pub.L. No. 104–317, 110 Stat. 3847 (1996), in which it amended § 1983 to provide that 'injunctive relief shall not be granted' in an action brought against "a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable."   Bolin v. Story, 225 F.3d 1234, 1242 (11th Cir. 2000).   This amendment "bars injunctive relief against . . . state judges" and "limits the type of relief available to plaintiffs who sue judges [for] declaratory relief."   Johnson v. McCuskey, 72 Fed. App'x 475 at *2 (7th Cir. 2003) (referencing Bolin, 225 F.3d at 1242).

"In fashioning a remedy, the District Court [has] ample authority to go beyond earlier orders and to address each element contributing to the violation."

<u>Hutto v. Finney</u>, 437 U.S. 678, 687 (1978).   "The controlling principle consistently expounded [by the Supreme Court] is that the scope of the remedy is determined by the nature and extent of the constitutional violation."   <u>Milliken v. Bradley</u>, 418 U.S. 717, 744 (1974).   "Once invoked, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies."   <u>Hutto</u>, 437 U.S. at 687 n.9 (internal quotation marks omitted).

The court is "guided by equitable principles."   <u>Brown v. Board of Education of Topeka, Kansas</u>, 349 U.S. 294, 300 (1955).   "Traditionally, equity has been characterized by a practical flexibility in shaping its remedies and by a facility for adjusting and reconciling public and private needs."   <u>Id.</u>   This case "call[s] for the exercise of these traditional attributes of equity power.   At stake is the personal interest of the plaintiffs in" enforcement of their ICWA and due process rights "as soon as practicable . . . ."   <u>Id.</u>   "To effectuate this interest" will require the court to "eliminat[e] . . . a variety of obstacles" by requiring the defendants to conform to the constitutional and statutory principles identified in the 2015 order.   <u>Id.</u>   "Courts of equity may properly take into account the public interest in the elimination of such obstacles in a systematic and effective manner.   But it should go without saying that the vitality of these constitutional principles cannot be allowed to yield simply because of disagreement with them."   <u>Id.</u>   Addressing the issues presented in this case, the court is "not remedying the present effects of a violation in the past.   It [is] seeking to bring an ongoing violation to an immediate halt."   <u>Hutto</u>, 437 U.S. at 687 n.9.

DECLARATORY JUDGMENT

Plaintiffs have proved by the greater convincing weight of the evidence that the defendants have neither implemented the court's 2015 order nor otherwise complied with § 1922 and the Due Process Clause when dealing with Indian children, parents, custodians and tribes in 48-hour hearings.   The court finds the following conduct of the defendants relevant to this conclusion:

1.   Notwithstanding the clear holdings announced in the 2015 order, petitions for temporary custody prepared by Mr. Vargo's office and presented to Indian parents or custodians at 48-hour hearings still fail to incorporate any reference to the § 1922 standard.   See Dockets 239-4 and 239-5.

2.   The court found the judges of Seventh Judicial Circuit failed to give copies of the petition for temporary custody and the ICWA affidavit to Indian parents or custodians in advance of 48-hour hearings.   (Docket 150 at p. 38). In the 2015 order, the court also expressed concern about the non-disclosure of police reports which were being presented to the judges presiding over 48-hour hearings.   Id. at pp. 38-39.   While the state judges now appear to be providing copies of the petition for temporary custody and the ICWA affidavit to Indian parents or custodians at 48-hour hearings, the policy against disclosure of police reports remains.   As pointed out in the 2015 order, all that is required to satisfy both SDCL § 26-7A-29 and ICWA would be for the state judge to direct in advance or in open court that police reports be provided to the Indian parents or custodians and counsel.   (Docket 150 at p. 39).   The state judges have failed to

incorporate this requirement into their 48-hour hearings to comply with "the clear mandate of ICWA and due process." Id.

3.   The court found that appointment of counsel for indigent parents at 48-hour hearings is constitutionally mandated.   (Docket 150 at pp. 39-40). "Appointing counsel and continuing the 48-hour hearing for a few hours or even a day to allow court-appointed counsel to confer with the Indian parents and become familiar with the critical documents upon which the 48-hour hearing is based would result in an 'equal contest of oppos[ing] interests.'" Id. at p. 40 (citing Lassiter v. Department of Social Services of Durham County, N. C., 452 U.S. 18, 28 (1981)).   The state court judges have either not appointed counsel or appointed counsel and continued DSS custody of Indian children for up to 60 days without reconvening the 48-hour hearing.

"Federal procedural due process guarantees prompt post-deprivation judicial review in child custody cases. . . . When the state deprives parents and children of their right to familial integrity, even in an emergency situation, without a prior due process hearing, the state has the burden to initiate prompt judicial proceedings to provide a post deprivation hearing."   (Docket 150 at p. 37) (internal citations omitted).   If a continuance is necessary to allow counsel to become familiar with the case, the court finds a "prompt judicial proceeding" should be held within 24 hours.   Id.

4.   The court found the decision of the state court judges to prevent cross-examination of the ICWA affidavit preparers and to prohibit oral testimony at 48-hour hearings violates due process.   Id. at p. 41.   The state court judges

22

continue to accept as true the ICWA affidavit, the petition for temporary custody and any police reports presented at 48-hour hearings.   The judges still prohibit Indian parents, custodians or their attorneys from cross-examining witnesses or presenting evidence at 48-hour hearings.

5.   In the 2015 order, the court found it was a requirement of § 1922 that the state court must "*order* restoration of custody to Indian parents when the risk of imminent physical harm no longer exists."   Id. at p. 35 (italics in original). Despite this ruling, in 48-hour hearings the state court judges continue to place Indian children in the temporary custody of DSS using the standard of SDCL § 26-7A-18, that is "in keeping with the best interests of the child."

6.   Presiding Judge Pfeifle claims he is no longer handling abuse and neglect cases, but rather those cases are now assigned to other judges, so that he has no authority over what occurs during 48-hour hearings.   This position ignores the fact that Judge Pfeifle is responsible for assigning his colleagues to the abuse and neglect docket.   The due process rights and ICWA rights of Indian children, parents, custodians and tribes cannot be left to the personal preferences of each circuit court judge.   It is Presiding Judge Pfeifle's obligation to appoint to abuse and neglect cases only those Seventh Circuit Judges who will honor the due process rights and the ICWA rights of Indian children, parents, custodians and tribes.

The defendants were violating plaintiffs' ICWA rights and their rights under the Due Process Clause at the time of the 2015 order.   They continue to

do so today.   The court has no assurance anything will change in the future without the court's intervention.

"[A]lthough the All Writs Act, 28 U.S.C. § 1651(a), authorizes federal courts to 'issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law,' the Act does not create an independent source of federal jurisdiction."   Goss International Corp. v. Man Roland Druckmaschinen Aktiengesellschaft, 491 F.3d 355, 364 (8th Cir. 2007). "[T]he All Writs Act does not operate to confer jurisdiction upon the district court, rather the Act only aids jurisdiction the district court already possesses."   Id. at 365 (referencing Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C., 992 F.2d 932, 937 (9th Cir.1993)).   "Although not a base of jurisdiction, the All Writs Act has been held to give the federal courts the power to implement the orders they issue by compelling persons not parties to the action to act, or by ordering them not to act."   Id. at 365 n.6 (citing 14A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3691 (3d ed.1998)).

Although the other judges of the Seventh Judicial Circuit are not parties to this action, their obligation to enforce the due process rights and ICWA rights of Indian children, parents, custodians and tribes is central to the effective resolution of plaintiffs' claims for relief.   Should the judges fail to honor that obligation, the court will entertain plaintiffs' motion to individually add all the Seventh Judicial Circuit Judges to this action pursuant to Fed. R. Civ. P. 20(a)(2)(B).

24

Contrary to the defendants' arguments that declaratory relief is not necessary, the court finds "it is *absolutely clear*" that the violative policies and procedures of the defendants can "be expected to recur."   Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc., 484 U.S. 49, 66 (1987) (italics in original).   The defendants have not convinced the court otherwise. For these reasons, the court will separately enter a declaratory judgment order directing Presiding Judge Pfeifle, States Attorney Vargo and the DSS defendants to take certain actions.

INJUNCTIVE RELIEF

In order to grant a request for a permanent injunction, plaintiffs are required to show: "(1) that [they have] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).   "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." Id.

As a matter of law, the violation of plaintiffs' constitutional rights constitutes irreparable injury.   See Elrod v. Burns, 427 U.S. 347, 373 (1976). Plaintiffs have satisfied the first two factors by proving that they, and the class members whom they represent, have been and will be deprived of their constitutional and statutory rights in the future if the defendants' conduct is not enjoined.   eBay Inc., 547 U.S. at 391.

25

The third factor, balance of hardships, strongly favors plaintiffs. The harm suffered by plaintiffs as a result of the defendants' unconstitutional conduct is far greater than any administrative or financial hardship the defendants and the Seventh Judicial Circuit may suffer in honoring plaintiffs' constitutional and statutory rights. Id. Finally, the public interest and the Congressional purpose in creating the Indian Child Welfare Act will be served by injunctive relief.[17]  Id.

Plaintiffs are entitled to a permanent injunction against Defendant Vargo and the DSS Defendants.   At this juncture the court is expressly prohibited from granting injunctive relief against Presiding Judge Pfeifle.  Bolin, 225 F.3d at 1242.   Plaintiffs' request for injunctive relief is granted in part.   The court will separately enter a permanent injunction against States Attorney Vargo and the DSS defendants.

### V.   Plaintiffs' Request for a Monitor

Plaintiffs request the court appoint a monitor pursuant to Fed. R. Civ. P. 53 to supervise defendants' compliance with the court's orders.   (Docket 239 at p. 22).   Defendant Vargo opposes the request and asserts that a monitor is not necessary.  (Docket 257 at p. 10).   The DSS defendants oppose the request and argue plaintiffs' appointment of a monitor is premature as there are no exceptional conditions present to warrant monitoring.   (Docket 260 at pp. 8-9).

---

[17]See also M.D. v. Abbott, 152 F. Supp. 3d 684, 823 (S.D. Tex. 2015), *appeal dismissed* (April 5, 2016) ("the public interest will not be harmed by an injunction requiring Texas to conform its foster care system to the Constitution. With all four factors met, the Court holds that injunctive relief is appropriate in this case.").

The defendants have long failed to comply with the holdings in the court's earlier orders.   Once presented with this order, the declaratory judgment and the permanent injunction, the court expects the defendants will comply with this court's rulings.   Compliance with the court's rulings will make appointment of a monitor unnecessary.   Plaintiffs' request for appointment of a monitor is denied without prejudice as premature.

### ORDER

Based on the above analysis, it is

ORDERED that plaintiffs' request for a declaratory judgment (Docket 1 at p. 38) is granted.   A declaratory judgment will be entered as a separate order.

IT IS FURTHER ORDERED that plaintiffs' request for injunctive relief (Docket 1 at pp. 38-39) is granted in part.   A permanent injunction will be entered as a separate order.

IT IS FURTHER ORDERED that plaintiffs' request for appointment of a monitor is denied without prejudice as premature.

Dated December 15, 2016.

BY THE COURT:

JEFFREY L. VIKEN
CHIEF JUDGE

27