UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| OGLALA SIOUX TRIBE and ROSEBUD SIOUX TRIBE, as *parens patriae*, to protect the rights of their tribal members; MADONNA PAPPAN, and LISA YOUNG, individually and on behalf of all other persons similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> LISA FLEMING and LAURIE GILL, in their official capacities, <br><br> Defendants. | CIV. 13-5020-JLV <br><br> ORDER |

**INTRODUCTION**

On January 31, 2018, plaintiffs filed an amended complaint seeking declaratory and injunctive relief. (Docket 353). As a result of the decision in Oglala Sioux Tribe v. Fleming, 904 F.3d 603 (8th Cir. 2018), only claims IV and V remain.[1] Defendants Lisa Fleming, Regional Manager for the South Dakota Department of Social Services Division of Child Protection Services in Region 1, Pennington County, Rapid City, South Dakota, and Laurie Gill, Secretary of the South Dakota Department of Social Services,[2] (the "DSS Defendants") filed a

---

[1] Plaintiffs acknowledge this reality. (Docket 370 at p. 1). The parties informally agreed claim III is moot based on the Eighth Circuit's decision. Because abstention applies equally to claim III it is dismissed without prejudice.

[2] Laurie Gill was substituted for M. Gregory DeSautel pursuant to Fed. R. Civ. P. 25(d) on July 9, 2019.

motion and a renewed motion to dismiss claims IV and V of plaintiffs' amended complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Dockets 364 & 380). The DSS Defendants move the court to "abstain[] from exercising jurisdiction under principles of federal-state comity articulated in Younger v. Harris, 401 U.S. 37 (1971) and later cases, to include [Oglala Sioux Tribe, 904 F.3d 603]." (Docket 364 at p. 1). Plaintiffs resist the DSS Defendants' motion. (Dockets 370 & 382). For the reasons stated in this order, the DSS Defendants' motion is granted.

## ANALYSIS

Entitled "Failure To Train And Supervise DSS Staff," claim IV of plaintiffs' amended complaint alleges:

> The DSS Defendants have a policy and practice, as evidenced by the facts in the record, of failing to adequately train and supervise their staff to ensure that Indian children placed into DSS custody are returned to their families "immediately [unless continued custody is] necessary to prevent imminent physical damage or harm to the child." See 25 U.S.C. § 1922. These failures, which involve actions taken by DSS staff during and after 48-hour hearings, cause plaintiffs to suffer irreparable injury and violate rights secured to plaintiffs by the Due Process Clause of the Fourteenth Amendment and by the Indian Child Welfare Act ("ICWA"). Relief is sought pursuant to 42 U.S.C. § 1983.

(Docket 353 ¶ 130) (capitalization omitted). Claim V entitled "Failure to End Placement When The Reasons for Placement Have Ended," alleges:

> The DSS Defendants have a policy and practice, as evidenced by the facts in the record, of failing to end the out-of-home placement of Indian children when the reasons given at the 48-hour hearing for such placement have ended, thereby violating rights secured to plaintiffs by the Due Process Clause of the Fourteenth Amendment

2

and by ICWA and causing plaintiffs to suffer irreparable injury. Relief is sought pursuant to 42 U.S.C. § 1983.

Id. ¶ 131 (capitalization omitted).

In their prayer for relief, plaintiffs seek the following:

[A] declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that declares as a matter of law that . . . DSS Defendants' policy and practice of failing to adequately train and supervise their staff as set forth in paragraph 130 above violates the Due Process Clause and ICWA; and . . . DSS Defendants' policy and practice of failing to end the out-of-home placement of Indian children when the reasons given at the 48-hour hearing for such placement have ended [as set forth in paragraph 131 above] violates the Due Process Clause and ICWA[; and]

[P]reliminary and permanent injunctive relief pursuant to F. R. Civ. P. Rule 65, enjoining the Defendants and all persons in concert with them, and their successors in office, . . . with respect to the DSS Defendants, from failing or refusing to adequately train and supervise their staff as set forth in paragraph 130 above; and . . . with respect to the DSS Defendants, from failing or refusing to end the out-of-home placement of Indian children when the reasons given at the 48-hour hearing for such placement have ended [as set forth in paragraph 131 above].

Id. at pp. 40-41.

The DSS Defendants argue both claims should be dismissed because "[t]he motivating force behind Younger[3] abstention is the promotion of comity between state and federal judicial bodies." (Docket 365 at p. 4) (referencing Aaron v. Target Corp., 357 F.3d 768, 774 (8th Cir. 2004)). The DSS Defendants contend the three factors identified in Middlesex County Ethics Commission v. Garden State Bar Association, 457 U.S. 423, 432 (1982),

---

[3]Younger v. Harris, 401 U.S. 37 (1971).

"should lead to abstention under Younger[.]" Id.  They identify those factors as:

> (1) the existence of an ongoing state judicial proceeding,
>
> (2) which implicates important state interests, and
>
> (3) which provides an adequate opportunity to raise constitutional challenges.

Id. (referencing Aaron, 357 F.3d at 774). The DSS Defendants proceed to analyze each of those factors. Id. at pp. 4-10.

Plaintiffs' response argues the DSS Defendants' motion should be denied "because the Younger abstention doctrine is inapplicable to [claims] IV and V." (Docket 370 at p. 2). Plaintiffs contend the remaining claims "challenge *administrative* policies and practices—*not* judicial policies and practices—and the remedies sought by Plaintiffs require no intervention by this Court into a state judicial process." Id. (emphasis in original). Plaintiffs assert this is a significant difference. Plaintiffs argue:

> The prior claims involved activities that occurred *during* the 48-hour hearing, such as denying parents in those hearings with an opportunity to present evidence, to subpoena witnesses, and to confront the caseworker accusing them of abuse and neglect. . . . In contrast, the current claims involve activities that occur *after* the 48-hour hearing, while DSS staff determine whether the children placed into their custody at the 48-hour hearing should be returned to their families.

Id. at p. 3 (emphasis in original). Plaintiffs contend "whereas the prior claims required this Court to issue a remedial order changing *judicial* procedures, the remedial order Plaintiffs request under [claims] IV and V would only require

4

this Court to change *administrative* procedures." Id. (emphasis in original). Instead of "implicat[ing] the state judicial system," plaintiffs argue claims "IV and V challenge the inexcusable delays taken by DSS in determining when DSS should return the child to the home. These delays are entirely the fault of DSS, not the Circuit Court[.]" Id. at p. 4. Plaintiffs submit permitting them to have a remedy against the DSS Defendants "will not undermine 'the national policy forbidding federal courts to stay or enjoin pending state court proceedings.'" Id. (citing Younger, 401 U.S. at 41). "[I]f Plaintiffs prevail," they contend "this Court will direct its remedial order solely against agency officials and direct them to undertake appropriate measures to adequately train and supervise their staff in order to substantially reduce, if not eliminate, the unnecessary and harmful delays occurring in virtually every aspect of the post-48-hour hearing administrative process." Id. at p. 8.

In their reply brief, the DSS Defendants contend plaintiffs' argument misses the point.

> "The question under the abstention doctrine is not whether the claims have merit such that the exercise of federal jurisdiction would 'support the state's interest' in affording its residents protection under the law. The issue is whether the federal court should refrain from exercising jurisdiction and allow the claims to be resolved in the state proceedings. A federal court order dictating what procedures must be used in an ongoing state proceeding would 'interfere' with that proceeding by inhibiting 'the legitimate functioning of the individual state's judicial system.'"

(Docket 371 at p. 5) (citing Oglala Sioux Tribe, 904 F.3d at 611). The DSS Defendants assert "the imposition of any injunction puts DSS officials in the

5

position of being subject to potential sanctions regarding DSS involvement in the judicial process in 'ongoing' temporary custody proceedings." Id. An injunction, they argue, " 'would disrupt the normal course of proceedings in state courts via resort to the federal suit for determination of the claim ab initio,' just as would a request for injunctive relief from an ongoing state proceeding." Id. at pp. 5-6 (referencing Oglala Sioux Tribe, 904 F.3d at 612).

Plaintiffs' argument that they seek administrative changes not judicial changes is a distinction without a difference. The relief plaintiffs seek in claims IV and V "would dictate a host of procedural requirements for the ongoing state proceedings." Oglala Sioux Tribe, 904 F.3d at 611. An injunction from this court "dictating what procedures [the DSS Defendants and their employees must follow] . . . in an ongoing state proceeding would 'interfere' with that proceeding by inhibiting 'the legitimate functioning of the individual state's judicial system.' " Id.

Under Oglala Sioux Tribe, "[t]he question . . . is not whether [plaintiffs'] claims have merit such that the exercise of federal jurisdiction would 'support the state's interest' in affording its residents protection" under the Due Process Clause and the Indian Child Welfare Act, 25 U.S.C. § 1901 *et seq.* Id. "'[B]ecause an injunction against acts which might occur in the course of future [civil] proceedings would necessarily impose continuing obligations of compliance,' alleged noncompliance with the injunction would give rise to contempt proceedings in federal court." Id. (citing O'Shea v. Littleton, 414

6

U.S. 488, 501-02 (1974)). "[S]uch a major continuing intrusion of the equitable power of the federal courts into the daily conduct of state [civil] proceedings is in sharp conflict with the principles of equitable restraint' that the Court recognized in Younger and its progeny." Id. (citing O'Shea, 414 U.S. at 502). Plaintiffs' claims seek to impose enhanced administrative procedures on the DSS Defendants and their employees which are an intrinsic part of the judicial proceedings which Oglala Sioux Tribe addressed. Under Oglala Sioux Tribe, the court is compelled to grant defendants' motion and renewed motion to dismiss claims IV and V.

## ORDER

Based on the above analysis, it is

ORDERED that the DSS Defendants' motion and renewed motion to dismiss (364 & 380) are granted.

IT IS FURTHER ORDERED that claim III, claim IV and claim V of plaintiffs' amended complaint (Docket 353 ¶¶ 130 & 131) are dismissed without prejudice.

Dated January 16, 2020.

BY THE COURT:

/s/ Jeffrey L. Viken

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE